UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re: <br><br> **COZY HARBOR SEAFOOD, INC.,** <br><br> Debtor. | Chapter 11 <br><br> Case No. 25-20160 <br><br> (Request for Joint Administration Pending) |
| In re: <br><br> **CASCO BAY LOBSTER CO., INC.,** <br><br> Debtor. | Chapter 11 <br><br> Case No. 25-20161 <br><br> (Request for Joint Administration Pending) |
| In re: <br><br> **ART'S LOBSTER CO., INC.,** <br><br> Debtor.[1] | Chapter 11 <br><br> Case No. 25-20162 <br><br> (Request for Joint Administration Pending) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER: (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) GRANTING RELATED RELIEF; AND (IV) REQUEST FOR EMERGENCY DETERMINATION AND <u>LIMITATION OF NOTICE</u>**

**REQUEST FOR EMERGENCY DETERMINATION (INTERIM RELIEF ONLY)**

**This Motion includes a request for an emergency determination pursuant to Local Rule 9013-4 as to the request for interim relief only, with a proposed hearing on or before the morning of July 3, 2025. A statement of the facts and circumstances justifying emergency determination, as required by Local Rule 9013-4, is included herein.**

Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc., and Art's Lobster Co., Inc., the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), move this Court

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363. The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

(the "**Motion**"), pursuant to § 363(c)(2)(B) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2, 9013-1, and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), for entry of an order, on an interim (the "**Interim Order**") and then final basis (the "**Final Order**") after adequate notice and hearing: (i) authorizing the Debtors to use cash collateral, as defined in § 363(a) of the Bankruptcy Code (the "**Cash Collateral**"); (ii) providing adequate protection to the Prepetition Lienholder (defined below) on the terms set forth in the Interim Order (to the extent required); and (iii) scheduling related deadlines and granting related relief. In support of this Motion, the Debtors state as follows:

## JURISDICTION, VENUE, AND APPLICABLE PROVISIONS

1.  The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. § 1334(b). By the District Court's standing order of reference, this matter was referred to this Court pursuant to 28 U.S.C. § 157.

2.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4.  The statutory predicates for the relief sought herein are § 363(c)(2)(B) of the Bankruptcy Code, Rule 4001(b) of the Bankruptcy Rules, and Local Rules 2002-1, 4001-2, 9013-1 and 9013-4.

## DISCLOSURES AND RELATED INFORMATION

5.  Pursuant to the applicable Bankruptcy Rules and Local Rules, the Debtors make the following disclosures regarding the relief sought in this Motion:

2

| Requirement | Disclosure |
|---|---|
| Name of each entity that may assert a potential interest in Cash Collateral | Keybank National Association (the "**Prepetition Lienholder**"). |
| Purpose for use of Cash Collateral | Use of Cash Collateral is necessary to avoid harm to the Debtors and the estates because, without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets, to operate their businesses in the ordinary course, to provide financial information, to pay payroll and professionals, and to pay other expenses necessary to maximize the value of the Debtors' estates in chapter 11. |
| Modification of Automatic Stay | The Interim Order does not contain any modification of the automatic stay. |
| Material terms, including duration of the use of Cash Collateral | The Debtors shall be authorized to use Cash Collateral in accordance with the budget attached to the proposed Interim Order as **Exhibit A** and subsequent budgets to be filed at later dates in the chapter 11 cases (the "**Budget**").  The Debtors' use of Cash Collateral shall be conditioned upon the Debtors' compliance with the Budget, with the understanding that the timing of revenue and expenses may vary from projections, except that the Debtors' aggregate disbursements shall be limited to 125 percent (125%) of projected aggregate disbursements in the Budget. |
| Liens, cash payments, or other adequate protection to be provided to each entity with an interest in Cash Collateral | To the extent the Prepetition Lienholder is entitled to adequate protection for the Debtors' use of Cash Collateral, and solely to the extent of any diminution in the value of such interest in Cash Collateral from and after the Petition Date as to the Debtors (if any), the Prepetition Lienholder shall be provided with the following adequate protection:<br><br>(i) Through an increase in Cash Collateral from the Petition Date during the relevant time period and the use of Cash Collateral to maintain and preserve its secured interests;<br><br>(ii) Through the Adequate Protection Liens and Continuing Liens (each as defined below); and<br><br>(iii) To the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations (defined below) in their entirety, the remaining, unsatisfied Adequate Protection Obligations shall constitute allowed administrative claims against the Debtors to the extent |

3

| | |
|---|---|
| | provided by § 507(b) of the Bankruptcy Code. |
| Proposed budget | The initial Budget is attached to the proposed Interim Order as **Exhibit A**. |
| Estimated claim amount of the Prepetition Lienholder | Keybank National Association: $4,900,000.00 (estimated) |

## GENERAL BACKGROUND

6. Contemporaneously hereto (the "**Petition Date**"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

7. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the cases by the Office of the United States Trustee.

