**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**COZY HARBOR SEAFOOD, INC.,**<br><br>Debtor. | Chapter 11<br><br>Case No. 25-20160<br><br>(Request for Joint Administration Pending) |
| In re:<br><br>**CASCO BAY LOBSTER CO., INC.,**<br><br>Debtor. | Chapter 11<br><br>Case No. 25-20161<br><br>(Request for Joint Administration Pending) |
| In re:<br><br>**ART'S LOBSTER CO., INC.,**<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 25-20162<br><br>(Request for Joint Administration Pending) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER: (I) AUTHORIZING THE DEBTORS TO: (A) PAY PRE-PETITION EMPLOYEE COMPENSATION; (B) PAY RELATED PAYROLL OBLIGATIONS; AND (C) CONTINUE EMPLOYEE BENEFIT PROGRAMS; AND (II) REQUEST FOR EMERGENCY DETERMINATION AND LIMITATION OF NOTICE**

**REQUEST FOR EMERGENCY DETERMINATION**

**This Motion includes a request for an emergency determination and limitation of notice pursuant to Local Rule 9013-4, with a proposed hearing <u>on or before the morning of July 3, 2025</u>. A statement of the facts and circumstances justifying emergency determination and limitation of notice, as required by Local Rule 9013-4, is included herein.**

Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc., and Art's Lobster Co., Inc., the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), move this Court,

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363. The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

pursuant to, inter alia, §§ 105, 363 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 9013-1 and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), for entry of an order authorizing the Debtors to pay certain prepetition employee compensation, pay related payroll and tax obligations, and continue certain employee benefit programs. In support of this Motion, the Debtors state as follows:

## JURISDICTION, VENUE AND STATUTORY BASES

1. The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. § 1334(b). By the District Court's standing order of reference, this matter has been referred to this Court pursuant to 28 U.S.C. § 157.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4. The statutory predicates and applicable rules for the relief sought herein are, inter alia, §§ 105(a), 363 and 507 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Local Rule 9013-1 and 9013-4.

## BACKGROUND

**A.    The Chapter 11 Cases**

5. Contemporaneously hereto (the "**Petition Date**"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

6. The Debtors continue to operate their businesses and manage their properties as

2

debtors and debtors-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the cases by the Office of the United States Trustee.

7. The relief requested herein is supported by the Declaration of John S. Norton, Jr. in Support of Chapter 11 Petitions and First Day Pleadings, which is incorporated herein by reference.

B. **Overview of the Debtor's Workforce**

8. From their headquarters in Portland, Maine, the Debtors buy, process, and distribute premium-quality lobster tails, lobster meat, and live lobster (among other seafood) throughout the United States, Canada, Asia, and Europe. Cozy Harbor Seafood, Inc. works directly with Canadian and Maine seafood dealers, while Casco Bay Lobster Co., Inc. and Art's Lobster Co., Inc. work directly with fisherman to purchase the freshest seafood products for the Debtors' customers, including purchasing daily catches from Cundy's Harbor, Boothbay Harbor, Casco Bay, South Bristol, and Tenants Harbor.

9. As of the Petition Date, Cozy Harbor Seafood, Inc. had 107 full-time employees (which included 73 seasonal employees), and Art's Lobster Co., Inc. had 3 full-time employees (which included seasonal employees) and 1 part-time employee (collectively, the "**Employees**").[2] Of the Employees employed by Cozy Harbor Seafood, Inc., 92 are paid on an hourly basis and 15 are salaried. Of the Employees employed by Art's Lobster Co, Inc., 2 are paid on an hourly basis and 2 are salaried.

10. The Employees are paid weekly, on Fridays, for their services in the preceding period of Sunday to Saturday, with the funds required to satisfy the payroll obligations drawn from the Debtors' account(s) on Thursday of each week.

---

[2] Casco Bay Lobster Co., Inc. does not have any employees as of the Petition Date.

3

11. Payroll is funded and managed through ADP as the payroll company (the "**Payroll Company**"). The Debtors pay the Payroll Company a service fee totaling $460-$470 per week (as may vary from week to week based on the number of Employees, the "**Payroll Fee**").

