**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.** | **Case No. 25-20160** |
| | **(Jointly Administered)** |
| **Debtors.**[1] | |

**MOTION OF THE DEBTORS FOR AN ORDER: (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES; (II) APPROVING THE FORM OF ADEQUATE ASSURANCE PROPOSED BY THE DEBTORS; AND (III) ESTABLISHING PROCEDURES FOR RESOLVING CERTAIN DISPUTES REGARDING UTILITIES**

Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc., and Art's Lobster Co., Inc., the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), by and through undersigned proposed counsel, hereby move this Court (the "**Motion**") for entry of an order: (a) prohibiting the Debtors' Utility Providers (defined below) from altering, refusing, or discontinuing service to the Debtors; (b) approving the forms of adequate assurance proposed herein; and (c) establishing procedures for resolving certain disputes regarding utilities, including determinations as to whether a company constitutes a "utility" under § 366 of title 11 of the United States Code (the "**Bankruptcy Code**"). In support of this Motion, the Debtors state as follows:

## JURISDICTION, VENUE, AND STATUTORY BASIS

1. The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtors' chapter 11 cases pursuant to 28

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363. The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred these proceedings to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4. The bases for the relief requested herein are §§ 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND

5. On July 1, 2025 (the "**Petition Date**"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

6. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the United States Trustee.

7. The relief requested herein is supported by the Declaration of John S. Norton, Jr. in Support of Chapter 11 Petitions and First Day Pleadings, which is incorporated herein by reference.

8. The Debtors' cases are being jointly administered for procedural purposes only.

9. From their headquarters in Portland, Maine, the Debtors buy, process, and distribute premium-quality lobster tails, lobster meat, and live lobster (among other seafood) throughout the United States, Canada, Asia, and Europe. Cozy Harbor Seafood, Inc. works directly with Canadian and Maine seafood dealers, while Casco Bay Lobster Co., Inc. and Art's Lobster Co.,

Inc. work directly with fisherman to purchase the freshest seafood products for the Debtors' customers, including purchasing daily catches from Cundy's Harbor, Boothbay Harbor, Casco Bay, South Bristol, and Tenants Harbor.

10. In the ordinary course, the Debtors receive utility services (collectively, the "**Utility Services**") from certain utility providers (collectively, the "**Utility Providers**") to sustain operations at their headquarters located at 75 St. John Street in Portland, Maine, and other operating locations throughout Maine. The Utility Services and Utility Providers, as well as the average, historic monthly cost for each, are as follows:

| **Utility Provider** | **Utility Service** | **Avg. Monthly Bill** |
|---|---|---|
| Portland Water District | Water, Sprinkler, and Sewer | $17,398 |
| Unitil | Natural Gas | $6,467 |
| Central Maine Power | Electricity | $18,774 |
| **Total**: | | **$42,639** |

11. Uninterrupted Utility Services are essential for the Debtors to maintain their operations and meet their obligations in this case. Any interruption in Utility Services, even for a brief period of time, would severely, and potentially irreparably, disrupt the Debtors' operations, potentially cause damage or other harm to the Debtors, and jeopardize the Debtors' reorganization efforts. Accordingly, it is critical to the success of the chapter 11 cases and in the best interests of creditors that the Utility Services continue without interruption during the cases.

**RELIEF REQUESTED**

12. By this Motion, the Debtors seek entry of an order granting the following relief in accordance with § 366 of the Bankruptcy Code:

A. Determining that "adequate assurance of payment," within the meaning of § 366 of the Bankruptcy Code, has been furnished to the Utility Providers based on, inter alia, the Debtors' establishment of a segregated deposit account that shall contain, once deposited, the sum of **$21,319.50** for the collective benefit of the Utility Providers;

B. Prohibiting the Utility Providers from altering, refusing, or discontinuing service to the Debtors on account of any unpaid prepetition invoices, the commencement of the chapter 11 cases, or any perceived inadequacy of the proposed adequate assurance, including, without limitation, making demands for security deposits or accelerated payment terms; and

C. Approving procedures for resolving Utility Providers' requests for additional adequate assurance of future payment and authorizing the Debtors to provide adequate assurance of future payment to the Utility Providers.

## **BASIS FOR RELIEF**

### **A. Adequate Assurance Deposit and Procedures Regarding the Utility Providers.**

13. The Debtors intend to pay their postpetition obligations, including those owed to the Utility Providers, in a timely manner. The Debtors expect that funds on hand and revenue generated from future business operations, along with cash collateral authority, will be sufficient to pay the postpetition obligations related to the Utility Services on a timely basis. In addition, the Debtors' reliance on crucial utility services for the operation of their businesses provides them with a powerful incentive to stay current on their utility obligations. The Debtors respectfully submit that these factors, which this Court may consider when determining the amount of any adequate assurance payments, justify a finding that the proposed adequate assurance is appropriate and more than sufficient to reasonably assure future payment to the Utility Providers.

