*RELIEF REQUESTED WITHOUT A HEARING*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-20160<br><br>(Jointly Administered) |

**APPLICATION OF THE DEBTORS FOR ORDER PURSUANT TO §§ 327 AND 328 OF THE BANKRUPTCY CODE AUTHORIZING EMPLOYMENT OF CORPORATE FINANCE ASSOCIATES NEW ENGLAND, LLC AND CORPORATE FINANCE SECURITIES, INC. AS BUSINESS BROKER AND TRANSACTION ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc., and Art's Lobster Co., Inc., the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby move this Court (the "**Application**"), for entry of an order, pursuant to §§ 327 and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 9013-3 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), authorizing the employment of Corporate Finance Associates New England, LLC and Corporate Finance Securities, Inc. (collectively, "**CFA**"), as business broker and transaction advisor for the Debtors, effective as of the Petition Date (defined below).  Simultaneously with the filing of this Application, the Debtors are filing the *Declaration of Peter Moore* in support hereof (the "**Moore Declaration**"), which is attached hereto as **Exhibit A** and incorporated herein by reference.  In

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363.  The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

1

further support of the Application, the Debtors state as follows:

## JURISDICTION, VENUE AND STATUTORY BASIS

1. The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4. The predicates for the relief sought herein are §§ 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014 and 2016, and Local Rules 2014-1 and 9013-3.

## BACKGROUND

5. On July 1, 2025 (the "**Petition Date**"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

6. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the cases by the United States Trustee.

7. The Debtors' cases are being jointly administered for procedural purposes only.

## RELIEF REQUESTED

8. Subject to the approval of this Court, the Debtors seek to employ CFA to serve as their business broker and transaction advisor, and to provide necessary, related broker services in connection with the Debtors' going concern sale strategy in the bankruptcy cases, upon the terms

set forth in the engagement agreement, dated July 21, 2025 (the "**Engagement Agreement**"), which is attached to the Moore Declaration as **Exhibit 3** and incorporated herein by reference.

## BASIS FOR RELIEF

### A. Legal Standard

9. Section 327(a) of the Bankruptcy Code provides that a debtor-in-possession is authorized to employ one or more professionals who do not hold or represent an interest adverse to the estate and that are "disinterested persons," as that term is defined in § 101(14), to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. See 11 U.S.C. §§ 101(14), 327(a). Section 328(a) of the Bankruptcy Code provides that professionals employed pursuant to section 327(a) may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." See id. § 328(a).

### B. Background and Services to be Provided by CFA

10. The Debtors (and certain affiliates and insiders as reflected in the Engagement Agreement) retained CFA on or about March 12, 2025, to provide marketing and sale services for the Debtors' strategy of executing a going concern sale of some or all of the Debtors' assets.[2] The Debtors selected CFA because of CFA's extensive experience, through Peter Moore, in running sale processes for businesses in Maine and elsewhere, and on its track record and reputation concerning the marketing and sale of businesses and their assets. Accordingly, the Debtors submit that CFA is well qualified to provide the necessary broker services in the cases.

---

[2] In the original engagement letter dated March 12, 2025, CFA was retained by the Debtors and various affiliates and insiders. To clarify CFA's retention in these cases, the original engagement letter was modified on or about July 21, 2025, through the Engagement Agreement filed herewith. The primary changes were to limit the Engagement Agreement to only the Debtors and to remove WNDK, LLC, Tenants Harbor Wharf, LLC, John Norton, and Joseph Donovan as parties represented by CFA under the Engagement Agreement. CFA's scope of work and compensation as to the Debtors was not modified between the original engagement letter and the June 11 Engagement Agreement.

11. Further, the services to be provided by CFA are set forth in more detail in the Engagement Agreement and include (without limitation) the following:

(a) Conduct an investigation and analysis with respect to the businesses and operations of the Debtors and of the industry and markets in which they operate.

(b) Prepare a Summary Executive Profile and a Confidential Information Memorandum (the "**CIM**") and other evaluation material as is customary or as CFA considers appropriate in the circumstances.

(c) Contact buyers via written or email communication, telephone calls and/or in person, and provide the CIM and other materials to potential buyers.

