## <u>Exhibit A</u>
**Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.** | **Case No. 25-20160** |
| | **(Jointly Administered)** |
| **Debtors.[1]** | |

**DECLARATION OF PETER MOORE IN SUPPORT OF APPLICATION OF THE DEBTORS FOR ORDER PURSUANT TO §§ 327 AND 328 OF THE BANKRUPTCY CODE AUTHORIZING EMPLOYMENT OF CORPORATE FINANCE ASSOCIATES NEW ENGLAND, LLC AND CORPORATE FINANCE SECURITIES, INC. AS BUSINESS BROKER AND TRANSACTION ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

I, Peter Moore, declare (this "**Declaration**"), pursuant to § 1746 of title 28 of the United States Code, as follows:

1.      I am the Managing Director & Principal of Corporate Finance Associates New England, LLC and the Registered Representative & Principal of Corporate Finance Securities, Inc. (collectively, "**CFA**").

2.      I submit this Declaration in the chapter 11 cases of the above-referenced debtors (the "**Debtors**") in support of the above-referenced application to employ CFA (the "**Application**").

**DISINTERESTEDNESS OF PROFESSIONAL**

3.      I am not related and, to the best of my knowledge, no other professional at CFA is related, to any United States Bankruptcy Judge in this District or the United States Trustee for this

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363.  The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

District or any employee thereof.

4.    In accordance with Local Rule 2014-1:

(a)    Based on CFA's conflicts search conducted to date and described herein, to the best of my knowledge, neither I, nor CFA, nor any member thereof, insofar as I have been able to ascertain, holds an interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants. CFA's connections with creditors and other parties in interest are disclosed below; CFA believes that none of those connections is disqualifying under the applicable statutes and rules.

(b)    I am, and each member of CFA is, a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code, in that CFA and its employees and members:

(i)    are not creditors, equity security holders, or insiders of any of the Debtors; and

(ii)    are not and were not, within two (2) years before the date of filing of the Debtors' cases, directors, officers, or employees of the Debtors.

5.    CFA has conducted a search of its records for any connections to the persons and entities listed on **Exhibit 1** attached to this Declaration, which comprises secured creditors, accounts payable parties, taxing authorities, and utility providers relating to the Debtors. The information listed on **Exhibit 1** may be updated or may change during the pendency of the bankruptcy cases. I will update this Declaration when necessary and promptly after I become aware of additional material information.

6.    CFA discloses the following connections with the entities listed on **Exhibit 1**:

(a)    I maintain a personal bank account at TD Bank.

(b)    Corporate Finance Associates New England, LLC maintains a business bank account at TD Bank.

(c)    Attorney Richard Olson of Curtis Thaxter referred this matter to CFA. Mr. Olson is representing WNDK, LLC during this case.

(d)    CFA has a copier/scanner lease with Kyocera/Wells Fargo Equipment Finance.

(e)    Pursuant to the original March 2025 engagement letter, CFA also was

2

retained by: (i) WNDK, LLC and Tenants Harbor Wharf, LLC (non-debtor affiliates of the Debtors), and (ii) John Norton and Joseph Donovan (owners of WNDK, LLC and insiders of the Debtors, including based on their status as equity holders of Cozy Harbor Seafood, Inc.). To avoid confusion, that original engagement agreement was modified on or about July 21, 2025, to remove the non-debtor parties and related real estate sales, as reflected in the Engagement Agreement (defined below). CFA may continue to provide broker services to some or all of these affiliated non-debtor parties during these cases under a separate (non-exclusive) engagement agreement (including, as circumstances may require, negotiating with potential buyers of the Debtors' assets that are also interested in acquiring or leasing these non-debtor real estate assets as part of the same transaction).

