UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.,**<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-20160<br><br>(Jointly Administered) |

### FINAL ORDER: (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) GRANTING RELATED RELIEF

This matter is before this Court on the *Motion of Debtors for Entry of an Order: (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Related Relief; and (IV) Request for Emergency Determination and Limitation of Notice* [Dkt. No. 3] (the "**Motion**") filed by the Debtors on July 1, 2025;[2] and due and sufficient notice under the circumstances of the Motion and hearings on the Motion having been held on July 3 and July 24, 2025; and upon consideration of the Motion, and the record and proffer of counsel at the final hearing on August 7, 2025; and it appearing that approval of this final order (the "**Final Order**") is fair and reasonable and in the best interests of the Debtors, the estates, and other parties in interest, and is essential for the continued preservation of the Debtors' assets; KeyBank National Association (the "**Prepetition Lienholder**") having consented to the entry of this Final Order, and after due deliberation and consideration and good and sufficient cause appearing therefor,

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363.  The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

[2] Capitalized terms used, but not defined in this Final Order, shall have the meaning ascribed to such terms in the Motion.

1

0

**IT IS HEREBY FOUND**:

A. On the Petition Date, the Debtors commenced their chapter 11 cases in the Bankruptcy Court.

B. The Debtors are continuing to manage their assets and operate their businesses as debtors-in-possession.

C. No request for the appointment of an operating trustee or examiner has been made in the cases.

D. The Bankruptcy Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E. The Debtors have a need to use Cash Collateral as authorized in this Final Order to have adequate liquidity to provide for, among other things, the orderly continuation of their businesses, to maintain business relationships, to fund payroll, to preserve the value of the Debtors' assets, and to avoid irreparable harm to the Debtors and their estates.

F. On July 3, 2025, this Court entered an Interim Order: (I) Authorizing the use of Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief (the "**First Interim Order**") and, subsequent to the entry of the First Interim Order, entered certain additional orders granting the Debtors the authority to use Cash Collateral through August 7, 2025.

G. John S. Norton, Jr., Joseph B. Donovan, and Joel Knox (collectively, the "**Shareholders**") hold 100% of the equity interests of Debtor, Cozy Harbor Seafood, Inc. Cozy Harbor Seafood, Inc., in turn, owns 100% of the equity interests of affiliated Debtors Casco Bay Lobster Co, Inc. and Art's Lobster Co., Inc.

H. Prior to the Petition Date, on September 29, 2022, the Debtors and the Prepetition Lienholder entered into a certain loan agreement (the "**Loan Agreement**").

I. Prior to the Petition Date, pursuant to the Loan Agreement, the Debtors executed and delivered to the Prepetition Lienholder a certain Revolving Promissory Note (Line of Credit) dated September 29, 2022, in the original maximum draw amount of $8,000,000 (the "**Note**").

J. Prior to the Petition Date, in order to secure the obligations arising under the Note, the Debtors executed and delivered to the Prepetition Lienholder a certain security agreement dated September 29, 2022 (the "**Security Agreement**," and, together with the Loan Agreement, the Note, and all documents relating thereto, including without limitation the amendments referred to below, the "**Loan Documents**"), pursuant to which the Debtors granted the Prepetition Lienholder a first priority lien on Debtors' accounts and inventory as more specifically described in the Security Agreement (the "**Prepetition Collateral**").

K. Prior to the Petition Date, on September 29, 2022, the Prepetition Lienholder perfected its security interest in the Prepetition Collateral by filing UCC Financing Statements with the Maine Secretary of State, bearing Filing Numbers 20220929109000095-90, 20220929109000097-12, 20220929109000098-23, and 20220929109000100-77.

