## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.,** | **Case No. 25-20160** |
| | **(Jointly Administered)** |
| **Debtors.[1]** | |

### ORDER: (A) APPROVING BID PROCEDURES; (B) SCHEDULING AUCTION AND SALE HEARING; (C) APPROVING FORM AND MANNER OF NOTICE THEREOF; (D) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES; AND (E) GRANTING RELATED RELIEF

Upon the above-referenced motion [Docket No. ——112] (the "**Motion**") filed by the Debtors;[2] and this Court having reviewed the Motion and having heard the statements in support of the bid procedures relief requested therein at a hearing; and this Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT FINDS THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363.  The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

[2] Capitalized terms used as defined terms herein, but not otherwise defined, shall have the meanings ascribed to such terms in the Motion or the Bid Procedures, as applicable.

D.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      Good and sufficient notice of the request to approve the Bid Procedures and the hearing was sufficient under the circumstances, and such notice complied with the applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided as to the relief herein.

~~F. [The Debtors have demonstrated a sound business justifications for authorization to: (i) enter into that certain Stalking Horse Agreement, a copy of which was attached to the Supplemental Notice as **Exhibit A**, and (ii) offer the Stalking Horse Bidder the following: (a) a break-up fee equal to **$_____** (the "**Break-Up Fee**") on the terms set forth in the Stalking Horse Agreement, and (b) expense reimbursement of the Stalking Horse Bidder's actual, out-of-pocket legal fees and hard costs incurred in its capacity as Stalking Horse Bidder up to **$_____** (as defined in the Stalking Horse Agreement, the "**Expense Reimbursement**" and with the Break Up Fee, the "**Bid Protections**").]~~

F.      ~~G.~~ Neither the filing of the Motion, entry of this Order, the solicitation of bids or the conducting of the Auction in accordance with the Bid Procedures, nor any other actions taken by the Debtors in accordance therewith, shall constitute a sale of the Assets, which sale will only take place, if at all, following the Sale Hearing.

**IT IS HEREBY <u>ORDERED</u>, <u>ADJUDGED</u> AND <u>DECREED</u> AS FOLLOWS:**

1.      The Motion is **<u>GRANTED</u>** as to the Bid Procedures relief as set forth herein.

2.      The Bid Procedures, attached hereto as **<u>Exhibit 1</u>**, are approved and are incorporated into this Order.  The Bid Procedures shall govern the terms on which the Debtors will proceed with the Auction and/or Sale.

3. [The Debtors are authorized to enter into the Stalking Horse Agreement with the Stalking Horse Bidder.  The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse Agreement; provided that approval and consummation of the transactions contemplated by the Stalking Horse Agreement shall be subject to the terms and conditions herein and the entry of an order approving the Sale of the Assets following the Sale Hearing.  The Bid Protections are hereby approved, subject to and in accordance with the Stalking Horse Agreement.  The Bid Protections shall be payable exclusively from the proceeds of the Sale at the closing.]

3. 4. Bids for the Assets, as well as the deposit and the other requirements for a bid to be considered a Qualified Bid (as defined in the Bid Procedures), must be received by no later than **September 23, 2025** (the "**Bid Deadline**").  The Bid Deadline may not be extended without further order of this Court for good cause shown.

4. 5. The Debtors shall conduct the Auction at ~~10:00 a.m~~**11:00 a.m. on September 25, 2025, at Bernstein Shur, 100 Middle Street, Portland, Maine**, or such other time on such day or other place as this Court may direct through a further order.  The Debtors are authorized, subject to the terms of this Order and the Bid Procedures, to take all actions reasonably necessary to conduct and implement the Auction. However, if the Debtors do not receive a Qualified Bid (other than the Stalking Horse Agreement) prior to the Bid Deadline: (i) the Debtors may cancel the Auction; (ii) the Stalking Horse Agreement shall be deemed the Successful Bid for the Assets; and (iii) the Debtors shall seek approval of the Stalking Horse Agreement as the Successful Bid at the Sale Hearing.