8. The relief requested herein is supported by the Declaration of John S. Norton, Jr. in Support of Chapter 11 Petitions and First Day Pleadings, which is incorporated herein by reference.

9. From their headquarters in Portland, Maine, the Debtors buy, process, and distribute premium-quality lobster tails, lobster meat, and live lobster (among other seafood) throughout the United States, Canada, Asia, and Europe. Cozy Harbor Seafood, Inc. works directly with Canadian and Maine seafood dealers, while Casco Bay Lobster Co., Inc. and Art's Lobster Co., Inc. work directly with fisherman to purchase the freshest seafood products for the Debtors' customers, including purchasing daily catches from Cundy's Harbor, Boothbay Harbor, Casco Bay, South Bristol, and Tenants Harbor.

**SUMMARY OF POTENTIAL INTERESTS IN CASH COLLATERAL**[2]

10.   Based on their review of records and financing statements filed with the Maine Secretary of State, the Debtors believe that only the Prepetition Lienholder may assert an interest in Cash Collateral as of the Petition Date.  Specifically, the Debtors (as borrowers) are parties to that certain Loan Agreement with the Prepetition Lienholder (as lender) dated September 29, 2022, as was amended from time to time prior to the Petition Date, and that certain Revolving Promissory Note (Line of Credit) of the same date in the maximum original principal amount of $8,000,000.00. The Debtors (as grantors) are also parties to that certain Security Agreement dated September 29, 2022, with the Prepetition Lienholder, pursuant to which the Debtors granted certain liens and other rights to the Prepetition Lienholder to secure the Debtors' obligations, including liens on assets that may be considered Cash Collateral.  The Prepetition Lienholder filed UCC-1 Financing Statements with the Maine Secretary of State as to each Debtor, with each filing dated on or about September 29, 2022.

**THE DEBTORS' NEED FOR THE USE OF CASH COLLATERAL**

11.   The Debtors seek interim authority to use Cash Collateral to fund necessary expenses in the early weeks of the cases, including payroll, supplies and inventory, utilities, rent, and other ordinary operating expenses as set forth in the Budget.  Access to the use of Cash Collateral both short- and long-term is necessary for the Debtors to fund required expenses during the chapter 11 cases, as described in the Budget, which the Debtors believe will preserve and maximize the going-concern value of the estates for the benefit of all parties.  Other than Cash Collateral, the Debtors do not have access to funds and would be unable to pay these necessary

---

[2] The summary herein is intended to provide sufficient information for this Court to grant the relief sought in this Motion.  This summary is qualified in its entirety by the relevant agreements and other documentation relating to the Prepetition Lienholder.  Nothing herein or in the Interim Order shall expand in any way the scope, validity, perfection, or extent of any liens as may have existed on the Petition Date.

Case 25-20160    Doc 3    Filed 07/01/25    Entered 07/01/25 20:20:56    Desc Main
Document    Page 6 of 12

expenses. Accordingly, access to and use of Cash Collateral will provide the Debtors with the liquidity necessary to ensure that the Debtors have sufficient working capital and can meet their obligations as debtors-in-possession in the cases.

12. The inability to use Cash Collateral, on the other hand, would mean that the Debtors' business operations would have to cease, be subject to liquidation in bankruptcy or a state court proceedings, or the business would need to be placed into a receivership under applicable state law. Any of these outcomes would cause substantial harm to the Debtors and limit potential recoveries to creditors. This would cause irreparable harm not only to the Prepetition Lienholder, but also to the value of the Debtors' businesses, including as going concerns.

## RELIEF REQUESTED

13. The Debtors request entry of the Interim Order and then the Final Order: (i) authorizing the Debtors to use Cash Collateral; (ii) granting the Prepetition Lienholder adequate protection upon the terms set forth herein; and (iii) granting related relief and setting certain deadlines.

## BASIS FOR RELIEF

14. Section 541(a) provides that the "commencement of a case . . . creates an estate" that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a). Section 362(a) provides that "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

15. Section 363(a) of the Bankruptcy Code provides the following definition of cash collateral:

> . . . cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

16. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may use cash collateral as long as: (a) each entity that has an interest in such cash collateral consents; or (b) the bankruptcy court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of the section. See 11 U.S.C. § 363(c)(2). Section 363(e) provides, in turn, that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

17. The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use after commencement of the bankruptcy case. See In re Carbone Cos., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); In re Cont'l Airlines, Inc., 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (adequate protection for use of collateral under § 363 is limited to use-based decline in value).

18. Section 362(d)(1) of the Bankruptcy Code provides for adequate protection in property due to the imposition of the automatic stay. See 11 U.S.C. § 362(d)(1). Although § 361 provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts must decide what constitutes sufficient adequate protection on a case-

7

by-case basis. See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and quotation omitted).

A.    **Cash Collateral Increases Over The Relevant Cash Collateral Period.**

19.    Section 361 of the Bankruptcy Code provides a non-exhaustive list of the ways adequate protection can be provided. However, a creditor is adequately protected, and no further adequate protection is required, in the event that Cash Collateral increases over the course of the chapter 11 proceedings, even in circumstances where the levels of cash collateral decrease for interim periods during the case. See In re Dynaco Corp., 162 B.R. 389, 394 (Bankr. D.N.H. 1993).