12. The Employees hold various positions for the Debtors that are critical to Debtors' ongoing operations and ability to meet their obligations as debtors-in-possession. Those positions include roles related to food safety, operations, accounting, sales, and various supervisory, managerial, and executive positions. The Employees' skills, knowledge, and understanding of the Debtors' businesses, products, and general operations, are essential to the effective operation of the Debtors' businesses and to successful, value-maximizing strategies in the Debtors' chapter 11 cases.

13. Further, just as the Debtors depend on the Employees to operate their businesses on a daily basis, the Employees also depend on the Debtors. Indeed, the Debtors understand that many of these individuals and their families rely on payments received from the Debtors for their basic living necessities. In an effort to minimize the personal hardship to the individuals and to maintain morale and stability in the Debtors' business operations during this critical juncture, the Debtors seek authority to continue to pay and honor (subject to applicable Orders of this Court and the Bankruptcy Code) amounts arising under or in connection with the Debtors' pre-petition obligations to the Employees, all as set forth in more detail herein.

C. **Summary of Workforce Obligations**

14. The Debtors are responsible for wage and salary obligations to their Employees. The Employees are owed and have accrued various prepetition payroll payments that were not yet paid or otherwise realized in the ordinary course as of the Petition Date. The Debtors are not, at this time, requesting authority to pay any Employee an amount exceeding the amount entitled to priority under § 507(a)(4) of the Bankruptcy Code. The Debtors do not seek to modify the amount

of compensation paid to any "insider" of the Debtors through this Motion.

15. As of the Petition Date, the Employees were owed and had accrued various sums for wages as set forth above for pre-Petition Date services (the "**Employee Compensation Obligations**"). The Debtors are able to estimate the amounts owed to the Employees based on payroll amounts for prior payroll periods. Specifically, average gross wages in recent weeks were approximately **$99,000.00** (and approximately **$108,000.00** with employer-side taxes), which is composed of approximately **$70,000.00** for hourly Employees and **$29,000.00** for salaried Employees. Because each Friday payroll distribution is for services previously provided in the prior week, a pro rata portion of the Employee Compensation Obligations paid after the Petition Date will constitute compensation for prepetition services.

16. The Debtors also withhold taxes and other withholdings from wages and salaries as required by federal, state, and local laws. In particular, these laws require the Debtors to withhold amounts related to federal and state income taxes, Social Security and Medicare taxes, and certain wage garnishments for remittance to the appropriate federal, state, or local authorities, or other third parties (collectively, the "**Withheld Amounts**"). The Debtors also are required to pay additional amounts for the employers' contributions to Social Security and Medicare taxes (such taxes and withholdings, together with the Withheld Amounts, the "**Payroll Taxes**"). A portion of the Payroll Taxes will relate to prepetition services for the reasons set forth herein.

17. In addition, the Debtors provide the following benefits to their eligible Employees (such benefit programs, the "**Employee Benefit Programs**" and the Debtors' payment obligations in providing the Employee Benefit Programs to eligible Employees, the "**Benefit Obligations**"):

    (a)    Health insurance provided through Anthem Blue Cross/Blue Shield, with the Debtors funding 65% of the premiums for such coverage;

    (b)    Dental insurance through Delta Dental, with the Debtors not contributing to the premiums for such coverage;

  (c) Short-term and long-term disability through Mutual of Omaha, with the Debtors funding 65% of the premiums for such coverage; and

  (d) Reimbursement to Employees for purchases made by Employees on behalf of the Debtors in the ordinary course, which amount is typically **$50.00** or less at any given time.

18. The Employee Compensation Obligations, the Payroll Fee, the Payroll Taxes, and the Benefit Obligations are collectively referred to herein as the "**Payroll Obligations**."