14. To provide additional assurance of payment to the Utility Providers, the Debtors propose depositing the amount of **$21,319.50** (the "**Adequate Assurance Deposit**") into a segregated account (the "**Adequate Assurance Account**") within thirty (30) days of the Petition Date. The Adequate Assurance Deposit constitutes the sum of approximately one-half month's average invoices for the Utility Services. The Adequate Assurance Deposit shall be held by the Debtors in the Adequate Assurance Account for the collective benefit of the Utility Providers as

adequate assurance of future payment upon the terms approved by this Court in the order on this Motion.

15. In addition, if any Utility Provider believes that it is entitled to additional or different adequate assurance based on individual circumstances, the Debtors request that this Court approve the following additional procedures (the "**Adequate Assurance Procedures**"):

a. The Debtors shall serve a copy of this Motion and any order granting the relief requested herein upon each Utility Provider within two (2) business days after entry of such order by this Court.

b. The Debtors shall deposit the Adequate Assurance Deposit in the Adequate Assurance Account within thirty (30) days of the Petition Date. The Adequate Assurance Account shall not be subject to any liens and shall not be required to accrue interest.

c. The Adequate Assurance Deposit shall be held for the benefit of the Debtors' Utility Providers and available in the event that the Debtors fail to timely pay undisputed postpetition invoices for Utility Services.

d. The Adequate Assurance Deposit shall be returned to the Debtors immediately and without notice to any party upon reconciliation and payment by any of the Debtors of their Utility Providers' final invoices in accordance with applicable non-bankruptcy law following the Debtors' termination of the Utility Services.

e. If a Utility Provider is not satisfied with the Adequate Assurance Deposit, the Utility Provider must serve a request for additional assurance (the "**Additional Assurance Request**"). The Utility Provider shall serve the Additional Assurance Request so that it is received via email by proposed counsel to the Debtors, Bernstein, Shur, Sawyer & Nelson, P.A. (Attn: Sam Anderson (sanderson@bernsteinshur.com) and Adam R. Prescott (aprescott@bernsteinshur.com).

f. Any Additional Assurance Request must: (i) be made in writing; (ii) identify the account holder's name, the account number, the type of Utility Service(s), and the location(s) for which such services are provided; and (iii) summarize the payment history relevant to the affected account(s), including any existing deposit and other security held by the Utility Provider.

g. Unless and until a Utility Provider serves an Additional Assurance Request, such Utility Provider shall be: (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with § 366 of the Bankruptcy

Code; and (ii) prohibited from: (A) discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of the commencement of the Debtors' chapter 11 cases, any unpaid prepetition charges, or any perceived inadequacy of the Adequate Assurance Deposit, and (B) requiring or seeking additional assurance of payment other than the Adequate Assurance Deposit.

h. The Debtors shall have 21 days from receipt of an Additional Assurance Request (the "**Resolution Period**") to negotiate with the Utility Provider to resolve the Additional Assurance Request. The Resolution Period may be extended by agreement of the Debtors and the applicable Utility Provider.

i. The Debtors may resolve any Additional Assurance Request by mutual agreement with a Utility Provider if the Debtors determine that such Additional Assurance Request is reasonable and may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, or other forms of security, in each case.

j. If the Debtors determine that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider, the Utility Provider, during or immediately after the Resolution Period, shall request a hearing (a "**Determination Hearing**") before this Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to § 366(c)(3) of the Bankruptcy Code.

k. Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider shall be prohibited from altering, refusing, or discontinuing service to the Debtors on account of: (i) unpaid claims or charges for prepetition services; (ii) a pending Additional Assurance Request; or (iii) the commencement of the chapter 11 cases.

l. If any provider believes that it is a Utility Provider but was not identified in this Motion as such, that provider shall be bound by the terms of the Adequate Assurance Procedures and shall be, unless and until otherwise ordered by this Court: (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with § 366 of the Bankruptcy Code; and (ii) prohibited from: (A) discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of the commencement of the chapter 11 cases, any unpaid prepetition charges, or any perceived inadequacy of the proposed adequate assurance, and (B) requiring additional assurance of payment other than Adequate Assurance Deposit.

**B. The Relief Requested is Consistent with § 366 of the Bankruptcy Code.**

16. Congress enacted § 366 of the Bankruptcy Code to protect a debtor from immediate termination of utility services after filing for bankruptcy, while at the same time providing utility companies with adequate assurance of payment for postpetition utility services. See H.R. Rep. No. 95-595, at 350 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, § 366 of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of 30 days after a chapter 11 filing. See 11 U.S.C. § 366(c)(2).

17. Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" to mean several enumerated forms of security (e.g., a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or other mutually agreed upon security), while § 366(c)(1)(B) expressly excludes from such definition an administrative expense priority for a utility's claim. In addition, § 366(c)(3)(B) of the Bankruptcy Code provides a list of factors that courts are not to consider when evaluating whether a proposed adequate assurance payment is, in fact, adequate. The factors not to be considered are: (i) the absence of security before the petition date; (ii) a debtor's history of timely payments; and (iii) the availability of administrative expense priority.

18. Section 366(c) requires only that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay postpetition. See, e.g., In re KeyData Corp., 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) ("[A]dequate assurance of payment does not require an absolute guarantee of payment. What is required is that the utility be protected from an unreasonable risk of nonpayment.") (internal quotations omitted); In re Caldor, Inc., 199 B.R. 1, 3 (S.D.N.Y. 1996)

(noting that § 366(b) "does not require an 'absolute guarantee of payment'") (citation omitted)), aff'd sub nom., Va. Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646 (2d Cir. 1997); In re Adelphia Bus. Sols., Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (similar).

19. Further, § 366(c)(2) states that "with respect to a case filed under chapter 11, a utility . . . may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor . . . adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2). Section 366(c)(2), therefore, provides that, in chapter 11 cases, the debtor has 30 days from the petition date to provide a utility with satisfactory adequate assurance, which, under § 366, includes a cash deposit. See 11 U.S.C. § 366(c)(1)(A); see also In re Bedford Town Condo., 427 B.R. 380, 384 (D. Md. 2010) (explaining that, pursuant to § 366(c)(2), "if a debtor fails to pay the adequate assurance required by the utility within the first thirty days of the case, the utility may discontinue service, subject to § 366(c)(3)"); In re Beach House Prop., LLC, No, 08-11761-BKC-RAM, 2008 WL 961498, at *2 (S.D. Fla. Apr. 8, 2008) (citing § 366(c)(2) in a chapter 11 case and stating that "[a]s long as the debtor then pays the Court ordered amount by the 30th day, the debtor will have complied with § 366 and the utility may not discontinue service").

20. In determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Va. Elec. & Power Co., 117 F.3d at 650; see also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that utility deposits were not necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). In fact, there

is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of the debtor to provide adequate assurance of payment to a utility company should be nominal or even zero.

21. Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Debtors assert that most, if not all, of the Utility Providers have adequate assurance of payment, even without recourse to the Adequate Assurance Deposit. The Debtors anticipate having sufficient resources to pay, and intend to pay, all valid postpetition obligations for Utility Services in a timely manner. In addition, the Debtors' reliance on Utility Services to continue their operations and preserve the value of their assets provides them with a powerful incentive to stay current on their obligations. These factors, which this Court may consider when determining the amount of any adequate assurance payments, justify finding that the Debtors are not required to make any additional adequate assurance payments in the chapter 11 cases.

22. Further, the Adequate Assurance Procedures are necessary for the Debtors to implement their chapter 11 strategy without unnecessary and costly disruptions on account of discontinued Utility Services. If the Adequate Assurance Procedures are not approved through an order, the Debtors may be confronted with and forced to address numerous requests by the Utility Providers at a critical time for their reorganization. Moreover, the Debtors could be blindsided by a Utility Provider alleging that it is not adequately protected, and, therefore, either is entitled to make an exorbitant demand for payment to continue providing service or discontinue providing service to the Debtors. Such an outcome would jeopardize the Debtors' ability to continue operating and successfully reorganize.

23. Under the circumstances of the cases, the Debtors assert that the establishment of a cash reserve in the form of the Adequate Assurance Deposit, combined with the Debtors'

payment for the Utility Services in the ordinary course postpetition, constitutes adequate assurance of payment under § 366(c) of the Bankruptcy Code.

## NOTICE

24. Notice of this Motion will be served on the following parties on the date and in the manner set forth in the certificate of service: (a) the U.S. Trustee; (b) the Debtors' secured creditors, or, if applicable, to counsel representing such creditors; (c) the non-insider holders of the twenty largest unsecured claims against the Debtors or, if applicable, to counsel representing such holders; (d) applicable federal and state taxing authorities; (e) all parties that have filed a notice of appearance or requested notice in the cases; and (f) the Utility Providers.

## REQUEST FOR WAIVER OF STAY

25. The Debtors seek, to the extent applicable, a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations, going-concern value, and their efforts to pursue a restructuring of the businesses. Accordingly, the Debtors submit that cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## RESERVATION OF RIGHTS

26. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under § 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to an order of this Court is not intended to be, nor should it be construed as, an

admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court enter the proposed order, in the form filed herewith, granting the relief requested herein, and grant such other and further relief as is just and proper.

Dated: July 3, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ Adam R. Prescott*

D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
100 Middle Street
PO Box 9729, Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*