(d) Solicit written offers from buyers outlining a range of value, terms of a sale or investment, sources of funding, and timeline for completion of a transaction.

(e) When appropriate, arrange and participate in visits by selected buyers, and make such introductions and perform such services as CFA believes desirable to develop buyers' interest in the businesses.

(f) Assist the Debtors in negotiations with buyers and analyzing transaction proposals.

(g) Assist the Debtors in managing the due diligence process.

(h) Assist the Debtors in the negotiation and execution of the final definitive agreements and in the closing of a transaction.

**C. CFA is Disinterested and Does Not Have Any Adverse Interests.**

12. Except to the extent connections are disclosed in the Moore Declaration, CFA does not have any connection with, or any interest adverse to, the Debtors, their creditors, any other party in interest, their respective attorneys and accountants (to the extent known), the United States Trustee, or persons known to CFA as employees of the Office of the United States Trustee. Accordingly, the Debtors believe that CFA does not hold or represent any interest adverse to the Debtors' estates and is a "disinterested person" as that phrase is defined in Bankruptcy Code § 101(14), as modified by § 1107(b).

**D.    Arrangement for Compensation and Reimbursement of Expenses**

13.    CFA did not hold a claim against the Debtors as of the Petition Date.

14.    The Debtors propose to pay CFA in these cases as follows, as set forth in the Engagement Agreement, and as subject to Court approval following a fee application:

(a)    CFA shall be reimbursed for reasonable, actual out-of-pocket expenses of the engagement, such as travel and lodging (the "**Expense Reimbursement**").

(b)    When each of the Transaction(s) (defined below) are closed, the Debtors shall pay a success fee (the "**Success Fee(s)**") in cash equal to 5.50% (five and one-half percent) of the Transaction Value (defined below), except that, for any senior debt financing commitments (including any renewals, maturity extensions, or forbearance of any kind) obtained for, and accepted by the Debtors, the Debtors shall pay CFA in cash an amount equal to 1.50% (one and one-half percent) of such financing amount.

(i)    "**Transaction**" means the financing, and the sale of certain assets and business operations of the Debtors, to a strategic or financial buyer, or lender/investor target, in one or a series of transactions, on behalf of the Debtors.

(ii)    "**Transaction Value**" means, without duplication, the total value of and/or all consideration, including cash, securities or interests, notes, security rights, escrow amounts, contingent payments, or other property, paid or received or to be paid or received, directly or indirectly, by the Debtors or any of its equity holders as consideration for the sale of the assets or securities of the Debtors in connection with a Transaction. Moreover, Transaction Value also means any and all consideration received by the Debtors, including cash, lines of credit, capital equipment, any assets and all other types of consideration or value received by the Debtors arising directly or indirectly from various forms of senior secured debt, junior debt, mezzanine, asset based loans, capital or operating leases, mortgage financing, construction loans, bridge loans, high yield debt and any or all forms of unsecured debt, among any and all other forms of debt.

15.    In addition, the Debtors paid to CFA a non-refundable Engagement and Marketing Work Fee of $30,000.00 (the "**Work Fee**"), which was fully funded to CFA prior to the Petition Date.

16. The Debtors submit that the Work Fee, Expense Reimbursement, and Success Fee(s) structure is reasonable given CFA's experience, knowledge of the Debtors' businesses, and the scope of services to be provided, and this Court should approve the fee structure, subject to a determination of the final amounts to be paid upon application for allowance of compensation.

17. Further, given the nature of CFA's compensation structure, CFA's compensation will be determined separately as to each Debtor based on the Transaction Value received for each such Debtor's assets, and any allowed Expense Reimbursement may be allocated according to the same Transaction Value ratio, once known. CFA will present such calculations and allocations in its fee application for Court review and approval at the appropriate time in these cases.

18. In accordance with Local Rule 2014-1(c), the Debtors' state that CFA's compensation will depend on the outcome of the sale process, so an estimate cannot be provided at this time.

19. Further, the Debtors highlight the following additional provisions in the Engagement Agreement:

    (a) **Term**: The engagement will continue for an initial period of nine (9) months from the date of the Engagement Agreement, which period shall be automatically extended for successive thirty (30) days periods unless either party provides written notice to the other of its intent not to extend the period.