7.      With respect to the entities listed on **Exhibit 1**, CFA has not and will not represent such party in any matters related to these bankruptcy cases (other than the potential broker services for non-debtors as disclosed herein, in the event a buyer of the Debtors' assets is interested in those non-debtor real estate assets). Moreover, in the past, CFA may have served as a professional person in matters wholly unrelated to the Debtors or the bankruptcy cases, in which many other attorneys, accountants, and other professionals of the Debtors, creditors, or other parties in interest also may have served or serve as professional persons. I do not believe any of these ordinary interactions constitute conflicts.

## SCOPE OF ENGAGEMENT

8.      CFA began working for the Debtors in March 2025 and has provided broker services to the Debtors since that time. CFA proposes to provide the services to the Debtors as set forth in the Application and the Engagement Agreement.

## PROFESSIONAL COMPENSATION

9.      CFA does not hold a claim against the Debtors as of the Petition Date.

10.     My biography is attached as **Exhibit 2** to this Declaration.

11.     With respect to fees and expenses incurred after the Petition Date, the Debtors propose to pay CFA the amounts set forth in the engagement agreement dated July 21, 2025, and

3

attached hereto as **<u>Exhibit 3</u>** (the "**<u>Engagement Agreement</u>**"), <u>provided</u> that the non-refundable

Work Fee (as defined in the Engagement Agreement) in the sum of **<u>$30,000.00</u>** was paid prior to

the Petition Date in installments between March and June 2025.

      I certify under penalty of perjury that the foregoing is true and correct.


Dated: July 29, 2025                       /s/ *Peter Moore*
                                       Peter Moore

## Exhibit 1
**Searched Parties**

# Cozy Harbor Seafood

35 UNION LLC
Acadia Insurance
Amato's Sandwich Shops, Inc
AMCS OpCo LLC
Applied Refrigeration Services
Aqua Production Systems
Araho transfer
Arbutus Cove Enterprises
Area 52
Atlantic Coast Seafood, Inc
Atlantic Recycling Equipment
Baader North America Corp.
Bangor Savings Bank
Base
Beaver Enterprises, Inc
Belt Power LLC
Butler Brothers Industrial Supply
Camden National Bank
Cape Ann Seafood Exchange
Cape Bald Packers
Central Maine Power
Channel Fish Processing Co Inc
Chep USA
Cintas
City of Portland
City of Portland Depatment of Public Works
Coastal  Carriers, Inc
Coface North America Insurance Company
CoolSeal USA
Corporate Payment Systems
Crosspack, Inc
Crown Lift Trucks
Crow's Nest Property
Cryovac Sealed Air Corporation
Cunningham Security Systems
Curtis Thaxter  LLC
Dead River Company
Doug's Fresh Express
Downeast Energy
Durants Wharf, Inc.
East Coast Seafood, LLC DBA Seatrade International
Equitable Payment Center
F.W Webb Company
F/V Fishin Addiction
F/V Max & Emma
F/V TIMBERWOLF

Fedex Corporation
FFE Transportation Services Inc
Fisherman's Wharf Gloucester
Flores & Associates
Food Prep Solutions
Frederick Safety Services
Freightliner of Maine
Frosty Seas
Galway Transport Inc
Goodyear Commercial Tire & Services
Grainger
Graybar Electric Company, Inc
Guys Locksmith
GWI
Hall Internet Marketing
Hamilton Marine
Harbor Fish Market
Harcros Chemical Inc
Hygiena LLC
Independent Fisheries Limited
Industrial Calibration
Internal Revenue Service
International C Food Inc.,
Intral Worldwide LLC
Ion Networking
IPFS Corporation
JK Marine dba Louisbourg Seafood, Ltd.
Johnson Controls
Katahdin Analytical Services
KCV Trailer Rentals
Key Bank, N.A.
Kyocera
Laitram Machinery INC
Lineage Logistics PFS, LLC
Lineage Logistics, LLC
LITTLE BAY LOBSTER
Logtek Inc
Loma Systems Inc
Maine Department of Agriculture, Conservation & Forestry
Maine Department of marine Resources
Maine Hardware
Maine Marine Supply
Maine Revenue Services
Maine Scale LLC
Marel Inc.
Marine Stewardship Council International Ltd