L. Prior to the Petition Date, on June 6, 2023, the Debtors and the Prepetition Lienholder entered into a First Amendment to Loan Agreement to, among other things, amend certain financial reporting requirements and financial covenants in the Loan Documents, waive the Debtors' failure to satisfy the Fixed Charge Coverage Ratio (as defined in the Loan Documents) for the period ending December 31, 2022, and consent to additional indebtedness of Debtor, Cozy Harbor Seafood, Inc., to its Shareholders.

M. Prior to the Petition Date, on July 11, 2023, the Debtors and the Shareholders

0

entered into a Subordination Agreement whereby the Shareholders agreed that certain promissory notes from CHS to the Shareholders were subject to subordination to the Note and other obligations to Prepetition Lienholder.

N.	Prior to the Petition Date, on August 14, 2023, the Debtors and the Prepetition Lienholder entered into a Second Amendment to Loan Agreement to, among other things, amend certain financial reporting requirements provided for by the Loan Documents.

O.	Prior to the Petition Date, on August 7, 2024, the Debtors and the Prepetition Lienholder entered into a Third Amendment to Loan Agreement to, among other things, amend certain financial reporting requirements and financial covenants in the Loan Documents, adjust certain terms with respect to the Note, and waive the Debtors' failure to satisfy the Fixed Charge Coverage Ratio for the period ending December 31, 2023.

P.	Prior to the Petition Date, the Debtors failed to: (i) comply with the minimum EBITDA covenant for the period ended November 2, 2024, as required by Section 5.22(b) of the Loan Agreement; (ii) provide the Prepetition Lienholder with (1) audited financial statements for the fiscal year ended December 31, 2024, as required by Section 5.1(b) of the Loan Agreement, and (2) provide a compliance certificate for the same period as required by Section 5.1(c) of the Loan Agreement; and (iii) repay amounts advanced under the Revolving Credit Facility that were in excess of the amount permitted under Section 2.1 of the Loan Agreement (collectively, the "**Prepetition Defaults**").

Q.	Prior to the Petition Date, on June 12, 2025, the Prepetition Lienholder sent the Debtors a Notice of Default and Reservation of Rights Letter.

R.	As of the Petition Date, the total amount due under the Note, exclusive of attorneys' fees and costs, was as follows:

   Principal:  $4,901,241.00
Interest: $3,709.97
TOTAL:  $4,904,950.97

  Plus, amounts as may come due under indemnification obligations (the "**LOC Obligations**") related to any draw by the beneficiaries of the following:

(i) Standby Letter of Credit in the amount of $50,000.00 dated October 14, 2022 issued by Prepetition Lienholder to Buyers and Sellers Exchange as beneficiary; and

(ii) Standby Letter of Credit in the amount of $50,000.00 dated October 14, 2022 issued by Prepetition Lienholder to Portland Fish Exchange as beneficiary.

  S. The Debtors acknowledge and agree that: (i) each of the Loan Documents were duly executed, delivered, and are enforceable and binding upon them to the fullest extent; (ii) they have no defenses against the enforceability of the Loan Documents; and (iii) that each Debtor granted, for full consideration, a security interest, which first priority security interest is properly perfected in the Prepetition Collateral owned by such Debtor.

  T. The Debtors have embarked on a process to sell substantially all of their assets.

  U. Sufficient cause exists to deviate in this Final Order from the applicable provisions set forth in Local Rule 4001-2(d).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**:

1. The Motion is **GRANTED**.

2. The Debtors are authorized to use Cash Collateral in accordance with and to the extent set forth in the budget attached hereto as **Exhibit A** (the "**Budget**") through October 9, 2025, with recognition and allowance that the timing of revenue and disbursements toward expenses may be different than as projected in the Budget. No payments shall be made under the "Critical Vendors" line in the Budget without further Court order approving such payments.