5. 6. Only Qualified Bidders, as determined in accordance with the Bid Procedures, shall be entitled to make any bids at the Auction.

6.    7. No person or entity, other than the Stalking Horse Bidder to the extent set forth herein, shall be entitled to any expense reimbursement, break-up fee, topping or termination fee, or other similar fee or payment.

7.    8. No later than two (2) business days after entry of this Order, the Debtors shall serve on all counterparties to any assumed contracts and leases (the "**Assumed Contract Counterparties**") that may be assumed by the Debtors and assigned to the Successful Bidder, which notice shall be substantially in the form attached hereto as **Exhibit 2** (a "**Cure and Possible Assumption and Assignment Notice**").

8.    9. Objections, if any, to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice or the possible assignment of an executory contract or unexpired lease (each, an "**Assumed Contract Objection**") must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules; and (iii) be filed with the Bankruptcy Court and served so as to be actually received on or before September 29October 1, 2025.

9.    10. Where an Assumed Contract Counterparty files a timely Assumed Contract Objection, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder shall be determined at the Sale Hearing or, as necessary, at a subsequent evidentiary hearing.

10.    11. Within two (2) business days after the entry of this Order, the Debtors shall serve the Bid Procedures Order by first-class mail or electronic mail upon: (a) the Office of the United States Trustee for the District of Maine; (b) the holders of the 20 largest, non-insider unsecured claims against the Debtors; (c) counsel to the Stalking Horse Bidder (if any) and the Official Committee of Unsecured Creditors (if any); (d) any other parties with known secured

claims against the Debtors or their counsel, if known; (e) all parties that have executed a non-disclosure agreement with the Debtors or CFA as part of the sale process; (f) the Internal Revenue Service; (g) all state and local taxing authorities with an interest in the Assets; (h) the Attorney General for the State of Maine; (i) all other known governmental agencies with an interest in the Sale and transactions proposed thereunder; (j) all other parties known or reasonably believed to have asserted an interest in the Assets; (k) the counterparties to the Assumed Contracts and Leases; (l) the Debtors' insurance carriers; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.

11.    ~~12.~~ The Sale Hearing shall be conducted on **October 2, 2025, at 1:00 p.m.**  The Debtors will seek entry of an order of this Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder.  The Sale Hearing may be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

12.    ~~13.~~ Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "**Sale Objection**") must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Bankruptcy Court; and (iv) be served so it is actually received no later than **September 29, 2025**.  A party's failure to timely file a Sale Objection in accordance with this Order is forever barred from objecting to the Sale, at the Sale Hearing or otherwise, to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, and shall be deemed to be a "consent" for purposes of § 363(f) of the Bankruptcy Code.

13.    ~~14.~~ The Debtors shall file a proposed form of Sale Order and form of Asset Purchase Agreement on or before **September 4, 2025**.

14.    ~~15.~~ The requirements of Bankruptcy Rules 6004(h) and 6006(d) are waived.

15.    ~~16.~~ The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary.

16.    ~~17.~~ This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine

**<u>Exhibit 1 to Bid Procedures Order</u>**

**Bid Procedures**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.,** | **Case No. 25-20160** |
| | **(Jointly Administered)** |
| **Debtors.**[1] | |

## BID PROCEDURES

Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc., and Art's Lobster Co., Inc., the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), have proposed to sell substantially all of their assets (the "**Assets**").  On _____, 2025, the Bankruptcy Court entered an order [Dkt. No. ____] (the "**Bid Procedures Order**") approving, among other things, these bid procedures for the conduct of that sale (the "**Bid Procedures**").  Pursuant to the Bid Procedures, the Debtors will determine the highest or otherwise best price for the sale of the Assets, subject to Bankruptcy Court approval, upon the following general procedures and conditions.

### A.   Diligence Materials

Corporate Finance Associates ("**CFA**"), as broker for the Debtors, has been conducting and will continue to conduct an extensive marketing process and will provide interested buyers with information related to the Bid Procedures and the Assets, including access to a data room (collectively, the "**Diligence Materials**").  To receive the Diligence Materials, a party must submit to CFA an executed confidentiality agreement, which must be based on the form confidentiality agreement supplied by the Debtors or CFA.