20.    Here, the Debtors seek authority to use Cash Collateral on an interim and then final basis, and as reflected in the Budget, the aggregate ending balance of Cash Collateral equals or exceeds the beginning balance on the Petition Date. The Debtors' proposed use of Cash Collateral will preserve the value of Cash Collateral and avoid immediate and irreparable harm to the Debtors and their estates. In light of this, to the extent the Prepetition Lienholder holds valid, perfected, and unavoidable interests in Cash Collateral of the Debtors, the Prepetition Lienholder's interests are being adequately protected without providing any additional form of relief.

B.    **Adequate Protection Obligations, Additional Liens, And Super-Priority Claims.**

21.    As further adequate protection for the Debtors' use of Cash Collateral, the Prepetition Lienholder shall be granted, solely to the extent of any diminution in the value of the Prepetition Lienholder's interest in Cash Collateral of the Debtors from and after the Petition Date (such diminution in value after the Petition Date for its interests, the "**Adequate Protection Obligations**"), liens on the Debtors' equipment assets (including titled vehicles), which such liens

8

shall exist in the same order of priority that existed as of the Petition Date (including, as applicable, any adequate protection liens granted herein being junior to any valid and perfected senior liens of other creditors on such equipment collateral as existed on the Petition Date) (the "**Adequate Protection Liens**").

22. In addition to the Adequate Protection Liens, pursuant to and solely to the extent set forth in § 552 of the Bankruptcy Code, the Prepetition Lienholder shall continue to hold liens, rights as assignee, and/or security interests in any and all property of the Debtors to the same extent and validity, and in the same priority, as the Prepetition Lienholder held liens, rights as assignee, and/or security interests in the Debtors' assets as of the Petition Date (the "**Continuing Liens**").

23. The Adequate Protection Liens and Continuing Liens shall be valid, binding, enforceable, and fully perfected without the necessity of the execution, filing, or recording of security agreements, financing statements, or other agreements.

24. Finally, as further adequate protection, to the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations in their entirety, the remaining, unsatisfied Adequate Protection Obligations due to the Prepetition Lienholder shall constitute an allowed administrative claim against the Debtors to the extent provided by § 507(b) of the Bankruptcy Code.

## REQUEST FOR EXPEDITED RELIEF

25. The Debtors believe that all or substantially all of their available cash on the Petition Date constitutes Cash Collateral. Access to the use of Cash Collateral is necessary for the Debtors to fund expenses required for the Debtors to maintain operations, as well as for the Debtors to fund other necessary expenses in chapter 11, such as utilities, payroll, and other operating costs as reflected in the Budget, which the Debtors believe will preserve and maximize the value of the

estates. Further, the Debtors incur these expenses on a frequent, sometimes unpredictable basis, and, therefore, emergency relief is necessary so the Debtors may have authority to use Cash Collateral to fund these necessary expenses in the ordinary course, including immediately after the Petition Date.

26. Based on their review of the Budget, their familiarity with business operations, and the timing of anticipated necessary expenses required to avoid imminent and irreparable harm to the estates, including regular payroll obligations that are to be funded by the Debtors on July 3, 2025, in the ordinary course and the Debtors' required purchase of critical inventory and supplies, the Debtors request an interim hearing on this Motion **on or before the morning of July 3, 2025** (the "**Interim Hearing**").

## REQUEST FOR FINAL HEARING AND RELATED DEADLINES

27. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that this Court set a date for a final hearing on the Motion and fix related deadlines before the final hearing, as set forth in the Interim Order.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

28. Certain aspects of the relief requested in the Motion may, if granted, be subject to Bankruptcy Rule 6003. Pursuant to Bankruptcy Rule 6003, a court may grant relief within 21 days after the filing of the petition if it is necessary to avoid immediate and irreparable harm. The Debtors submit that the facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors, and, thus, Bankruptcy Rule 6003 has been satisfied. Additionally, to the extent that any aspect of the relief sought herein constitutes a use of property under § 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the 14-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion

10

is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of the estates. Accordingly, the Debtors submit that a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## **RESERVATION OF RIGHTS**

29. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' assets; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to § 365 of the Bankruptcy Code; or (f) a limitation on the Debtors' rights under § 365 of the Bankruptcy Code to assume or reject any executory contract with any party. Nothing contained in the Interim Order will be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid, except to the extent otherwise ordered.

30. The Debtors reserve the right to offer evidence at the Interim Hearing (or such other time as this Court may permit) in support of the relief sought in the Motion.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order and then the Final Order, granting the relief requested in the Motion and such other and further relief as this Court deems fair and appropriate.

*[intentionally left blank]*

Dated: July 1, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ D. Sam Anderson*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
100 Middle Street, PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Proposed counsel to the Debtors and Debtors in Possession*