## RELIEF REQUESTED

19. To minimize the personal hardship that Employees will suffer if any Payroll Obligations are not paid when due or as expected, and to maintain morale and continuity of the Debtors' workforce and business operations during this critical time, the Debtors request entry of an Order, substantially in the form filed herewith, authorizing the Debtors to pay the Payroll Obligations and maintain the Employee Benefit Programs in the ordinary course.

## BASIS FOR RELIEF

**A. Certain of the Payroll Obligations Are Entitled to Priority Treatment.**

20. Pursuant to § 507(a)(4) of the Bankruptcy Code, the unpaid, prepetition Payroll Obligations are entitled to priority treatment in an amount up to **$15,150.00** for each individual. See 11 U.S.C. § 507(a)(4). The Debtors are not seeking, in this Motion, authority to pay any Employee Compensation Obligations in amounts that exceed **$15,150.00** per any individual Employee. As the Debtors are seeking authority to pay, in total, less than the individual limit established under § 507(a)(4), the Debtors submit that granting the relief sought in the Motion affects only the timing of payments and would not have a negative impact on recoveries for other parties in interest. Indeed, satisfaction of the Payroll Obligations, and maintenance of the Employee Benefit Programs, will enhance value for the benefit of all parties in interest by ensuring that the Employees continue to provide vital services to the Debtors and their customers at a critical

6

juncture in the chapter 11 cases.

> B. **Payment of Certain Payroll Obligations Is Required by Law.**

21. The Debtors, as part of the relief sought in this Motion, request authority to continue to remit Payroll Taxes to the appropriate entities. These amounts principally represent earnings that governments and judicial authorities have designated for withholding from paychecks. Indeed, certain withholdings likely are not property of the Debtors' estates because the Debtors have withheld such amounts on another party's behalf. Accordingly, continued remittance of the Payroll Taxes will not harm or prejudice parties in interest and should be authorized.

> C. **This Court Should Authorize the Debtors to Satisfy the Payroll Obligations and Maintain the Employee Benefit Programs in the Ordinary Course.**

22. A debtor in possession is authorized to operate its business while maintaining a "fiduciary duty to act in the best interest of the estate as a whole, including its creditors, equity interest holders and other parties in interest." LaSalle Nat'l Bank v. Perelman, 82 F. Supp. 2d 279, 292 (D. Del. 2000). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id. Moreover, the "fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs." NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984).

23. Consistent with a debtor's duties in chapter 11, this Court may grant the relief requested herein pursuant to §§ 105(a) and 363 of the Bankruptcy Code and the "necessity of payment" doctrine. See 11 U.S.C. §§ 105(a), 363(b), and 363(c). The "necessity of payment"

doctrine functions in a chapter 11 reorganization as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition obligations not expressly authorized by the Bankruptcy Code. See, e.g., In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the doctrine "permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed … where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.").

24. Additionally, § 363(c)(1) provides, "[i]f the business of the debtor is authorized to be operated under section . . . 1108 . . . the trustee . . . may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). If any party in interest does not consent to such use of property, such use may still be permitted by court order after notice and a hearing. 11 U.S.C. § 363(c)(2). Further, § 363(b)(1) states, in pertinent part, that: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although § 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize use of a debtor's assets if such use is based upon the sound business judgment of the debtor. See In re SW Bos. Hotel Venture, LLC, No. 10-14535-JNF, 2010 WL 3396863, at *3 (Bankr. D. Mass. Aug. 27, 2010) ("Courts approve a Chapter 11 debtor in possession's use, sale or lease of property of the estate where the debtor has used reasonable business judgment and articulated a business justification for such use.").

25. Here, the Debtors are debtors-in-possession permitted to operate the businesses and may pay the Payroll Obligations, and continue the Employee Benefit Programs, in the ordinary course. Further, their ability to satisfy the Payroll Obligations is indispensable to the reorganization of the Debtors' businesses, and the Employees' morale directly affects their effectiveness and productivity. Consequently, it is critical that the Debtors continue, in the ordinary course, those personnel procedures that were in effect prior to the Petition Date. If such obligations are not timely paid postpetition, however, some individuals likely would suffer personal hardship, may be unable to pay their daily living expenses, may lose insurance, and may discontinue their employment with the Debtors. A loss of employees, workforce morale, and goodwill at this juncture would undermine the Debtors' stability, and, undoubtedly, would have an adverse effect on the Debtors, their customers, the value of their assets and businesses, and their ability to achieve their objectives in chapter 11.