    (b) **Termination**: Either party may terminate the engagement at any time by providing at least thirty (30) days prior written notice of the termination.

    (c) **Tail**: In the event any Transaction is consummated within a period of twenty-four (24) months subsequent to the termination of the engagement, with one or more parties on CFA's "**Target List**" (as evidenced by a list of such targeted parties to be delivered by CFA within twenty (20) days following the termination of the Engagement Agreement), the Debtors shall pay to CFA the Success Fee (as described above) with respect to such Transaction(s).

    (d) **Limitation of Liability**: The Debtors agree that CFA will not be liable to the Debtors for any claims, losses, damages, liabilities, costs or expenses

6

related to the engagement for any amounts in excess of any compensation paid to CFA by the Debtors hereunder, <u>except</u> to the extent finally judicially determined to have resulted from the gross negligence or willful misconduct of CFA. In no event will CFA be liable for consequential, special, indirect, incidental, punitive or exemplary losses, damages or expenses.

(e) **Indemnification**: The Debtors agree to indemnify and hold harmless CFA and their respective control persons, directors, officers, employees and agents to the fullest legal extent against any and all claims, losses, damages, liabilities, costs and expenses as incurred (including all reasonable fees and disbursements of counsel) in connection with any pending or threatened claim, litigation or other proceeding, arising out of or related to any actual or proposed Transaction or CFA's engagement hereunder; <u>provided</u>, <u>however</u>, there shall be excluded from such indemnification, any such claims, losses, damages, liabilities, costs or expenses that is found in a final judicial determination to constitute willful misconduct or gross negligence on the part of CFA. In no event will the Debtors be liable for consequential, special, indirect, incidental, punitive or exemplary losses, damages or expenses to CFA.[3]

20. The indemnification provisions were negotiated between the Debtors and CFA at arm's length, and the Debtors respectfully submit that the indemnification provisions are reasonable and in the best interests of the Debtors, their estates, and creditors. Accordingly, as part of this Application, the Debtors request that this Court approve the indemnification provisions.

### E. CFA's Retention Should be Effective as of the Petition Date.

21. Local Rule 2014-1(b)(2) provides that "[i]f an application to retain a chapter 11 professional is filed within 30 days of the petition, the order authorizing retention will be effective as of the filing of the petition." Here, CFA began working for the Debtors prior to the Petition Date, and CFA continued that work through the beginning of the cases. The Debtors are filing this Application within 30 days of the Petition Date, and, pursuant to Local Rule 2014-1(b)(2), the Court should make CFA's retention retroactive to the Petition Date.

---

[3] The Engagement Agreement contains an arbitration provision. As set forth in the proposed order filed with this Application, the Debtors request that this Court maintain exclusive jurisdiction to resolve any dispute with the Debtors arising under or related to CFA's engagement or the Engagement Agreement.

7

### F. No Duplication with Other Professionals

22. The Debtors will seek to retain additional professionals in these cases, including Bernstein, Shur, Sawyer & Nelson, P.A., as general bankruptcy counsel and Opus Consulting Group, as financial advisor. The Debtors do not believe that CFA's services will overlap with or duplicate the services of any other retained professional in the cases. CFA, moreover, will take all appropriate steps to avoid unnecessary and wasteful duplication of efforts by any other professionals retained in the chapter 11 cases, and all professional fees will remain subject to review by this Court and parties in interest.

### NOTICE

23. Notice of this Application shall be served in the manner set forth in the certificate of service.

### CONCLUSION

Based on the foregoing, the Debtors request that this Court enter an order authorizing the employment of CFA as its business broker and transaction advisor on the terms set forth herein, the Engagement Agreement (as may be modified by the Order granting this Application), and in the proposed form of order filed herewith, and that any and all fees and expenses to be paid in this proceeding shall be approved by this Court in accordance with the Bankruptcy Code and any other applicable orders of this Court.

*[intentionally left blank]*

Date: July 29, 2025

Respectfully submitted,

**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ D. Sam Anderson*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
100 Middle Street
PO Box 9729, Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Proposed Counsel to the Debtors and Debtors in Possession*