Massachusetts Port Authority
Matheson Tri-Gas Inc
Matrix Sciences
McMaster-Carr Supply Company
Mechanical Services, Inc
Memic
Mesa Labs
Messer LLC
Mike Hahn
Miner, Ltd.
Modern Pest Services
Multivac
Mutual Of Omaha
NEPW Logistics Inc
New England Kenworth
NHDOT E-Z Pass
Northeast Laboratory Services
Northern Ocean Sea Products LLC dba Northern Ocean Marine
NWD Inc
Packaging Products Corp.
Packedge
Pallet One - Issacson lumber Company
Plastic Supply
PNC EQUIPMENT FINANCE
Portland Fish Exchange
Portland Plastic Pipe
Portland Water District
Power Products Systems
Progressive Scale & Label Systems, LLC
Purdy Powers & COmpany
Pyramid Transport & Cold Storage
Quadient Finance USA, Inc
Retail Services Co.
Robinson's Wharf, Inc.
Ross Industries, Inc.
Ryder Transportation Services
Sea Salt LLC
SEDNA TECHNOLOGIES
Share-ify
South Bristol Fisherman's Co-Op
Staples
Stavis Seafoods LLC
Taylor Lobster Company LLC
Taylor Services, LLC
TCN Holdings, LLC d/b/a ODORITE Co.
TD Bank

The Cote Corporation
TOM RENEHAN
Tom Scola
Tribune Seafood Limited - C/O T65045
Trillium Drivers
Troiano Waste Services, Inc
Ubaldo Chach Julian
Uline
Ultra Source LLC
Unifirst Corporation
United States Department of Commerce - National Marine Fisheries Service
UNITIL
US Cellular
USA Container Freezer & Refrigeration, LLC
VERNO d'EON FISHING SUPPLIES LTD
Vessel Services, Inc.
Village of Tenants Harbor
Vital Delivery Solutions LLC
Volk Packaging Corporation
WD Matthews
Wedgeport Lobsters Limited
Wells Fargo Equipment Finance, Inc.
Wells Fargo Vendor Financial Services, LLC
Whitecap International Seafood Exporters
WNDK Limited Liability Company
Worldwide Perishables Enterprises LLC
WQS, LLC
Wright Express Fleet Services
Zep Manufacturing Co.
Zoro Tools, Inc.

# Casco Bay Lobster

Bangor Savings Bank
Brent Nappi
C.B.S. Lobster & Bait, Inc
Camden National Bank
City of Portland
Dave Dyer
David Johnson
Intact Services USA
Internal Revenue Service
Johnathan Norton
Key Bank, N.A.
Maine Revenue Services
Michael Floyd
Michael Johnson
Russell Langmaid
Seth Mayberry
TD Bank
Vessel Services, Inc.
Village of Tenants Harbor
Wells Fargo Equipment Finance, Inc.

# Art's Lobster

Alan A Post
Alex Ausplund
Bangor Savings Bank
Belinda Anderson
Brendan G. Newell
Camden National Bank
Central Maine Power
Charter Communications
City of Portland
Consolidated Communications
Crown Lift Trucks
Cunningham Security Systems
Dale Carlson
Darrell Olsen
David Hupper
Internal Revenue Service
John Armstong
John Hansen
Key Bank, N.A.
Maine Revenue Services
Maritime Energy
Michael Ames
MIDCOAST MARINE SUPPLY
Ocean Explorer, LLC
Office of the U.S. Attorney
O'Hara Corporation
R & D Trash Removal, Inc.
TD Bank
Tenants Harbor Wharf LLC
Tytan International, LLC
Village of Tenants Harbor
Wells Fargo Equipment Finance, Inc.
William Lunt

## Exhibit 2
## Biography

Peter Moore is the Managing Director and Principal of the Portland, Maine, Corporate Finance Associates office. His career spans over 48 years of business experience including 18 years as a corporate banker involving positions with Chemical Bank, New York (now part of J.P. Morgan Chase), several predecessors of Bank of America, the last as a Senior Vice President-Commercial Banking of Fleet Bank.  For the last 20 years his focus has been primarily sell-side M&A advisory assignments and financing business growth strategies. This includes extensive experience working with strategic and financial buyers of businesses, and institutional and private capital sources, structuring financing and building long lasting relationships for clients and capital providers alike.

Peter's industry experience is extensive and includes, among others, working with telecommunications, cellular phone, radio and television, electronics, hospitals, health care administration, nursing homes, heavy manufacturing, ship building, boat manufacturing, specialty metal products manufacturing, furniture and wood products manufacturers, food wholesalers and processors, restaurants, retailing, agriculture, lumber mills, concrete products industry, aquaculture, aviation and avionics, real estate development, project financing, professional service firms, specialty laboratories, and much more.

He currently divides his time between client-based M&A advisory services, capital raising for growth-oriented companies, established manufacturing and distribution firms, and real estate project finance clients, throughout New England.

Peter is a member of the Board of Directors of Corporate Finance Associates Worldwide, Inc. (CFAW, Inc.), and a Board Member of Corporate Finance Securities, Inc. a captive broker-dealer affiliated with CFAW, Inc.

Peter is a 1975 graduate of St. Michael's College, Winooski, VT. He has completed graduate studies at Pace University, New York and The University of Southern Maine, Portland, Maine. He holds the FINRA Series 7, 24, 63,79 and 99 securities licenses.

**<u>Exhibit 3</u>**
**Engagement Agreement**



**CORPORATE FINANCE ASSOCIATES**

One Union Street, Ste: #200
Portland, ME 04101
T/ 207-772-2221
M/ 207-712-0720 (Peter Moore)
E: pmoore@cfaw.com

**July 21, 2025**

<span style="color:red">**REVISED**</span>

**SENT VIA EMAIL**

John Norton, Co-Founder, President and Principal Co-Owner
Joseph Donovan, Co-Founder, Technical Manager, and Principal Co-Owner
Cozy Harbor Seafood, Inc. and Affiliates
75 St. John Street
Portland, ME 04102

Re: _**Sale and or Financing of Assets Associated with Cozy Harbo Seafood, Inc.:**_

Dear John and Joe,

<span style="color:red">This engagement letter agreement supersedes all previous engagement proposals offered to Cozy Harbor Seafood, Inc. and its affiliates, subsidiaries, related real estate entities, and principal owners.</span>

This letter agreement confirms our understanding of the engagement of **Corporate Finance Associates New England, LLC** ("Advisor"), and **Corporate Finance Securities, Inc.** ("Broker", and together, referred to herein as "Consultant") by **Cozy Harbor Seafood, Inc.**, a Maine Corporation and its wholly owned subsidiaries **Art's Lobster Co., Inc.** and **Casco Bay Lobster Co., Inc.** ("Cozy Harbor" or the "Company") as exclusive advisor to the **Company** in connection with both the financing, and the sale of certain assets and business operations of the **Company,** to a strategic or financial buyer, or lender/investor target, in one or a series of transactions, on behalf of the Company (the "Transaction(s)").

_**Services:**_
Accordingly, the Company is engaging Consultant to perform the services on the following matters (hereinafter defined as the "Services"). Consultant and the Company agree as follows:

Consultant will provide the following services in connection with this engagement:

Accelerated M&A Engagement Activities and Scope of Services:

   a.  Conduct such an investigation and analysis as Advisor considers appropriate with respect to the business and operations of the Company and of the industry and markets in which it serves. This will include assisting the Company with the sale/divestiture of its business operations and assets located at 75 St. John Street, Portland, Maine; the sale of its business operations and assets located in Tenant's Harbor, Maine, and the assets and business operations located at Union Wharf, Portland, Maine.

   b.  Develop a list of potential buyers, lenders/investors, and other parties, including those provided by the Company.

   c.  Prepare an Summary Executive Profile (the blind "Teaser") and a Confidential Information Memorandum ("CIM") and other evaluation material as is customary or as Advisor considers appropriate in the circumstances, describing the Company, its history, the nature of its operations, and such financial and business information as may be appropriate to reflect Company's past performance and future potential.

   d.  Contact buyers via written or email communication, telephone calls and/or in person, and



provide the CIM and other materials to those potential buyers.

e. Solicit written offers ("Indications of Interest") from buyers outlining a range of value, terms of a sale or investment, sources of funding, and timeline for completion of a transaction.

f. Summarize the Indications of Interest for the Company, including background information on each buyer.

g. When appropriate, arrange and participate in visits to the Company's headquarters and operating facilities by selected buyers, and make such introductions and perform such services as Advisor believes desirable to develop buyers' interest in the business.

h. Assist the Company in negotiations with buyers.

i. Assist the Company in analyzing Transaction proposals as received.

j. Assist the Company in executing a "Letter of Intent" that outlines the specific value and terms of a Transaction.

k. Assist the Company in managing the due diligence process.

l. Assist the Company in the negotiation and execution of the final definitive agreements and in the closing of the Transaction.

m. Engage in the above activities with promptness, courtesy, punctuality and professionalism.

In addition to the above listed activities Consultant will undertake the following general activities:

n. Advisor and Company will enter into a process with targeted strategic and financial buyers. The process is meant to establish a level of interest and positions with various targets on different structures and pricing and, upon review and approval by the Company, prospectively close a Transaction(s) with one or more of these targeted opportunities.

o. Advisor will review all information provided by Company, including: a completed management questionnaire, financial statements, projections as appropriate, among other related pertinent information as may be reasonably necessary and/or requested by targeted investors or buyers.

p. Upon review and approval by the Company, of the Advisor's marketing presentation materials, Advisor will proceed to market with a targeted process, including without limitation, with one or more of the following types of qualified targets: private equity; family offices, industry strategic buyers, or other financial buyers ("Target(s)").

*Compensation*:

a. The Company agrees and covenants to pay Advisor a non-refundable Engagement and Marketing Work Fee of $30,000 (the "Work Fee"), payable as follows: *(Advisor acknowledges this is Paid in Full)* 1.) Upon the signing and acceptance of this Agreement, Company shall pay Advisor $15,000 2.) After the date of acceptance by the Company, the Company shall make two payments of $7,500 each - 30, 60, days respectively, following the date of acceptance of this engagement.

b. Advisor will be reimbursed for actual out-of-pocket expenses of the engagement such as travel and lodging. Expenses exceeding $250.00 will require pre-approval by the Company.

c. All payments and expense reimbursements due hereunder shall be made by wire transfer or direct deposit, or as otherwise mutually agreed to by both Advisor and Company.

A.)    When each of the Transaction(s) are closed, the Company agrees and covenants to pay Consultant a Success Fee (the "Success Fee(s)") in cash, at the time of any transaction closing, equal to 5.50% (five and one half percent) of the Transaction Value, <u>except that</u>, for any senior

*Corporate Finance Associates        One Union Street, Suite #200, Portland, ME 04101          2 of 5*

debt financing commitments (including any renewals, maturity extensions, or forbearance of any kind) obtained for, and accepted by the Company, the Company shall pay Consultant in cash, at the time of such financing closing, an amount equal to 1.50% (one and one half percent) of such financing amount.

As used in this letter agreement, the "Transaction Value" means, without duplication, the total value of and/or all consideration, including cash, securities or interests, notes, security rights, escrow amounts, contingent payments, or other property, paid or received or to be paid or received, directly or indirectly, by the Company or any of its equity holders as consideration for the sale of the assets or securities of the Company in connection with a Transaction. Moreover, "Transaction Value" also means any and all consideration received by the Company, including cash, lines of credit, capital equipment, any assets and all other types of consideration or value received by the Company arising directly or indirectly from various forms of senior secured debt, junior debt, mezzanine, asset based loans, capital or operating leases, mortgage financing, construction loans, bridge loans, high yield debt and any or all forms of unsecured debt, among any and all other forms of debt.

Any Fee, a portion of which is attributable to a Transaction involving a security, as defined by the Securities Act of 1933, shall be paid to directly to Broker. Any other fees shall be paid to Advisor.

*Term:* This engagement will commence on the date of this letter agreement and continue for an initial period of nine (9) months, which period shall be automatically extended for successive thirty (30) day periods unless either party provides written notice to the other of its intent not to extend the period.

Either party may terminate the engagement at any time by providing at least thirty (30) days prior written notice of the termination. Further, in the event any Transaction is consummated within a period of twenty four (24) months subsequent to the termination of this letter agreement, with one or more parties on the Advisor's Target List (as evidenced by a list of such targeted parties to be delivered by Advisor within twenty (20) days following the termination of this letter agreement), the Company shall pay to Advisor the Success Fee (as described above) with respect to such Transaction(s).

*Use of Information:* The Company will furnish (or will cause others to furnish) to Advisor such information regarding the Company as Advisor requests for purposes of performing the Services (the "Information"). The Company hereby agrees and represents, to the best of its knowledge, that all Information furnished to Advisor will be accurate and complete in all material respects at the time provided, and that, if the Company is aware of any Information becoming materially inaccurate, incomplete or misleading during the engagement hereunder, the Company will promptly advise Advisor. The Company recognizes and confirms that Advisor assumes no responsibility for the accuracy and completeness of the Information, including all information received from the potential purchasers, and will be using and relying on such information (as well as information available from generally recognized public sources) without assuming responsibility for independent verification or independent evaluation thereof.

*Confidentiality:* The Company further acknowledges that any service, information or advice provided by Advisor to the Company in connection with this engagement is for the confidential use of the board or senior management of the Company and its advisors, in relation to the Transaction, and may not be disclosed or referred to publicly or to any third party, without the prior written consent of Advisor, which consent will not be unreasonably withheld. Advisor will treat confidentially all non-public information relating to the Company provided by the Company to Advisor during this engagement. Both parties may release information otherwise treated as confidential (a) required in order to perform Services hereunder, including disclosing such information to its officers, employees, agents

*Corporate Finance Associates*          *One Union Street, Suite #200, Portland, ME 04101*          *3 of 5*

and other representatives as necessary, (b) such information becomes publicly available other than by disclosure by such party in violation of the terms hereof or (c) otherwise required by law or judicial or regulatory process. All records, files, financial statements, client and customer lists, brochures, documents and the like relating to the Company or the business of the Company which shall come into Advisor's possession shall remain and be deemed to be the sole property of the Company and Advisor shall promptly return same upon the Company's request. All Presentation Materials shall be deemed the sole property of the Advisor, only to be used in accordance with the proposed activities of this engagement. This confidentiality provision shall supersede any preexisting Confidentiality Agreement.

**_Limitation of Liability:_** The Company agrees that Advisor will not be liable to the Company for any claims, losses, damages, liabilities, costs or expenses related to the engagement for any amounts in excess of any compensation paid to Advisor by the Company hereunder, except to the extent finally judicially determined to have resulted from the gross negligence or willful misconduct of Advisor. In no event will Advisor be liable for consequential, special, indirect, incidental, punitive or exemplary losses, damages or expenses.

**_Indemnification:_** The Company agrees to indemnify and hold harmless Consultant and their respective control persons, directors, officers, employees and agents ("Indemnified Parties") to the fullest legal extent against any and all claims, losses, damages, liabilities, costs and expenses as incurred (including all reasonable fees and disbursements of counsel) in connection with any pending or threatened claim, litigation or other proceeding, arising out of or related to any actual or proposed Transaction or Consultant's engagement hereunder; _provided_, however, there shall be excluded from such indemnification, any such claims, losses, damages, liabilities, costs or expenses that is found in a final judicial determination to constitute willful misconduct or gross negligence on the part of the Consultant. In no event will the Company be liable for consequential, special, indirect, incidental, punitive or exemplary losses, damages or expenses to the Consultant.

**_Miscellaneous:_** This Agreement will be governed by and construed in accordance with the applicable substantive laws of the **State of Maine**. This letter agreement will be governed by and construed in accordance with procedural laws/rules of the American Arbitration Association ("AAA Arbitration") in the case of disputes between the parties herein. The Company hereby irrevocably consents to personal jurisdiction and venue of AAA Arbitration in **Portland, Maine** for the purposes of any claim, action or other proceeding arising out of this letter agreement, except for breaches of confidentiality, which is brought by or against the Company, and hereby irrevocably covenants and agrees that all claims, actions or proceedings shall be heard and determined by AAA Arbitration.

The Company may not assign, transfer or subcontract any rights or obligation hereunder to any other third parties, without the prior written consent of Advisor, such consent not to be unreasonably withheld. The Company confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice. In the event of consummation of any Transaction, Advisor shall have the right, subject to the approval of the Company, not to be unreasonably withheld, to disclose its participation in such Transaction in its firm marketing material, provided that such marketing material shall not disclose the value of the Transaction without the consent of the Company.

This engagement letter agreement may not be amended or modified except in writing signed by the Company and Advisor. All rights, liabilities and obligations hereunder will be binding upon and inure to the benefit of the Company, Advisor, each Indemnified Party and their respective successors and permitted assigns.

The provisions relating to the payment of compensation, Work Fees, Success Fees, reimbursement of

expenses, limitation of liability, indemnification and contribution, confidentiality and dispute resolution will survive the expiration or any termination of this Agreement. Every provision of this letter agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder of this letter agreement. This engagement letter agreement may be signed in counterparts.

Please confirm our mutual understanding and acceptance of this engagement letter agreement by signing and returning to us a duplicate copy of this letter agreement via USPS, PDF or email. We look forward to working with you for a successful engagement.

<u>Special Note:</u> The Consultant hereby acknowledges that the Cozy Harbor Seafood Inc. and its subsidiaries: Art's Lobster Co., Inc. and Casco Bay Lobster Co., Inc. are currently debtors in possession under a Chapter 11 Bankruptcy code petition, which was initiated on July 1, 2025. Accordingly, this agreement and any subsequent sale(s) of Cozy Harbor, its subsidiaries or any of its assets, shall require the consent and approval of the U.S. Bankruptcy Court.

Very truly yours,

**Advisor, Corporate Finance Associates New England, LLC**
d/b/a Corporate Finance Associates

Peter G. Moore

Its Managing Director and Principal

**Broker: Corporate Finance Securities, Inc.**
Peter G. Moore

Its Registered Representative and Principal

> Broker is a Delaware "C" Corp and
> a FINRA-registered Broker-Dealer.

**Company Acceptance:**

If the foregoing is satisfactory to you please indicate your acceptance by signing in the appropriate places below and returning an executed copy of this letter agreement to Corporate Finance Associates, One Union Street, Suite #200, Portland, ME 04101 or via PDF email to Peter G. Moore at pmoore@cfaw.com.

**Cozy Harbor Seafood, Inc. and subsidiaries and affiliates**

Agreed to and accepted as
Of the above date hereof by the Company:

John Norton, Co-Founder, President and Principal Co-Owner

Joseph Donovan, Co-Founder, Technical Manager and Principal Co-Owner