3. As adequate protection for the Debtors' use of Cash Collateral, and pursuant to

0

Bankruptcy Code §§ 361, 363(c)(2), and 363(e), the Prepetition Lienholder shall be granted, solely to the extent of any diminution in the value of the Prepetition Lienholder's interests in Cash Collateral of the Debtors from and after the Petition Date (such diminution in value after the Petition Date, the "**Adequate Protection Obligations**"), valid, binding, enforceable, automatically perfected liens on all of the Debtors' presently owned and hereafter acquired equipment and vehicles (including titled vehicles and watercraft) (the "**Post-petition Collateral,**" and, together with the Pre-petition Collateral, the "**Collateral**"), which such liens on the Post-Petition Collateral shall be junior only to any valid and perfected senior liens of other creditors on such equipment, watercraft, and vehicle collateral as existed on the Petition Date (the "**Adequate Protection Liens**").  The Debtors shall provide reasonable cooperation to assist the Prepetition Lienholder in perfecting the Adequate Protection Liens in the Post-petition Collateral.

      4.      In addition to the Adequate Protection Liens, as further adequate protection for the Debtors' use of Cash Collateral, and pursuant to Bankruptcy Code §§ 361, 363(c)(2), and 363(e), the Prepetition Lienholder shall continue to hold, from and after the Petition Date, valid, enforceable, unavoidable liens, rights of set off, and/or security interests (including, without limitation, the proceeds, products, offspring, and profits thereof) in any and all accounts and inventory of the Debtors, which liens, rights of set off, and /or security interests are senior in priority to any other liens, rights of set off and security interests, subject only to a timely Challenge (the "**Continuing Liens**").  For clarity, the term "Continuing Liens" shall include liens on the Prepetition Collateral and replacement liens on cash, inventory, accounts, deposit accounts, and accounts receivable that are created or in which the Debtors acquires an interest after the Petition Date.

0

5. The Adequate Protection Liens and Continuing Liens shall be valid, binding, enforceable, and fully perfected as of the Petition Date by the entry of this Order on the docket without the necessity of the execution, filing, or recording of security agreements, financing statements, or other agreements.  The Prepetition Lienholder is hereby relieved of any requirement to file proofs of claim in the Debtors' bankruptcy cases with respect to any of its claims.  Notwithstanding anything to the contrary in this Final Order, all liens held by the Prepetition Lienholder, including, without limitation, the liens granted hereby, shall be subject only to and subordinate only to (a) any claim for allowed professional fees incurred by counsel for the Debtors (Bernstein Shur Sawyer & Nelson, PA) ~~and~~, the Debtors' retained financial advisor (Opus (defined below)) ~~(Opus and~~, and counsel to a Committee if appointed (defined below) (Opus, Bernstein Shur, and Committee counsel, together, the "**Professionals**") through the closing on any sale of substantially all of the assets of the Debtors, up to a cap of **$50,000.00** and only to the extent that (i) such allowed fees are in excess of all retainers held by each Professional plus all payments received by ~~the Professionals~~each Professional as set forth in the Budget (the "**Budgeted Professional Fee Payments**");[3] and (ii) sufficient funds are not available to the Debtors' estates from any other sources to pay such allowed fees (the "**Unpaid Professional Fees**"), and (b) U.S. Trustee Fees pursuant to 28 U.S.C. § 1930, but only to the extent that (i) such fees are in excess of any interim payments received by the U.S. Trustee under the Budget, and (ii) sufficient funds are not available to the Debtors' estates from any other sources to pay such fees (the "**Unsatisfied Trustee Fees**") (the items described in

---

[3] For avoidance of doubt, the Budgeted Professional Fee Payments are allocated and shall be paid under the Budget on a line-by-line basis specifically as to each of Bernstein Shur Sawyer & Nelson, PA (the "**Legal Fees (Bernstein)**" row), Opus (the "**Financial Consultant (Opus)**" row), and Committee counsel (the "**Committee Fees**" row).  Each Professional shall only be entitled to the Budgeted Professional Fee Payments specifically allocated to it under the Budget.

0

subparagraphs (a) and (b) above shall be referred to herein collectively as the "**Carve-outs**"); and (c) any valid, enforceable, unavoidable liens existing as of the Petition Date, including, without limitation, the security interest in favor of Camden National Bank to the extent it encumbers the equipment collateral.  The Carve-outs shall be senior to any lien, security interest, mortgage or other charge held or asserted by the Prepetition Lienholder, which liens are perfected and unavoidable without any filing or other action by the Professionals or the U.S. Trustee, and available to satisfy only the Unsatisfied Trustee Fees and the Unpaid Professional Fees, if any.  Further, for avoidance of doubt, once disbursed to the applicable Professional, the Budgeted Professional Fee Payments shall no longer be subject to any liens, claims, or interests of the Prepetition Lienholder or any other party and shall be held by such Professional exclusively for the payment of allowed compensation of such Professional in these cases, provided that in the event the Budgeted Professional Fee Payments exceed the amount of allowed compensation as to the applicable Professional, such unused fund (the "**Returned Professional Fees**") shall be returned by the applicable Professional to the Debtors' estates and, upon return to the Debtors, the first priority liens of the Prepetition Lienholder shall automatically reattach to such Returned Professional Fees and the Returned Professional Fees shall become included in the Collateral.  Nothing in this Final Order shall permit any Professional to apply payments received to any fees and expenses absent further Order of this Court allowing such compensation.

6. To the extent the Adequate Protection Liens and Continuing Liens are insufficient to cover the Adequate Protection Obligations in their entirety, the remaining, unsatisfied Adequate Protection Obligations due to the Prepetition Lienholder shall constitute an allowed post-petition administrative claim against the Debtors' estates to the extent provided

0

by the Bankruptcy Code with priority over every other administrative claim other than the claims of the United States Trustee under 28 U.S.C. §1930. Nothing herein shall preclude the Prepetition Lienholder from moving for additional adequate protection or to revoke authority for the Debtors' use of Cash Collateral following entry of this Final Order, the Prepetition Lienholder reserving all of its rights with respect thereto, or preclude the Debtors from moving to modify the adequate protection afforded under this Final Order, or for authority to modify the Budget, the Debtors reserving all of their rights with respect thereto.

7. The Debtors shall provide to the Prepetition Lienholder all financial and other information as Prepetition Lienholder shall reasonably request, including but not limited to reports necessary or helpful for the Prepetition Lienholder's evaluation of its Collateral and of the Debtors' profitability, accrued liabilities, and cash flow. The forgoing reports shall include, without limitation, the same categories of information that the Debtors' financial advisor, Opus Consulting ("**Opus**"), has provided or agreed to provide to the Prepetition Lienholder regularly since the Petition Date. The Debtors shall cause Opus to provide such information, which is further described below, to the Prepetition Lienholder by 10:00 A.M. on Tuesday of each week. In addition, the Debtors shall instruct Opus and their sale broker, Peter Moore of Corporate Finance Associates ("**CFA**"), to be available on Thursday of each week, with counsel for the Debtors, for a call with the Prepetition Lienholder and its advisors and counsel, to answer questions regarding the financial reporting and to provide an update on the sale process, including a summary of activity in the data room in the prior week. Without limiting the foregoing, the Debtors shall provide each of the following:

    i)     Reports that set forth in reasonable detail:

        a)     total sales for the prior week;
        b)     total collections for the prior week;

0

   c) a comparison, on a weekly and aggregate basis, actual to projected performance under the Budget for each week; and

   d) a schedule of all outstanding checks and payments issued or to be issued by the Debtors;

  ii) A profit and loss statement for the (i) prior week, and (ii) for the entire post-petition period;

  iii) A borrowing base certificate in the usual form; and

  iv) An accounts receivable aging as of the close of business on Friday of the prior week for post-petition receivables.

In addition to the foregoing reporting, the Debtors shall provide the Prepetition Lienholder and its advisors with reports on Monday, Wednesday, and Friday of each week reflecting the daily activity in CFA's data room, which reports shall include such information as the Prepetition Lienholder may reasonably request.  <u>The Debtors shall provide copies to the Committee (or its counsel) of all reports or similar documents that the Debtors provide to the Prepetition Lienholder under this Final Order, including the specific reporting information set forth in this paragraph.</u>

The foregoing is without prejudice to, and shall not be deemed a waiver of, the rights of the Prepetition Lienholder to seek examination of the Debtor pursuant to Fed. R. Bankr. P. 2004.

  8. The Prepetition Lienholder shall have the right to request and receive information regarding and to inspect, audit, and monitor all or any part of the Collateral, and the Debtors shall make all of the same reasonably available to the Prepetition Lienholder and its representatives, for such purpose.  The foregoing is without prejudice to, and shall not be deemed a waiver of, the rights of the Prepetition Lienholder to seek examination of the Debtors pursuant to Fed. R. Bankr. P. 2004.

0

**9.      As of July 1, 2025, the Debtors were indebted to the Prepetition Lienholder in the amount of $4,904,950.97, consisting of principle of $4,901,241.00 and interest of $3,709.97 plus interest accruing from and after such date under the Loan Documents, plus, to the extent a prepetition claim, the LOC Obligations, plus and all reasonable fees, costs, expenses, and costs of collection, including without limitation, reasonable attorneys' fees to the extent set forth in the Loan Documents heretofore or hereafter incurred by the Prepetition Lienholder in connection therewith (hereinafter, the "<u>Prepetition Lienholder's Claim</u>").  Notwithstanding the foregoing, nothing herein shall be construed to bar the Prepetition Lienholder from asserting that the LOC Obligations are administrative claims under 11 U.S.C. § 503(b) to the extent the beneficiaries draw on the letters of credit after the Petition Date.  The Prepetition Lienholder's Claim is an allowed secured claim secured by ~~(1)~~ a valid, perfected, and unavoidable security interest in the Prepetition Collateral, and, to the extent of any diminution in value of its Prepetition Collateral, in the Postpetition Collateral, which security interests are valid and enforceable and are and shall be senior in priority to all other liens, except for the Carveouts and the equipment collateral that is subject to a lien in favor of Camden National Bank, to the extent that such lien is valid, enforceable, and unavoidable and shall constitute an allowed secured claim against the bankruptcy estates created by the Debtors' bankruptcy filings.  The findings and stipulations set forth in this Final Order with respect to the validity, enforceability and amount of the Prepetition Lienholder's Claim and the Continuing Liens shall be binding on any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including any creditors committee appointed in**

0

**these cases (a "Committee"), unless, and solely to the extent that, a party in interest with requisite standing and authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 9) challenging the Prepetition Liens (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") within the first to occur of (a) forty five (45) days from the formation of a Committee, or (b) seventy five (75) days after the Petition Date (the "Challenge Deadline").**

**10.   In consideration of the Debtors' ability to use Cash Collateral with the consent of the Prepetition Lienholder as set forth herein and in consideration of the Carveout, the Debtors may not assert or assign their right to assert: (a) any claims against the Prepetition Lienholder arising under § 506(c) of the Bankruptcy Code for costs or expenses arising between the Petition Date and the date of the expiration or termination of the Debtors' right to use Cash Collateral hereunder; or (b) an "equities of the case" exception under § 552(b)(1) of the Bankruptcy Code.**

11.   For so long as the Debtors are authorized under the terms of this Final Order to use Cash Collateral, the Debtors shall not seek authority for or otherwise allow any other liens to be granted which are superior to or in any way prime the Prepetition Lienholder's liens.

12.   The Debtors, at their expense, shall continue to keep all of the Collateral fully insured against all loss, peril and hazard and make the Prepetition Lienholder a loss payee as to its interests in the Collateral. The Debtors shall pay timely (in accordance with the Bankruptcy

0

Code) any and all undisputed post-petition taxes, assessments and governmental charges with respect to the Collateral. The Debtors shall provide the Prepetition Lienholder with proof of insurance within three (3) business days of written demand.

13. At or in connection with any auction or sale of the Collateral pursuant to § 363 of the Bankruptcy Code, the Prepetition Lienholder shall have the right to credit bid the full amount of the Pre-Petition Obligations.

14. Each of the following shall constitute an "**Event of Default**" for purposes of this Final Order:

   a. These chapter 11 cases are either dismissed or converted to cases under chapter 7 pursuant to an order of this Court, the effect of which has not been stayed;

   b. A chapter 11 trustee or an examiner with expanded powers beyond those set forth in §§ 1106(a)(3) and 1106(a)(4) of the Bankruptcy Code is appointed in these chapter 11 cases by order of this Court, the effect of which has not been stayed;

   c. The expiration of the Debtors' authority to use the Prepetition Lienholder's Cash Collateral;

   d. This Court enters an order terminating the Debtors' authority to use Cash Collateral;

   e. This Court enters an order, the effect of which has not been stayed, authorizing the sale of all or substantially all assets of the Debtors that does not provide for the payment to the Prepetition Lienholder, in cash, of the lesser of: (i) 100% of the net proceeds of sale of the Collateral (subject to the Carveouts, if applicable); and (ii) the full amount of the Prepetition Lienholder Claims, upon the closing of the sale, unless otherwise agreed by the Prepetition Lienholder or unless there has been a successful challenge as evidenced by a final order of this Court;

   f. The Debtors cease the operation of a substantial portion of their present businesses or take any material action for the purpose of effecting the foregoing without the prior written consent of the Prepetition Lienholder;

   g. Except as a result of a successful challenge, as evidenced by a final order of this Court, this Final Order is reversed, vacated, stayed, amended,

0

     supplemented or otherwise modified in a manner which shall, in the reasonable opinion of the Prepetition Lienholder, materially and adversely affect: (i) the rights of the Prepetition Lienholder hereunder; or (ii) the priority of or security for the Prepetition Lienholder Claims;

  h. The Debtors expend any funds or monies in amounts or for any purpose other than as set forth in the Budget or this Final Order or as otherwise authorized by the Court after notice and a hearing;

  i. Any material and/or intentional misrepresentation by the Debtors in the financial reporting or certifications required to be provided by the Debtors to the Prepetition Lienholder under this Final Order;

  j. The failure of the Debtors to timely comply with any of the "Milestones" set forth in **Exhibit B** hereto;

  k. The Debtors become out of formula on the borrowing base as described in the Loan Documents, provided, however, that for purposes of determining an Event of Default under this Final Order, the amount of cash on deposit and/or in an account with the Prepetition Lienholder (which cash and accounts are encumbered by the Prepetition Lienholder's Adequate Protection Liens and Continuing Liens and in which the Prepetition Lienholder has a right of set off), minus $200,000, shall be added to the borrowing base described in the Loan Documents, provided, further, however, that it shall be an Event of Default hereunder only if the Debtors are out of formula by a variance of more than $600,000 at the end of any weekly reporting period (based on the modified borrowing base calculation hereunder); or

  l. Non-compliance or default by the Debtors with any of the other terms, provisions and conditions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within ten (10) days after notice of such non-compliance or default is given to the Debtors by the Prepetition Lienholder.

  15. Upon the occurrence of an Event of Default and the giving of written notice thereof (the "**Default Notice**") by the Prepetition Lienholder to the Office of the U.S. Trustee, the attorneys for any Committee, and the attorneys for the Debtors (the "**Notice Parties**"), which notice may be given by facsimile or e-mail transmission, the Debtor's authority to use Cash Collateral pursuant to this Order shall immediately cease and terminate (except that the Debtors

14

0

shall be permitted to use Cash Collateral in accordance with the Budget for the period of five (5) business days after such termination for the sole purposes of (i) funding budgeted payroll and related employee tax and benefit obligations and (ii) funding other expenses in the Budget as the Prepetition Lienholder may approve), whereupon the Debtors shall have the immediate right to seek authority to continue use of Cash Collateral by further order of the Court, or by further agreement of the Prepetition Lienholder.

16. Notwithstanding anything to the contrary in this Final Order (including the exhibits hereto), nothing in this Final Order shall: (a) grant a lien to the Prepetition Lienholder that is senior or equal in priority to the liens of Camden National Bank ("**CNB**") as to any collateral in which CNB held valid, perfected, and enforceable liens as of the Petition Date (such collateral, the "**CNB Collateral**"); or (b) authorize payment to the Prepetition Lienholder (or any other party) from the proceeds of the CNB Collateral prior to payment of CNB's allowed claim secured by the CNB Collateral, including, without limitation, pursuant to any order under Section 363 of the Bankruptcy Code.

17. **To the extent any provision in this Final Order deviates from the provisions set forth in Local Rule 4001-2(d), such deviations are hereby approved.**

~~16~~18. The terms and conditions of this Final Order shall be effective and immediately enforceable upon its entry on the docket notwithstanding any potential application of Bankruptcy Rules 6004, 7062, 9014, or otherwise.

~~17~~19. This Final Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable effective immediately.

Dated: _____

0

        Michael A. Fagone
        United States Bankruptcy Judge
        District of Maine

0

0

**<u>Exhibit A</u>**
**Budget**

**Exhibit B**

**Milestones**

The Debtors must achieve each of the following milestones, as may be extended only with further Order of this Court or the prior written consent of the Prepetition Lienholder, on terms and conditions, and subject to documentation, in form and substance acceptable to the Prepetition Lienholder:

1. The Debtors shall pursue a sale of all or substantially all of the assets of the Debtors (the "**Sale Assets**") pursuant to § 363 of the Bankruptcy Code (a "**363 Sale**").

2. On or before August 21, 2025, the Court shall have entered a Bidding Procedures Order. The Bidding Procedures Order shall approve a Sale Process. "**Sale Process**" shall mean the implementation of bidding and sale procedures in respect of the 363 Sale with the possibility of a stalking horse asset purchase agreement that is subject to higher or better bids, with such bidding procedures and orders in form and substance reasonably acceptable the Prepetition Lienholder. The Sale Process shall provide that bids (or in the case of a stalking horse sale, competing bids) shall be due September 23, 2025 and an auction and sale hearing shall occur on or before October 2, 2025.

3. On or before October 2, 2025, the Debtors shall have conducted an auction, if necessary, for the sale of the Sale Assets in accordance with the Bidding Procedures Order.

4. On or before October 2, 2025, the Court shall have entered an order approving the sale of the substantially all of the Debtors assets (the "**Approved Sale**"), with the order and sale agreement(s) in form and substance reasonably acceptable to the Prepetition Lienholder. The Approved Sale shall provide that the gross proceeds (other than the Carve-Outs) from the Prepetition Lienholder's Collateral shall be paid and applied to the indefeasible payment of the Prepetition Lienholder's secured claim at closing.

5. The Approved Sale shall be consummated on or before October 9, 2025.

|  | |
|---|---|
| **Summary report:** <br> **Litera Compare for Word 11.11.0.158 Document comparison done on 8/6/2025 5:06:41 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://work.bssn.com/worksite_active/20623176/3 - Cozy - Final Cash Collateral Order - BSSN Draft 07312025 v2.docx | |
| **Modified DMS:** iw://work.bssn.com/worksite_active/20623176/5 - Cozy - Final Cash Collateral Order - BSSN Draft Revised 08062025 [Post UST Call].docx | |
| **Changes:** | |
| Add | 20 |
| Delete | 6 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 26 |