The Debtors and CFA will afford any interested party the time and opportunity to conduct due diligence within the deadlines set forth in these Bid Procedures.  All due diligence requests shall be directed to CFA's Peter Moore (email: pmoore@cfaw.com).

The Debtors reserve the right, after consultation with the Consultation Parties (defined below), to withhold or modify any Diligence Materials that the Debtors determine in good faith are business sensitive or otherwise not appropriate for disclosure to an interested party who is a

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363.  The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

competitor, vendor, or customer of the Debtors, or is directly or indirectly affiliated with any competitor, vendor, or customer of the Debtors.

In addition, each potential bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors, CFA, and the Consultation Parties, including so that the Debtors, CFA, and the Consultation Parties may access such bidder's qualifications for and ability to bid for the assets.

## B.    Definition of Qualified Bids and the Auction Qualification Process

For any bid to render a bidder eligible to participate at the Auction (each a "**Qualified Bid**" and a "**Qualified Bidder**"), the following requirements and conditions must be satisfied and included with such bid (collectively, the "**Bid Requirements**"):[1]

(a)    Executed Agreement: Each bid must be in the form of an asset purchase agreement (the "**APA**") and must include both a clean version and a comparison ("redline") version against the form asset purchase agreement to be placed in the data room ~~or a markup of the Stalking Horse Agreement (if one is identified)~~.  The APA must be executed by the bidder and include a commitment to close no later than October 9, 2025.

(b)    Purchase Price: Each bid must: (a) clearly specify the purchase price to be paid, assuming a purchase of the applicable Assets and assumption of the assumed liabilities (the "**Purchase Price**"); (b) identify separately any cash and non-cash components (which non-cash components shall be limited only to credit bids and assumed liabilities) of the Purchase Price in United States dollars; and (c) indicate the allocation of the Purchase Price among the applicable Assets (such as inventory, equipment, and accounts, including subsets of certain categories of Assets if required by the Debtors or by any party holding liens on such Assets).

(c)    Good Faith Deposit: Each bid must be accompanied by a cash deposit in the amount of five percent (5.00%) of the cash portion of the Purchase Price contained in the APA, payable to an escrow account to be identified and established by the Debtors (the "**Good Faith Deposit**").  To the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the cash Purchase Price contemplated by such Qualified Bid, such Qualified Bidder shall increase its Good Faith Deposit so that it equals five percent (5.00%) of the increased Purchase Price.

(d)    Good Faith Offer: Each bid must represent an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Assets identified in such bid if that bid is selected as the Successful Bid or the Backup Bid (each as defined below).

(e)    Purchased Assets and Assumed Liabilities: Each bid must clearly provide which of the Assets the bidder seeks to acquire and which of the assumed liabilities the bidder agrees to assume.

---

[1] ~~For avoidance of doubt, the Stalking Horse Bidder (if any) shall be deemed to be a "Qualified Bidder," and the Stalking Horse Agreement (if any) shall be deemed to be a "Qualified Bid."~~

(f)    <u>Designation of Assigned Contracts and Leases</u>:  Subject to the terms of the APA, each bid must identify any and all executory contracts and unexpired leases of the Debtors that the bidder wishes to be assumed and assigned to the bidder at the closing.

(g)    <u>Corporate Authority</u>: Each bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate or similar governance authorization of the bidder to consummate the proposed transaction; <u>provided</u> that if the bidder is an entity specially formed for the purpose of effectuating the sale transaction, then the bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the sale transaction by the equity holder(s) of such bidder and any other governing body of the bidder that is required to approve the sale.

(h)    <u>Disclosure of Identity of and Contact Information for Bidder</u>: Each bid must fully disclose the identity of each entity (including any equity owners, sponsors, or co-investors) that will be bidding for or purchasing the Assets or otherwise directly or indirectly participating in connection with such bid, as well as contact information for the decision-maker and counsel.

(i)    <u>Proof of Financial Ability to Perform</u>: Each bid must include written evidence that the Debtors reasonably conclude demonstrates that the bidder has the necessary financial ability to: (a) timely close the transaction contemplated by such bid by the date set forth in the APA; and (b) provide adequate assurance of future performance under all contracts to be assumed and assigned in such sale transaction.

(j)    <u>Adherence to Bid Procedures</u>: By submitting its bid, each bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a bid or seek to reopen the Auction after conclusion of the Auction.

(k)    <u>Contingencies and Other Provisions</u>: Each bid shall not include any conditions or contingencies relating to financing, internal approvals, or the absence of any material adverse effect.  Each bid shall not include any conditions or contingencies relating to due diligence.

(l)    <u>Irrevocable</u>: Each bid must be irrevocable unless and until the Debtors accept a higher bid and such bidder is not selected as the Backup Bidder, <u>provided</u> that if a bid is accepted as the Successful Bid or the Backup Bid, such bid shall continue to remain irrevocable, subject to the terms and conditions of these Bid Procedures.

(m)    <u>Consent to Jurisdiction</u>: Each bidder must: (a) consent to the jurisdiction of the United States Bankruptcy Court for the District of Maine to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these chapter 11 cases, the Bid Procedures, the Auction, any APA, or the construction and enforcement of documents relating to any sale transaction with the Debtors; (b) waive any right to a jury trial in connection with any disputes relating to the Debtors, these chapter 11 cases, the Bid Procedures, the Auction, any APA, or the construction and enforcement of documents relating to any sale transaction with the Debtors; and (c) consent to the entry of a final order or judgment by the Bankruptcy Court if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

(n)    <u>Acknowledgement of No Collusion</u>: Each bid shall include a written acknowledgement from the bidder that it has not: (a) engaged in any collusion with respect to the bidding or sale of any of the Assets described herein; or (b) taken any other action to prevent a transparent and competitive auction process.

A bid received from a bidder before the Bid Deadline that meets the above requirements shall constitute a Qualified Bid, as determined by the Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, and such bidder shall constitute a Qualified Bidder; <u>provided</u> that, if the Debtors receive a Bid that is not a Qualified Bid, the Debtors shall provide such bidder with a reasonable opportunity to remedy any deficiencies prior to the start of the Auction.

The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Qualified Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bid; <u>provided</u> that the Debtors also reserve the right to conduct more than one sale process or Auction with respect to non-overlapping material portions of the Assets).

## 1.    Bid Deadline

The Debtors must receive any Qualified Bid in writing, and in compliance with the Bid Requirements, on or before **September 23, 2025,** or such later date as may be ordered by the Bankruptcy Court (the "**Bid Deadline**").  Bids must be sent to the following by the Bid Deadline to be considered as a Qualified Bid: (a) counsel for the Debtors, Bernstein, Shur, Sawyer & Nelson, P.A., Attn: Sam Anderson and Adam R. Prescott (email: sanderson@bernsteinshur.com; aprescott@bernsteinshur.com), and (b) CFA, Attn: Peter Moore (email: pmoore@cfaw.com).  The Debtors shall promptly transmit any Qualified Bid to the Consultation Parties.

Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; <u>provided</u> that any Qualified Bid may be improved at the Auction as set forth in the Bid Procedures.

## 2.    Credit Bid

The credit bid rights of all parties are reserved to the extent provided by § 363(k) or by separate Order of the Bankruptcy Court.  All permissible credit bids shall be treated as the equivalent of a cash bid of the same amount.

Parties with a right to credit bid, including KeyBank, N.A., shall be deemed to be Qualified Bidders that have made Qualified Bids and are, therefore, entitled to participate in the sale process, including any Auction, without satisfying the Bid Requirements.

C.    **Auction**

1.    **Bid Assessment Criteria**

If two or more Qualified Bids are received by the Bid Deadline, the Debtors will conduct an Auction to determine the highest and best Qualified Bid.  The determination of the highest and best Qualified Bid shall take into account any factors the Debtors in their reasonable business judgment deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the following: (a) the amount and nature of the consideration; (b) the number, type, and nature of any changes to the APA requested by each Qualified Bidder, including the Assets acquired; (c) the extent to which such modifications are likely to delay closing of the sale transaction contemplated by such Qualified Bid and the cost to the Debtors of such modifications or delay; (d) the total consideration to be received by the Debtors; (e) any contingencies or conditions to closing the sale transaction contemplated by such Qualified Bid; (f) the likelihood of the Qualified Bidder's ability to close the sale transaction contemplated by such Qualified Bid and the timing thereof; (g) the tax consequences of such Qualified Bid; and (h) any other qualitative or quantitative factor that the Debtors deem reasonably appropriate under the circumstances (collectively, the "**Bid Assessment Criteria**").

The determination of the highest and best Qualified Bid, based on the Bid Assessment Criteria, shall be made by the Debtors in consultation with the Consultation Parties.

2.    **Location and Date of Auction**

The Auction, if required, shall commence on **September ~~29~~25, 2025, at ~~10:00 a.m~~11:00 a.m. at Bernstein Shur, 100 Middle Street, Portland, Maine**.  If held, the Auction proceedings shall be recorded and/or videotaped.

3.    **Attendees**

Except as otherwise determined by the Debtors, only the following parties, and their respective professionals, principals, representatives, and counsel, may attend the Auction: (i) the Debtors; (ii) the U.S. Trustee; (iii) any Qualified Bidder; (iv) the Consultation Parties; (v) any party entitled to credit bid at the Auction; and (vi) any other parties that the Debtors deem appropriate, together with the professional advisors to each of the foregoing parties.

Bidders and their representatives may not communicate or coordinate with one another for purposes of submitting a bid or bids or participating in the Auction without the prior consent of the Debtors.  All parties are prohibited from: (i) engaging in any collusion with respect to the bidding or sale of any of the Assets described herein; or (ii) taking any other action to prevent a transparent and competitive auction process.

Each Qualified Bidder participating in the Auction must confirm on the record at the commencement of the Auction that: (i) it has not engaged in any of the prohibited actions set forth in the immediately preceding paragraph; (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the sale transaction contemplated by such Qualified Bid if selected as the Successful Bidder or Backup Bidder; (iii) it has reviewed, understands, and accepts the

Bid Procedures; and (iv) it has consented to the core jurisdiction of the Bankruptcy Court with respect to the sale transaction, including the Bid Procedures, the Auction, any sale transaction, any APA, or the construction and enforcement of documents relating to any sale transaction (as described more fully below). All parties attending the Auction must comply with their applicable confidentiality agreements.

### 4.    Conducting the Auction

The Debtors and their professionals shall direct and preside over the Auction, shall consult with the Consultation Parties throughout the Auction process, and the Auction shall be open. Other than as expressly set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the highest and best offer for the Assets so long as such conduct is not inconsistent in any material respect with the other terms and provisions of these Bid Procedures.

### 5.    Auction Baseline Bid and Overbids

The Debtors will notify any Qualified Bidder participating in the Auction of the highest and best Qualified Bid received by the Bid Deadline for purposes of constituting the opening bid at the Auction (the "**Auction Baseline Bid**") and shall provide copies of the APA associated with the Auction Baseline Bid as soon as practicable prior to the commencement of the Auction.

An "**Overbid**" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the APA. Any Overbid must remain open and binding on the bidder until: (a) the Debtors announce that they have received a higher and better Overbid; and (b) such Overbid is not selected as the Backup Bid. To the extent not previously provided, a bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) reasonably demonstrating such bidder's ability to satisfy the bidder's obligations as set forth in the Qualified Bid requirements set forth above. Further, bidders submitting Overbids may be required to promptly top up their Good Faith Deposit to equal five percent (5.00%) of the cash Purchase Price contained in such Overbids.

### 6.    Announcement and Consideration of Overbids

(a)    Announcement of Overbids: All Overbids shall be made and received on an open basis. The Debtors shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, and the basis for calculating such total consideration. The Debtors shall, after submission of each Overbid, promptly inform each participant in the Auction which Overbid reflects the highest and best bid. The Debtors will then solicit the next Overbid.

(b)    Consideration of Overbids: Subject to the deadlines set forth herein, the Debtors reserve the right, in their own reasonable business judgment, and in consultation with the

Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide the Debtors with additional evidence that the Qualified Bidder has sufficient internal resources, or has received sufficient non contingent debt and/or equity funding commitments, to consummate the proposed sale transaction at the prevailing Overbid amount.

### 7.    Closing the Auction

The Auction shall continue until there is only one (1) Qualified Bid for the Assets (or one or more Qualified Bids for discrete portions of the Assets) that the Debtors determine, in their reasonable business judgment, after consultation with the Consultation Parties, is (or are) the highest and best Qualified Bid (or Qualified Bids) at the Auction. Thereafter, the Debtors shall select such Qualified Bid(s) that is (or are) the best Qualified Bid (each such Qualified Bid, a "**Successful Bid**," and the Qualified Bidder(s) submitting any such Successful Bid(s), each a "**Successful Bidder**"), taking into account the Bid Assessment Criteria, as the winner of the Auction and, at the time of such selection, shall announce the identity of the Successful Bidder(s) and the amount and material terms of the Successful Bid(s) to all attendees at the Auction.

The Auction shall not conclude until the Successful Bidder(s) submit(s) fully executed sale and transaction documents memorializing the terms of the Successful Bid(s). The Debtors shall not consider any bids or Overbids submitted after the Auction has closed, and any and all bids or Overbids submitted after the conclusion of the Auction shall be deemed untimely.

### 8.    Backup Bidder

If an Auction is conducted, the Qualified Bidder(s) with the next highest and otherwise best bid to the Successful Bid(s) at the Auction for the applicable Assets, as determined by the Debtors, in the exercise of their reasonable business judgment, after consultation with the Consultation Parties, will be designated as a backup bidder (each, a "**Backup Bidder**" and such bid, the "**Backup Bid**"). The identity of the Backup Bidder(s) and the amount and material terms of the Backup Bid(s) shall be announced by the Debtors at the same time the Debtors announce the identity of the Successful Bidder(s).

The Backup Bidder(s) shall be required to keep its (or their) initial Qualified Bid(s) (or if a Backup Bidder submitted one or more Overbids at the Auction, such Backup Bidder's final Overbid) (each, a Backup Bidder) open and irrevocable until the closing of the sale transaction contemplated by the applicable Successful Bid. Notwithstanding the foregoing, any party that submitted a credit bid at the Auction shall not be required to serve as a Backup Bidder.

If a Successful Bid is terminated for any reason prior to consummation of the sale transaction contemplated thereby, the Debtors will be authorized to consummate the sale transaction contemplated by the applicable Backup Bid with the applicable Backup Bidder; provided that the Debtors shall post a notice on the docket of the chapter 11 cases regarding the Successful Bid failure and the consummation of such sale transaction with the applicable Backup Bidder. In such event, the Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors. The Debtors, on their behalf and on behalf of each of their respective estates,

specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder in accordance with the terms of the Bid Procedures, the Bid Procedures Order, or the APA, as applicable.

### 9. Notice of Bid Results

Not later than two (2) business days after conclusion of the Auction, the Debtors shall file a notice designating each Successful Bid(s) and the Backup Bid(s), if any, and the terms of each such bid.

## D. Sale Hearing

The Sale Hearing to approve the Successful Bid(s) and any Backup Bid(s) shall take place on **October 2, 2025, at 1:00 p.m.,** at the United States Bankruptcy Court for the District of Maine in Bangor, Maine. The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

## E. Return of Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court or as set forth herein. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder, nor a Backup Bidder, shall be returned to such Qualified Bidder not later than five (5) business days after consummation of the sale transaction or upon the permanent withdrawal of the proposed sale transaction.

If a Successful Bidder timely closes the sale transaction contemplated in the Successful Bid, its Good Faith Deposit shall be credited towards the Purchase Price and become property of the estate. If a Successful Bidder (or, if the sale transaction is to be consummated with the applicable Backup Bidder, then such Backup Bidder) fails to consummate the sale transaction because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such bidder as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. For the avoidance of doubt, the Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or a Backup Bidder's breach or failure to perform, and all such rights and remedies are preserved.

## F. Consultation Parties

The terms "**Consultation Party**" or "**Consultation Parties**" shall mean: (a) KeyBank N.A. and its professional advisors and counsel; ~~and~~ (b) the professional advisors and counsel to the Creditors' Committee, if any; and (c) Camden National Bank and its professional advisors and counsel. For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bid Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business

judgment                    and                    fiduciary                    obligations.

## **Exhibit 2 to Bid Procedures Order**

**Cure and Possible Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.,** | **Case No. 25-20160** |
| | **(Jointly Administered)** |
| **Debtors.[1]** | |

**NOTICE TO COUNTERPARTIES OF POTENTIALLY ASSUMED**
**EXECUTORY CONTRACTS OR UNEXPIRED LEASES**

**PARTIES RECEIVING THIS NOTICE SHOULD: (1) READ THIS NOTICE CAREFULLY; AND (2) LOCATE THEIR NAME AND CONTRACT AND/OR LEASE ON APPENDIX I HERETO**

On _____, 2025, the United States Bankruptcy Court for the District of Maine entered an order (the "**Bid Procedures Order**"), which set dates, times, and procedures related to the sale of assets of Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc., and Art's Lobster Co., Inc. (collectively, the "**Debtors**"), pursuant to an auction overseen by the Bankruptcy Court.

Approval of the sale after the auction, and the Debtors' assumption and assignment of any contracts and leases in connection therewith, is scheduled to take place at a hearing before the Bankruptcy Court in Bangor, Maine, on **October 2, 2025, at 1:00 p.m.**

**In accordance with the Bid Procedures Order, the Debtor may assume and assign executory contract(s) and/or unexpired lease(s) to which you may be a counterparty to the Successful Bidder after the outcome of the Auction.**

If you object to the possible assignment of such executory contract(s) or unexpired lease(s) as set forth in the Bid Procedures Order, you must file an objection with the Bankruptcy Court no later than ~~September 29~~October 1, 2025 (the "**Objection Deadline**") and serve such objection on the following parties:

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363.  The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

| **Counsel to the Debtors** | **KeyBank N.A.** |
|---|---|
| Sam Anderson, Esq. | Roger A. Clement, Jr. |
| Adam Prescott, Esq. | Verrill Dana, LLP |
| Bernstein, Shur. Sawyer & Nelson, P.A. | One Portland Square, 10th Floor |
| 100 Middle Street, PO Box 9729 | Portland, ME 04101 |
| Portland, ME 04104 | rclement@verrill-law.com |
| sanderson@bernsteinshur.com | |
| aprescott@bernsteinshur.com | |

**If you do <u>not</u> object to the Debtors' assumption and assignment of your contract(s) and/or lease(s) on <u>Appendix I</u>, you need not take any further action**. If you have any questions about this notice or would like to request additional documents (at no charge), please contact Adam Prescott at (207) 228-7145 or aprescott@bernsteinshur.com.

Dated:  _____ __, 2025

Respectfully submitted,

**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ draft*
D. Sam Anderson
Adam R. Prescott
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*~~Proposed~~ Counsel to the Debtors and Debtors in Possession*

# <u>APPENDIX I</u>

## <u>List of Proposed Assumed Contracts and Leases</u>

*[to be updated]*

| Summary report: Litera Compare for Word 11.11.0.158 Document comparison done on 8/20/2025 4:28:27 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://work.bssn.com/worksite_active/20538554/5 - Cozy - Bid Procedures and Sale Motion - As Filed Bid Procedures Order.docx | |
| **Modified DMS:** iw://work.bssn.com/worksite_active/20538554/6 - Cozy - Bid Procedures and Sale Motion - Revised Bid Procedures Order [No SH.CNB Added].docx | |
| **Changes:** | |
| Add | 23 |
| Delete | 35 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 58 |