26. Thus, the relief requested herein is both necessary to the Debtors' successful chapter 11 cases and grounded in the Debtors' sound business judgment. Accordingly, the Debtors submit that this Court should grant the relief sought herein.

**D.    The Request for Emergency Relief and Limitation of Notice Pursuant to Local Rule 9013-4 is Appropriate.**

27. The Debtors request that this Court schedule an emergency hearing on this Motion so that the Debtors can fulfill their Payroll Obligations and continue the Employee Benefit Programs, and continue operating the businesses for the benefit of the estates and creditors.

28. If this Motion is not approved before the Debtors' next payroll obligations are due to be drawn by the Payroll Company and disbursed to employees on July 3, 2025 (due to the July 4th holiday), the Debtors' business operations—and prospects for successful reorganizations or sales—will be severely harmed because the Debtors will be unable to make ordinary payroll

payments. As stated above, the Debtors' ability to continue to compensate Employees without interruption is critical to customers' and other key constituents' support of the Debtors' chapter 11 cases. Further, any disruption or delay in payments to Employees postpetition could result in a negative reaction among Employees, customers, creditors, and others, and it is of the utmost importance for the Debtors that they maintain strong relationships and support in their chapter 11 cases as they work to reorganize in a timely, cost-effective manner. Failure to ensure that the Employees receive their expected pay could demotivate them or cause some to seek alternative employment elsewhere, especially among seasonal Employees. Thus, the Debtors seek an emergency hearing on this Motion **on or before the morning of July 3, 2025**, so that the Debtors may reassure Employees that compensation payments will be made, settle quickly into the chapter 11 cases, and timely process payroll amounts and obligations for timely disbursement in the ordinary course.

29. The Debtors, therefore, also request limited notice and propose serving notice of this Motion and any emergency hearing thereon on the following parties: (a) the United States Trustee; (b) the Debtors' secured creditors or, if applicable, to counsel representing them; (c) the top twenty (20) non-insider unsecured creditors of the Debtors or, if applicable, to counsel representing them; (d) applicable federal and state taxing authorities; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors will serve notice via email or facsimile when known. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice of this Motion need be given.

30. The Debtors will make a good faith effort to advise all affected parties of the time and date of the hearing, once established.

**BANKRUPTCY RULE 6003 IS SATISFIED
AND A WAIVER OF BANKRUPTCY RULE 6004(H) IS WARRANTED**

31. Pursuant to Bankruptcy Rule 6003, this Court may authorize payment of a prepetition claim within twenty-one (21) days after the Petition Date if such relief is necessary to avoid immediate and irreparable harm. As described above, the Employees are essential to the reorganizations of the Debtors. Failure to pay the Payroll Obligations in the first twenty-one (21) days of the cases would lead to the disruption of the Debtors' operations and reorganization efforts. Accordingly, and for the reasons set forth in greater detail above, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003.

32. In addition, the Debtors seek a waiver of any stay of the effectiveness of the Order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations and to the Employees, and that the relief is integral to the Debtors' efforts in chapter 11. Accordingly, the Debtors submit that sufficient cause exists to justify a waiver of the stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an Order, substantially in the form filed herewith, granting the relief requested herein.

*[intentionally left blank]*

| | |
|---|---|
| Dated: July 1, 2025 | Respectfully submitted,<br>**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**<br><br>*/s/ D. Sam Anderson*<br>D. Sam Anderson, Esq.<br>Adam R. Prescott, Esq.<br>100 Middle Street<br>PO Box 9729<br>Portland, Maine 04104<br>Telephone: (207) 774-1200<br>Facsimile: (207) 774-1127<br>sanderson@bernsteinshur.com<br>aprescott@bernsteinshur.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |