## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT dated as of October 9, 2025 (the "**Effective Date**"), is by and between: (a) Cozy Harbor Seafood, Inc. ("**Cozy Harbor**"), Casco Bay Lobster Co., Inc. ("**Casco Bay**") and Art's Lobster, Co., Inc. ("**Art's Lobster**" and, together with Cozy Harbor and Casco Bay, the "**Sellers**"); and (b) _____ or its assignee ("**Purchaser**" and Purchaser, together with Sellers, the "**Parties**").

## RECITALS

**WHEREAS**, Sellers own certain personal property, hold various permits and licenses, hold certain leasehold interests and are parties to certain executory contracts relating to operating seafood processing businesses in the State of Maine; and

**WHEREAS**, on July 1, 2025, Sellers each filed a voluntary petition for relief commencing a case (the "**Chapter 11 Cases**") under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Maine (the "**Bankruptcy Court**"), under the lead Case No. 25-20160, which Chapter 11 Cases are being jointly administered for procedural purposes only; and

**WHEREAS**, Sellers desire to sell to Purchaser, and Purchaser desires to purchase from Sellers, the Assets,[1] all in the manner and subject to the terms and conditions set forth herein and in the Sale Order.

**NOW THEREFORE**, in consideration of the mutual benefits to be derived from this Agreement and of the representations, warranties, conditions, agreements and promises contained herein and for other good and valuable consideration, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1.1     **Definitions**.  As used in this Agreement, the following terms have the following meanings:

"**Agreement**" shall mean this Asset Purchase Agreement, including the Schedules and Exhibits attached hereto.

"**Assets**" shall have the meaning set forth in Section 2.1 of this Agreement.

"**Assumed Contracts**" shall mean any and all executory contracts and/or leases assumed by any of the Sellers and assigned to Purchaser pursuant to the terms of this Agreement and the Sale Order.

"**Bankruptcy Code**" shall have the meaning set forth in the above Recitals.

---

[1] Unless specifically defined when initially used in this Agreement, capitalized terms shall have the meaning ascribed to such terms in Article I of this Agreement.

"**Bankruptcy Court**" shall have the meaning set forth in the above Recitals.

"**Bid Procedures**" shall have the meaning set forth in Section 7.1(a) of this Agreement.

"**Business Day**" means any day of the year, other than any Saturday, Sunday or any day on which banks located in Portland, Maine are closed for business.

"**Chapter 11 Cases**" shall have the meaning set forth in the above Recitals.

"**Claims**" shall have the meaning set forth in the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code and shall include, among other things, any and all claims or rights based on successor, tort and/or products liability.

"**Closing**" shall have the meaning set forth in Section 2.6 of this Agreement.

"**Closing Conditions**" shall mean the conditions to Closing set forth in Article VIII of this Agreement.

"**Closing Date**" shall have the meaning set forth in Section 2.6 of this Agreement.

"**Deposit**" shall have the meaning set forth in Section 2.4(a) of this Agreement.

"**Encumbrance**" means any lien, interest, encumbrance, claim, right, demand, charge, mortgage, deed of trust, option, pledge, security interest or similar interest, title defect, hypothecation, easement, right of way, restrictive covenant, condition, restriction, encroachment, rights of first refusal, preemptive right, judgment, conditional sale or other title retention agreements and other imposition, imperfection or defect of title or restriction on transfer or use of any nature whatsoever, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

"**Environmental Laws**" shall mean all applicable Laws relating to pollution or protection of human health or the environment (including, without limitation, ambient air, indoor air, water, surface water, groundwater, wetlands, sediment, land surface, soil or subsurface) or natural resources (including, without limitation, applicable Laws relating to the storage, transfer, transportation, investigation, cleanup, treatment, use of, or release or threatened release into the environment of, any Hazardous Substances).

"**Environmental Liabilities**" shall mean and include any claims, judgments, damages (including, but not limited to, punitive damages, property damage, and/or natural resource damages), losses, penalties, fines, liabilities (including, but not limited to, liabilities for personal or bodily injury), Encumbrances, violations, responsibilities, costs and expenses (including attorneys' fees) of investigation, remediation, cleanup, corrective action, monitoring, or defense of any matter arising (whether at law or in equity) under any Environmental Laws or in any way relating to: (i) the environment (including any surface or subsurface physical medium or natural resource such as air, land, soil, wetlands, sediment, surface waters, ground waters, stream and river and biota); (ii) the use, generation, storage, treatment, disposal, processing, transportation, handling, release, emission or remediation of Hazardous Substances; or (iii) impacts on human

health and safety resulting from the foregoing, of whatever kind or nature, including, without limitation, noise and odor, by any party, Government Authority or other entity, whether or not resulting from the violation of, or noncompliance with, Environmental Laws.

"**Escrow Agent**" shall have the meaning set forth in Section 2.4(a) of this Agreement.

"**Excluded Assets**" shall have the meaning set forth in Section 2.2 of this Agreement.

"**Filing Date**" shall mean July 1, 2025, the date the Sellers commenced the Chapter 11 Cases.

"**Final Order**" shall mean an order of the Bankruptcy Court that has not been reversed, vacated or stayed and: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending; or (ii) if an appeal, writ of certiorari, reargument or rehearing has been filed or sought, the order has been affirmed by the highest court to which such order was appealed or certiorari has been denied, or reargument or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.

"**Governmental Authorities**" shall mean and include any agency, board, bureau, executive, court, commission, department, tribunal, instrumentality or administration of the United States or any State, and any local or other governmental body in a State.

"**Governmental Permits**" shall mean and include all licenses, permits, approvals, consents, certificates, waivers, exemptions, orders and other authorizations from any and all Governmental Authorities.

"**Hazardous Substance**" means any substance or material defined in or governed by any Environmental Law as a dangerous, toxic or hazardous pollutant, contaminant, chemical, waste, material or substance, and also expressly includes ureaformaldehyde, polychlorinated biphenyls, dioxin, lead, mold, radon, asbestos, asbestos containing materials, nuclear fuel or waste, radioactive materials, explosives, perfluoroalkyl and polyfluoroalkyl substances, their precursors and any transformation, breakdown, co-products, additives or derivative products, carcinogens and oil, petroleum and petroleum products, including, but not limited to, crude oil or any fraction thereof, natural gas, natural gas liquids, gasoline and synthetic gas, or any other waste, material, substance, pollutant or contaminant which would subject the owner or operator of any Assets transferred hereunder to any damages, penalties or liabilities under any applicable Environmental Laws.

"**Intangible Property**" shall mean, as applicable, the plans and specifications for any improvements to the businesses of the Sellers, including, without limitation, as-built plans; warranties, guarantees, indemnities and claims against third-parties benefiting Sellers; contract rights relating to the construction, operation, repair, renovation, ownership or management of the businesses of the Sellers.

"**Intellectual Property**" shall mean all: (i) trademarks, service marks, trade names, logos and corporate names and registrations and applications for registration, together with all of the

goodwill associated therewith; (ii) registered copyrights; (iii) computer software (other than general commercial software), data, databases and documentation thereof; and (iv) domain names and URLs used by Sellers in the course of their businesses.

"**Laws**" (and each, a "**Law**") means all federal, state, provincial, local or foreign laws, statutes, common law, rules, codes, regulations, restrictions, ordinances, Orders, decrees, approvals, directives, judgments, rulings, injunctions, writs and awards of, or issued, promulgated, enforced or entered by, any and all Governmental Authorities, or courts of competent jurisdiction, or other legal requirement or rule of law, including common law.

"**Licenses and Permits**" shall mean those licenses and permits being assigned to Purchaser by Sellers and identified on the Schedules hereto.

"**Personal Property**" means any and all personal property, including, without limitation, any equipment and furniture, inventory and accounts receivable, of any kind or nature owned by Sellers, including, without limitation, the Intangible Property and Intellectual Property, and excepting only Licenses and Permits and Excluded Assets.

"**Purchase Price**" shall have the meaning set forth in Section 2.5 of this Agreement.

"**Sale Order**" shall mean the order entered by the Bankruptcy Court approving the sale of the Assets pursuant to this Agreement and under the applicable provisions of the Bankruptcy Code.

## ARTICLE II
## PURCHASE AND SALE OF ASSETS

2.1     **Purchase and Sale**.  Excepting any and all Excluded Assets, upon the terms and subject to the conditions set forth herein, on the Closing Date, Sellers shall sell and deliver to Purchaser, and Purchaser shall purchase from Sellers, all of Sellers' rights, title and interests in the Personal Property, Assumed Contracts, and the Licenses and Permits (the "**Assets**"), in each case free and clear of any Encumbrances, rights, remedies or interests, except as specifically permitted herein, as approved for sale, transfer and assignment pursuant to the Sale Order.  The Personal Property shall be transferred and conveyed to Purchaser pursuant to the terms of a Quitclaim Bill of Sale substantially in the form attached hereto as **Exhibit A**.  **The Assets shall not include the Excluded Assets**.

2.2     **Excluded Assets**.  Notwithstanding anything else to the contrary set forth in this Agreement, the Assets shall not include, and Purchaser shall not buy or have any liability or obligation with respect to, any of the following (collectively, the "**Excluded Assets**"):

(a)     Cash of Sellers;

(b)     Any and all causes of action of Sellers, whether known or unknown on the Closing Date, including any and all causes of action arising under chapter 5 of the Bankruptcy Code;

(c)     Except as set forth in Section 9.1(b)(viii) solely with respect to damage or destruction of any Assets occurring after the entry of the Sale Order, Sellers' rights and interests under any insurance policies;

(d)     Any and all: (i) employment, consulting, advisory or service agreements, plans, commitments, arrangements, understandings or other contracts, unless assumed hereunder; (ii) leases or consignment agreements and arrangements; (iii) employee benefit, deferred compensation and/or severance agreements, plans, commitments, arrangements or understandings including, without limitation, all stock option, stock purchase, bonus, incentive and similar agreements, plans, commitments, arrangements or understandings; (iv) collective bargaining agreements, commitments, arrangements or understandings with employees; and (v) agreements, obligations and liabilities with respect to or relating to any "pension plan" or "welfare plan" (as such terms are defined in ERISA);

(e)     Deposits, including all utility deposits; and

(f)     Any and all additional Excluded Assets identified on **Schedule 2.2** hereto.

2.3     **Assumption and Assignment of Liabilities**.  Purchaser shall not assume any liabilities or obligations of Sellers, except for those liabilities and obligations assumed hereunder, including in relation to the Licenses and Permits and Assumed Contracts; provided that Purchaser shall not assume any liability or obligations of Sellers in relation to Sellers' noncompliance with the Licenses and Permits prior to the Closing Date, and/or to the extent provided for by the terms of the Sale Order.

2.4     **Deposit**.

(a)     Prior to the Effective Date, Purchaser shall deliver to _____ ("**Escrow Agent**"), as escrow agent, the sum equal to Two Hundred and Fifty Thousand Dollars ($250,000.00) (the "**Deposit**").  The Deposit, which shall not accrue interest, shall be credited as a partial payment of the Purchase Price payable at the Closing.  The Deposit shall, at all times prior to its release or return in accordance with the terms of this Agreement, be held by Escrow Agent in escrow and shall only be released in accordance with the terms of this Agreement and that certain Escrow Agreement by and among Sellers, Purchaser and Escrow Agent, dated as of an even date hereof.  Purchaser shall be responsible for paying the costs of the Escrow Agent.

(b)     In the event that: (i) the Parties terminate this Agreement pursuant to Section 9.1(a); (ii) Purchaser terminates this Agreement pursuant to Section 9.1(b); or (iii) Sellers terminate this Agreement pursuant to Section 9.1(c)(i), then the Deposit shall be returned immediately and in full to Purchaser.  If this Agreement is terminated by Sellers pursuant to Section 9.1(c)(ii), then the Deposit shall be delivered immediately to Sellers. Delivery of the Deposit to Sellers in accordance with the foregoing shall not constitute full compensation of any and all losses and expenses incurred by Sellers, shall not constitute liquidated damages, and Sellers reserve the right to pursue any and all other remedies available at law or equity.

2.5     **Purchase Price**.  The purchase price for the Assets (the "**Purchase Price**") shall consist of: (a) an amount equal to the sale price of inventory on the Closing Date (as defined below) and the amount of accounts receivable of Sellers as of the Closing Date; **plus** (b) _____ Dollars ($_____.00), in cash or by means of a completed federal funds wire transfer to an account or accounts designated by Sellers in writing not later than three (3) business days prior to the Closing Date; **plus** (c) the assumption by Purchaser, if any, of the liabilities and obligations set forth in Section 2.3 hereof, provided that the Purchase Price shall be subject to all prorations and adjustments set forth in this Agreement, including, without limitation, those set forth in Section 8.7.  Except as otherwise specified herein, the term "Dollars" or "$" as used in this Agreement refers to United States Dollars.  The Purchase Price shall be allocated to the three (3) separate Sellers premised on the value of the Assets attributable to each of the respective Sellers (the "**Purchase Price Allocation**").   The Purchase Price Allocation is set forth on **Schedule 2.5** hereto.

2.6     **Closing**.  The closing (the "**Closing**") shall occur at a date and time mutually agreeable between Purchaser and Sellers that is on or before the Outside Closing Date (defined below), provided the Sale Order has been entered by the Bankruptcy Court.  The Closing shall be an escrow-style closing through the Escrow Agent.  Sellers and Purchaser shall, no later than 5:00 P.M. (Portland, Maine time) on the business day immediately preceding Closing, each deliver to the Escrow Agent all documents, agreements, instruments, certificates, payments and other items required to be delivered by such party in connection with the transactions contemplated by this Agreement to be held in escrow pending consummation of the Closing on the Closing Date (defined below).  Notwithstanding the foregoing, Purchaser shall deliver to Escrow Agent the balance of the Purchase Price no later than 12:00 P.M. (Portland, Maine time) on the date of Closing (the "**Closing Date**").

2.7     **As Is/Where Is**.  Purchaser shall acquire the Assets on an "**AS IS**," "**WHERE IS**" and "**WITH ALL DEFECTS**" basis, free and clear of any Encumbrances, rights and interests, including any and all express and implied warranties of any kind or nature, except as specifically set forth herein, and as approved for sale, transfer and assignment pursuant and subject to the Sale Order.

### ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF SELLERS

As an inducement to Purchaser to enter into this Agreement and to consummate the transactions contemplated hereby, Sellers hereby represent and warrant to Purchaser as follows, conditioned upon and subject to the entry of the Sale Order:

3.1     **Organization and Authority**.  Sellers are duly organized and validly existing under the Laws of the jurisdiction of their organization and, subject to any required approval of the Bankruptcy Court and any required approval of applicable Governmental Authorities, have the power and authority to enter into the transactions contemplated by this Agreement.

3.2     **Authority and Binding Agreement**.  This Agreement has been duly authorized, executed and delivered by Sellers and, subject to the approval of the Bankruptcy Court, is the valid and binding obligation of Sellers.

3.3     **Consents and Approvals**.   No consent, approval or authorization of, or declaration, filing, or registration with, any Governmental Authorities is required to be made or obtained by Sellers in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated herein, except for: (a) consents, approvals, or authorizations of, or declarations or filings with, the Bankruptcy Court; (b) the filing of such assignments or other conveyance documents as may be required to transfer Sellers' interests in any Assets, the title to which is governed by filing in the public records; (c) the filing of such documents as may be necessary to reflect the release of any Encumbrances that are a matter of public record; and (d) any consents, approvals, or authorizations of any Governmental Authority, which consents, approvals or authorizations are identified on **Schedule 3.3** hereto.

3.4     **Title to and Condition of Assets**.   Sellers have good title to the Assets and may transfer the Assets free and clear of all liabilities, Encumbrances (including tax liens and environmental liens), rights and interests of any kind whatsoever, all to the extent provided for by the terms of this Agreement and the Sale Order.

3.5     **Service Contracts**.   There are no service, maintenance, repair, management, leasing, construction, or supply contracts or other contracts affecting all or any portion of the Assets which will be binding upon Purchaser after Closing, except to the extent provided for by the terms hereof and/or the terms of the Sale Order.

3.6     **Compliance with Law**.   Except as set forth in **Schedule 3.6**, Sellers have not received any written notice that the Assets or any portion thereof are in violation of any Environmental Law or any building, health, traffic, environmental, flood control or other applicable Laws of any Governmental Authorities having jurisdiction over the Assets.

3.7     **Litigation**.   Other than the Sale Order and the transfer and/or issuance of Licenses and Permits required in relation hereto, there is no action, suit, inquiry, proceeding or investigation by or before any court or Governmental Authority pending, or, to the knowledge of Sellers, threatened against Sellers that questions or challenges the validity of this Agreement or in connection with the transactions contemplated thereby.   Other than the Sale Order and the transfer and/or issuance of Licenses and Permits required in relation hereto, as of the date hereof, to Sellers' knowledge, there are no circumstances or facts that would prevent Sellers from engaging in the transactions contemplated in this Agreement.

3.8     **Environmental Matters**.

(a)     Except as disclosed in **Schedule 3.8(a)** hereto, Sellers are in compliance with and have no liability under Environmental Laws and have no Environmental Liabilities.

(b)     Except as disclosed in **Schedule 3.8(b)**, and without limiting the generality of the foregoing, Sellers hold and are in compliance with all permits, licenses and other authorizations that are required pursuant to Environmental Laws, and all such authorizations have been validly issued and are currently in full force and effect.

(c)     Sellers have complied or will have complied by the Closing Date with all applicable consent or notice requirements under Environmental Laws relating to the lawful transfer

to Purchaser of such authorizations.  A list of all such authorizations is included in **Schedule 3.8(c)** hereto.

(d)     Except as described in **Schedule 3.8(d)** hereto, there is no civil, administrative, or criminal proceeding pending or, to Sellers' knowledge, threatened against any of the Sellers: (i) under any Environmental Laws; or (ii) to revoke, suspend, adversely modify or terminate any of the Licenses and Permits or declare any of the Licenses and Permits invalid.

# ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Sellers as follows:

4.1     **Organization and Authority**.  Purchaser is duly organized and validly existing under the Laws of the jurisdiction of its organization and has the power and authority and all necessary approvals of all Governmental Authorities to enter into the transactions contemplated by this Agreement.  Purchaser is duly qualified to do business in each jurisdiction where Purchaser does business.

4.2     **Authority and Binding Agreement**.  This Agreement has been duly authorized, executed and delivered by Purchaser and, subject to the approval of the Bankruptcy Court, is the valid and binding obligation of Purchaser.

4.3     **Consents and Approvals**.   No consent, approval or authorization of, or declaration, filing, or registration with, any Governmental Authority is required to be made or obtained by Purchaser in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated herein, except for: (a) consents, approvals, or authorizations of, or declarations or filings with, the Bankruptcy Court; (b) the filing of such assignments or other conveyance documents as may be required to transfer Sellers' interests in any Assets, the title to which is governed by filing in the public records; (c) consents and approvals necessary to transfer the Licenses and Permits being transferred to Purchaser hereunder; and (d) consents, approvals, authorizations, declarations, filings or registrations which, if not obtained, individually or in the aggregate, would not have a material adverse effect on the transactions contemplated in this Agreement; and (e) any consents, approvals, or authorizations of any Governmental Authority identified on **Schedule 3.3** hereto.

4.4     **Litigation**.  There is no action, suit, inquiry, proceeding or investigation by or before any court or Governmental Authority pending, or, to the knowledge of Purchaser, threatened against Purchaser that questions or challenges the validity of this Agreement or in connection with the transactions contemplated thereby.  As of the date hereof, to Purchaser's knowledge, there are no circumstances or facts that would prevent Purchaser from engaging in the transactions contemplated in this Agreement, subject to entry of the Sale Order.

4.5     **WHERE-IS/AS-IS**.  Purchaser acknowledges, represents and warrants to Sellers that Purchaser has not been induced to execute this Agreement by any act, statement or representation of Sellers or their agents, employees or other representatives not expressly set forth in this Agreement.

4.6 **Financing**. At the Closing, Purchaser shall have sufficient immediately available funds to pay the Purchase Price and all other amounts payable pursuant to this Agreement, the other agreements contemplated herein, and the transactions contemplated herein and thereby. Upon the consummation of the transactions contemplated herein, Purchaser shall not be insolvent, be left with unreasonably small capital, or have incurred debts beyond its ability to pay such debts as they mature.

## ARTICLE V
## COVENANTS PRIOR TO AND IN FURTHERANCE OF CLOSING

5.1 **Affirmative and Negative Covenants Pending Closing**. Except as expressly set forth below, during the period from the date hereof to the Closing Date:

(a) **Sellers' Covenants**.

(i) **Affirmative Covenants Pending Closing**. Sellers covenant and agree that Sellers shall, unless otherwise agreed to in writing by Purchaser:

(1) **Maintenance**. Maintain the Assets owned or operated by Sellers consistent with Sellers' standard practice, subject only to ordinary wear and tear.

(2) **Court Orders**. Subject to the provisions hereof and the Bid Procedures (defined below), in consultation with Purchaser, use Sellers' reasonable best efforts to secure all required approvals from the Bankruptcy Court for the sale of the Assets pursuant to the terms hereof, and shall otherwise use Sellers' best efforts to cause the consummation of the transactions contemplated by this Agreement in accordance with the terms and conditions hereof.

(3) **Notification of Certain Matters**. To the extent not prohibited by Law, Sellers shall immediately notify Purchaser of: (i) any material adverse change relating to the Assets or the value or use thereof; (ii) any governmental or third party complaint, investigation or hearing (or communications indicating that any are contemplated); and (iii) any environmental enforcement actions, rulings or orders under any applicable Environmental Laws, including, without limitation, any remediation or clean-up orders, issued with respect to any of the Sellers or the Assets.

(ii) **Negative Covenants Pending Closing**. Except as expressly permitted herein, or as required by Law, subject to the limitations of the Bankruptcy Code or as provided for by the terms of any order entered by the Bankruptcy Court, without the consent of Purchaser, Sellers shall not:

(1) (a) directly or indirectly sell, assign or create any right, title or interest whatsoever in or to the Assets or any portion thereof, (b) take any action, create, commit, permit to exist or suffer any acts which would cause

the creation of any Encumbrance, or (c) enter into any agreement to do any of the foregoing without Purchaser's prior written consent;

(2)     abandon or permit to lapse any rights to the Assets, or enter into any settlement regarding the breach or infringement, misappropriation, dilution or other violation of, or challenge the title to, any such Assets; or

(b)     **Purchaser's Covenants**.  Purchaser agrees that it shall use its good faith efforts to take, or cause to be taken, all actions reasonably requested by Sellers to assist in obtaining entry of the Sale Order, such as furnishing affidavits, non-confidential financial information or other documents or information for filing with the Bankruptcy Court.

5.2     **Consents and Further Actions**.  Subject to the terms and conditions herein provided, Sellers and Purchaser covenant and agree to use their good faith efforts to take, or cause to be taken, all actions, or do, or cause to be done, all things, necessary, proper or advisable under applicable Laws to consummate and make effective the transactions contemplated in this Agreement, including all closing conditions to be satisfied.  This Section 5.2 shall survive until fully performed or until such performance is expressly waived in writing by the other Party.

5.3     **Tax Cooperation and Exchange of Information**.  Each Party hereto shall provide the other Party with such cooperation and information as may be reasonably requested in filing any tax return, amended tax return, or claim for refund, determining any liabilities for taxes or a right to refund of taxes, or participating in or conducting any audit or other proceeding with respect to taxes relating to the transactions contemplated hereby.  Such cooperation and information shall include providing copies of relevant tax returns or portions thereof, together with accompanying schedules and related work papers and documents relating to rulings or other determinations by taxing authorities.

5.4     **Public Announcement**.  The Parties shall consult with each other before issuing, and provide each other the opportunity to review and comment upon, any press release or other public statements with respect to this Agreement or the transactions contemplated hereby.  Except as may be required by applicable Law or the Bankruptcy Court, the Parties shall not cause or permit the issuance of any such release or any such public statement without the consent of all of the Parties hereto, which consent shall not be unreasonably withheld or delayed.

### ARTICLE VI
### [INTENTIONALLY OMITTED]

### ARTICLE VII
### BID AND AUCTION PROCESS

7.1     **Court Actions**.

(a)     Sellers have filed with the Bankruptcy Court and shall prosecute in good faith, all such necessary motions or applications seeking approval of this Agreement, subject to higher and better offers, in accordance with the bid procedures order entered by the Bankruptcy Court (the "**Bid Procedures**").

(b)    Sellers shall comply (or obtain an order from a competent court waiving compliance) with all applicable Laws including, without limitation, requirements under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the local rules of procedure of the Bankruptcy Court.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO CLOSING

8.1    **Conditions to Sellers' Obligation to Close**.  Sellers' obligations to consummate the transactions contemplated by this Agreement are subject to the satisfaction or waiver, at or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Sellers in whole or in part to the extent permitted by applicable Law):

(a)    **Representations and Warranties; Covenants**.

(i)    Purchaser shall have performed in all material respects all agreements and covenants required hereby to be performed by Purchaser prior to or at the Closing Date, and all representations and warranties of Purchaser contained in this Agreement and any related transaction documents shall have been true and correct in all material respects when made and shall be true and correct in all material respects at and as of the Closing Date, as if such representations and warranties were made at and as of the Closing Date (except for those representations and warranties that, by their terms, apply only as of an earlier date, which will be true and correct as of such date), and Purchaser shall have delivered to Sellers a certificate, dated as of the Closing Date and signed by an authorized representative of Purchaser, to that effect.

(ii)    Purchaser shall have performed, in all material respects, all agreements and covenants required by this Agreement to be performed by it prior to or at the Closing Date, and Sellers shall have received a certificate, dated as of the Closing Date and signed by an authorized representative of Purchaser, to that effect.

(b)    **No Injunction**.  No injunction, stay or restraining order shall be in effect prohibiting the consummation of the transactions contemplated by this Agreement.

(c)    **Bid Procedures Order**.  The Bid Procedures Order shall have become a Final Order (except as modified or amended in any immaterial respect or with the consent of Purchaser, which consent may be withheld in its reasonable discretion for material modifications and amendments).

(d)    **Sale Order**.  The Bankruptcy Court shall have entered the Sale Order which Sale Order shall authorize the sale of the Assets free and clear of all Encumbrances (including, without limitation, by specific reference to all filed security interests) and otherwise be in form and substance acceptable to Purchaser in its sole discretion, and such Sale Order shall have become a Final Order (except as modified or amended in any immaterial respect or with the consent of Purchaser, which consent may be withheld in its sole discretion for material modifications and amendments).

(e)    **Purchaser's Deliveries**.  Purchaser shall have paid the Purchase Price (and any other amounts due hereunder, if any) and shall have duly executed and delivered to Sellers each of the documents, instruments and agreements required to be delivered pursuant to this Agreement.

(f)    **Governmental Permits**.  All Governmental Permits, authorizations and/or exemptions required to be obtained in connection with the consummation of the transactions contemplated by this Agreement shall have been obtained and be in full force and effect.

8.2    **Conditions to Purchaser's Obligation to Close**.  Purchaser's obligation to consummate the transactions contemplated in this Agreement is subject, at the option of Purchaser, to the satisfaction or waiver, at or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Purchaser in whole or in part to the extent permitted by applicable Law):

(a)    **Representations and Warranties; Covenants**.

(i)    Sellers shall have performed in all material respects all agreements and covenants required hereby to be performed by Sellers prior to or at the Closing Date, and all representations and warranties of Sellers contained in this Agreement and any related transaction documents shall have been true and correct in all material respects when made and shall be true and correct in all material respects at and as of the Closing Date, as if such representations and warranties were made at and as of the Closing Date (except for those representations and warranties that, by their terms, apply only as of an earlier date, which will be true and correct as of such date), and Sellers shall have delivered to Purchaser a certificate, dated as of the Closing Date and signed by an authorized representative of Sellers, to that effect.

(ii)    Sellers shall have performed, in all material respects, all agreements and covenants required by this Agreement to be performed by Sellers prior to or at the Closing Date, and Sellers shall have delivered to Purchaser a certificate, dated as of the Closing Date and signed by an authorized representative of Sellers, to that effect.

(b)    **Sellers' Deliveries**.  Sellers shall have duly executed and delivered to Purchaser each of the documents, instruments and agreements required to be delivered by Sellers pursuant to this Agreement.

(c)    **Material Adverse Change**.  No material adverse change with respect to the physical condition of the Assets (ordinary wear and tear excepted) or any Law applicable to the Assets or Purchaser's intended use thereof, shall have occurred between the Effective Date and the Closing Date.

(d)    **Bid Procedures Order**.  The Bid Procedures Order shall have become a Final Order (except as modified or amended in any immaterial respect or with the consent

of Purchaser, which consent may be withheld in its reasonable discretion for material modifications and amendments).

(e) **Sale Order**.  The Bankruptcy Court shall have entered the Sale Order which Sale Order shall authorize the sale of the Assets free and clear of all Encumbrances (including, without limitation, by specific reference to all filed security interests), and otherwise be in form and substance reasonably acceptable to Purchaser, and the Sale Order shall have become a Final Order.

(f) **No Injunction or Challenge**.  No injunction, stay or restraining order shall be in effect prohibiting the consummation of the transactions contemplated in this Agreement.  No Law, ordinance or regulation shall have been enacted, and no order, judgment, or decree shall have been enacted or rendered by a Governmental Authority or any other person (and not subsequently dismissed, settled, withdrawn or terminated, nor shall any petition, complaint, or action have been filed or be pending that seeks such order, judgment or decree) which would prevent the consummation of the transaction at the Closing of, or restrain or invalidate, the transactions contemplated by this Agreement.

8.3   **Access to Information**.

(a) Sellers agree that, between the date this Agreement is executed and the earlier of the Closing Date and the date on which this Agreement is terminated in accordance with Section 9.1, Purchaser shall be entitled, through its representatives, to have such reasonable access to and make such reasonable investigation and examination of the books and records, assets, accountants, auditors, counsel and operations of Sellers as Purchaser may reasonably request, provided, however, that Sellers shall not be obligated to provide information that they are not permitted to provide under applicable Law.  Any such investigations and examinations shall be conducted during regular business hours upon reasonable advance notice and under reasonable circumstances, including Sellers' right to have its representatives accompany Purchaser and its representatives at the time of any on-site inspection or examination and shall be subject to restrictions under applicable Law.  Pursuant to this Section 8.3, Sellers shall furnish to Purchaser and its representatives such financial and operating data and other information as such persons reasonably request.  Sellers shall use commercially reasonable efforts to cause their representatives to reasonably cooperate with Purchaser and Purchaser's representatives in connection with such investigations and examinations.  Purchaser and its representatives shall be permitted to contact, or engage in discussions or otherwise communicate with Sellers' landlords, clients, suppliers and other Persons with which Sellers have material commercial dealings, provided, that Purchaser must obtain the prior written consent of Sellers, which written consent shall not be unreasonably withheld or delayed, to initiate such communications and give Sellers the opportunity to be present therefor.

(b) No information received pursuant to an investigation made under this Section 8.3 shall be deemed to: (i) qualify, modify, amend or otherwise affect any representations, warranties, covenants or other agreements of Sellers or Purchaser set forth in this Agreement or any certificate or other instrument delivered to Purchaser in connection with the transactions contemplated hereby; (ii) limit or restrict the remedies

available to the Parties under applicable Law arising out of a breach of this Agreement or otherwise available at Law or in equity; or (iii) limit or restrict the ability of either Party to invoke or rely on the conditions to the obligations of the Parties to consummate the transactions contemplated by this Agreement set forth in <u>Article VIII</u>.

(c)     From and after the Closing Date, upon reasonable request by Sellers, Purchaser shall provide Sellers with copies of all books and records that comprise or are related to the Assets for the purposes of: (a) preparing any tax returns; (b) enforcing rights or obligations of Sellers under this Agreement; or (c) complying with the requirements of, or responding to inquiries by, any Governmental Units; <u>provided</u>, <u>however</u>, that, for the avoidance of doubt, the foregoing shall not require Purchaser to take any such action if: (i) such action may result in a waiver or breach of any attorney/client privilege; or (ii) such action could reasonably be expected to result in violation of applicable Law or Order. Purchaser agrees to maintain the files or records which are contemplated by this Agreement for two (2) years following the Closing Date.

8.4     <u>**Deliveries at Closing**</u>.

(a)     <u>**Deliveries by Sellers**</u>.  Not less than two (2) days prior to the Closing Date, Sellers, at their sole cost and expense, shall deliver or cause to be delivered to Escrow Agent the following documents and instruments, each effective as of the Closing Date and executed by Sellers, in addition to the other items required by this Agreement to be delivered by Sellers:

(i)     A certified copy of the Sale Order;

(ii)     The Quitclaim Bill of Sale substantially in the form attached hereto as <u>**Exhibit A**</u>;

(iii)     A written waiver by Sellers releasing any and all claims against Purchaser arising under chapter 5 of the Bankruptcy Code, which written waiver shall be in the form attached hereto as <u>**Exhibit B**</u>;

(iv)     Any applicable local, state or federal transfer tax forms;

(v)     All other documents, closing statements, affidavits, instruments, evidence of authority, and writings required by Sellers pursuant to this Agreement or otherwise reasonably requested by Purchaser to deliver the Assets free and clear of any Encumbrances, rights or interests, each in form and substance reasonably satisfactory to Purchaser and Sellers;

(vi)     Two (2) originals of the Non-Foreign Affidavit in the form of <u>**Exhibit C**</u> attached hereto, each executed by Sellers;

(vii)     A duly executed counterpart of the settlement statement prepared by Escrow Agent, setting forth the Purchase Price and the apportionments and adjustments required pursuant to this Agreement (the "<u>**Settlement Statement**</u>"); and

(viii)    Bringdown certificates of Sellers as required by this Agreement, executed by a duly authorized officer of Sellers, in a form reasonably satisfactory to Purchaser.

(b)    **Deliveries by Purchaser**.  Not less than two (2) days prior to the Closing Date, Purchaser, at its sole cost and expense, shall deliver or cause to be delivered into escrow the following documents and instruments, each effective as of the Closing Date and executed by Purchaser, in addition to the other items and payments required by this Agreement to be delivered by Purchaser:

(i)    The Purchase Price (and any other amounts due hereunder, if any) less the Deposit, in cash or by means of a completed federal funds wire transfer, provided that notwithstanding the foregoing requirements of Section 8.4(b), Purchaser shall deliver to Escrow Agent the balance of the Purchase Price no later than 12:00 P.M. (Portland, Maine time) on the date of Closing Date, but not prior;

(ii)    A duly executed counterpart of the Settlement Statement;

(iii)    All other documents, closing statements, affidavits, instruments and writings reasonably required to be delivered by Purchaser or its designee at or prior to the Closing Date pursuant to this Agreement, each in form and substance reasonably satisfactory to Purchaser and Sellers.

8.5    **Possession**.  On the Closing Date, possession of the Assets shall be delivered to Purchaser.

8.6    **Closing Costs**.  Except as hereinafter specifically provided, Sellers and Purchaser shall allocate all closing costs between them in accordance with standard practice in Portland, Maine.  Sellers and Purchaser shall each be responsible for preparing such documents as they are obligated to deliver under this Agreement and for their own legal expenses.  Sellers and Purchaser agree to allocate closing costs as follows:

(a)    All transfer taxes, sales taxes and similar charges, if any, applicable to the transfer of the Assets to Purchaser shall be paid by Purchaser.

(b)    Each of Sellers and Purchaser shall pay their own legal fees.

(c)    Escrow fees shall be paid by Purchaser.

(d)    Other costs associated with the Closing and transactions contemplated under the Agreement shall be allocated as provided elsewhere in this Agreement.  Sellers shall request that the Bankruptcy Court waive all transfer, stamp and other transfer taxes due and owing as result of transfer of Assets from Sellers to Purchaser.  Purchaser agrees to be bound by the Bankruptcy Court's ruling on this request.

8.7    **Expenses**.  Taxes, assessments, improvement bonds, utility costs, and other expenses affecting the Assets shall be prorated between Purchaser and Sellers as of the Closing

Date to the extent due and payable for any period prior to the Closing.  The terms of this Section 8.7 shall survive Closing.

### ARTICLE IX
### TERMINATION

9.1    **Termination**.   This Agreement may be terminated and the transactions contemplated hereby may be abandoned, and there shall thereafter be no liability of any Party to the other Party hereunder, as follows:

(a)    **Mutual Consent**.   Upon the mutual written consent of Sellers and Purchaser.

(b)    **By Purchaser**.

(i)    By Purchaser, in the event of a material violation or material breach by Sellers of Sellers' agreements, covenants, representations or warranties contained in this Agreement and, to the extent such breach is reasonably capable of cure within such period, such breach has not been cured by Sellers within ten (10) Business Days after written notification by Purchaser; or

(ii)    by Purchaser, if the Bankruptcy Court enters an order granting stay relief with respect to any material portion of the Assets; or

(iii)    By Purchaser, if the Bid Procedures Order is appealed, reversed, vacated, or stayed; or

(iv)    By Purchaser, if the Sale Order, which Sale Order shall authorize the sale of the Assets free and clear of all Encumbrances, and shall otherwise be in form and substance reasonably acceptable to Purchaser, is not entered by the Bankruptcy Court on or before October 2, 2025, or if the Sale Order is appealed, reversed, vacated, or stayed; or

(v)    By Sellers or Purchaser, if the Closing does not occur on or before October 9, 2025 (or on such other extended date upon which the Parties mutually agree in writing) (the "**Outside Closing Date**"); or

(vi)    By Purchaser if, prior to the Closing, a material amount of the Assets (or any portion material to Purchaser's use thereof) are destroyed or substantially damaged by fire, explosion, act of God, collapse or other casualty; provided, however, that Purchaser may elect to close and accept the Assets with no reduction in the Purchase Price and, in that event, any insurance proceeds (or proceeds of such condemnation proceeding) subsequently recovered by Sellers on account of such loss shall be transferred to Purchaser; or

(c)    **By Sellers**.

(i)         By Sellers in the event that a higher or better offer is received and accepted by Sellers, approved by the Bankruptcy Court, and results in the closing of such transaction, in which event this Agreement shall be deemed, without further action, to have been automatically terminated by Sellers on the date of the approval of such sale by the Bankruptcy Court.  In such event, the Deposit shall be returned to Purchaser in accordance with Section 2.4(b) hereof; or

(ii)        By Sellers, in the event of a material violation or material breach by Purchaser of its agreements, covenants, representations or warranties contained in this Agreement; <u>provided</u> that such violation or breach shall not have been waived or cured within ten (10) days following receipt by Purchaser of written notice of such breach from Sellers.

(d)      **Effect of Termination**.  In the event of valid termination of this Agreement pursuant to this Section 9.1, written notice thereof shall forthwith be given to the other Party, and all further obligations of the Parties hereunder shall immediately and without further action terminate, except that the obligations set forth in Section 5.4 shall survive in full force and effect, as shall any other provisions of this Agreement which are specifically designated to survive termination.

## ARTICLE X
## MISCELLANEOUS

10.1    **Entire Agreement**.  This Agreement, the Schedules, the Exhibits and the Sale Order, together with the non-disclosure agreement previously executed and delivered by Purchaser, contain the entire agreement among the Parties with respect to the transactions contemplated by this Agreement and supersede all prior agreements or understandings among the Parties.

10.2    **Other Governmental Authorities**.  In the event any Party receives notice from any Governmental Authority that other notices, applications, filings or Governmental Permits are required with respect to this Agreement or the transactions contemplated hereby, Purchaser and Sellers shall make such notices, applications or filings and seek such Governmental Permits, unless they decide, in good faith, that such compliance is not necessary.

10.3    **Additional Actions and Documents**.  At and after the Closing, and without further consideration, Purchaser and/or Sellers (as applicable) shall promptly execute and deliver such further instruments of conveyance, assignment and transfer, and take such other actions as any Party may reasonably request in order to convey, assign and transfer to Purchaser all of Sellers' rights, title and interest in and to the Assets, or to clarify, identify or more precisely describe the Assets intended to be conveyed.

10.4    **RESERVED**.

10.5    **Descriptive Headings; Certain Interpretations**.

(a)      Section headings are descriptive and for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

(b)      Except as otherwise expressly provided in this Agreement, the following rules of interpretation apply to this Agreement:  (i) the singular includes the plural and the plural includes the singular; (ii) "or" and "either" are not exclusive and "include" and "including" are not limiting; (iii) a reference to any agreement or other contract includes any schedules and exhibits thereto and permitted supplements and amendments thereof; (iv) a reference to a person includes a natural person or entity and its permitted successors and assigns; and (v) a reference in this Agreement to an Article, Section, Schedule or Exhibit is to the Article, Section, Schedule or Exhibit of this Agreement.

10.6   **Successors and Assigns**.  This Agreement is made solely and specifically by and for the benefit of the Parties, and their respective successors and assigns.  Purchaser shall be entitled to assign its rights hereunder to an affiliate or an entity related to Purchaser; provided, however, that such assignment shall not relieve Purchaser of its obligations hereunder.

10.7   **Notices**.  All notices, requests, and other communications hereunder must be in writing and shall be deemed to have been duly given only if delivered via electronic mail and/or by overnight courier to the Parties at the following addresses and electronic mail addresses below:

If to Sellers, addressed to:

John Norton
Joseph Donovan
75 St. John Street
Portland, Maine 04102
Email: jnorton@cozyharbor.com
Email: joedonovan@cozyharbor.com

With copies (which shall not constitute notice hereunder) to:

D. Sam Anderson, Esq.
Adam Prescott , Esq.
Bernstein Shur
100 Middle Street
Portland, ME 04104-5029
(207) 228-7178
Email:  sanderson@bernsteinshur.com
Email:  aprescott@bernsteinshur.com

If to Purchaser, addressed to:

With a copy to (which shall not constitute notice hereunder to):

All such Notices shall be deemed given one (1) Business Day after delivery by overnight courier or by electronic mail.  Any Party from time to time may change its address or other information for the purpose of notices to that Party by giving notice specifying the change to the other Parties.

10.8   **Expenses**.  Except as otherwise expressly provided herein, each Party shall bear its own costs with respect to the drafting and negotiation of this Agreement, any court or regulatory proceedings related thereto, the consummation of the transactions contemplated hereby, and such Party's compliance with all its agreements and conditions contained herein, including, without limitation, all legal and accounting fees and disbursements and all costs of obtaining necessary consents.  The provisions of this Section 10.8 shall survive the Closing or earlier termination of this Agreement.

10.9   **Brokerage Commissions and Fees**.  Purchaser warrants and represents that no brokerage commissions or fees are due any broker as a result of Purchaser's actions in connection with the transactions contemplated by this Agreement and Purchaser agrees that should any claim be made for commissions or fees by any broker against any of the Sellers, Purchaser shall indemnify and hold Sellers harmless from and against any and all such claims in connection therewith.  Sellers warrant and represent that, other than brokers retained pursuant to a Bankruptcy Court Order, no brokerage commissions or fees are due to any brokers and Sellers agree that Sellers shall indemnify and hold Purchaser harmless from and against any and all such claims in connection therewith.  Notwithstanding anything contained herein to the contrary, the provisions of this Section 10.9 shall survive the Closing or any earlier termination of this Agreement.

10.10   **Waiver**.  Any term, provision or condition of this Agreement may be waived, or the time for its performance may be extended, at any time by the Party which is entitled to the benefit thereof.  To be effective, each such waiver shall be in writing, shall specifically refer to this Agreement and the term, provision or condition being waived, and shall be executed by an authorized officer of the Party granting such waiver.  The failure of any Party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor to affect in any way the validity of this Agreement or any part hereof or the right of any Party thereafter to enforce each and every such provision.  No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.  Notwithstanding the foregoing, a waiver hereunder by Sellers of any material term or condition shall not be effective without an order of the Bankruptcy Court in relation to such waiver.

10.11   **Amendment**.  This Agreement may be modified or amended only in a writing duly executed by or on behalf of all Parties hereto.

10.12   **Counterparts; Facsimile Signatures**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement may be executed and delivered via PDF.

10.13   **Continuing Jurisdiction**.  The Parties agree that the Bankruptcy Court shall retain jurisdiction over the enforcement of this Agreement, including the performance of the obligations and transactions contemplated hereunder.

10.14   **Choice of Law**.  This Agreement shall be construed, interpreted and the rights of the Parties determined in accordance with the Laws of the State of Maine, without regard to conflicts of law principles thereof, except with respect to matters of Law concerning the internal corporate affairs of any corporation, company or limited liability company that is a party to or the subject of this Agreement, and as to those matters the Law of the jurisdiction of incorporation or organization of such entity shall govern.

10.15   **No Partnership or Joint Venture**.  Nothing contained in this Agreement shall be deemed to create a partnership, joint venture, or any other relationship other than that of a seller and a purchaser between the Parties hereto.

10.16   **No Third-Party Beneficiaries**.  Nothing herein expressed or implied is intended or shall be construed to confer upon or give to any person, firm or corporation, other than the Parties hereto and their respective permitted successors and assigns, any rights or remedies under or by reason of this Agreement.  It is the explicit intention of the Parties hereto that no person or entity other than the Parties hereto and their successors and permitted assigns is or shall be entitled to bring any action to enforce any provision of this Agreement against any Party hereto, and the assumptions, indemnities, covenants, undertakings and agreements set forth in this Agreement shall be solely for the benefit of, and shall be enforceable only by, the Parties hereto or their respective successors and permitted assigns.

10.17   **Prevailing Agreement Between the Parties**.  In the event of any conflict between the provisions of this Agreement and the provisions of any other transaction document, other than the Sale Order, the provisions of this Agreement shall prevail in the determination of the respective rights and obligations of the Parties as between themselves.  In the event of any conflict between any provision of this Agreement and the Sale Order, the terms of the Sale Order shall govern.

*[Signature page follows.]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly authorized, executed and delivered.

COZY HARBOR SEAFOOD, INC.


By:_____
Name:  John Norton
Title:  President


CASCO BAY LOBSTER CO., INC.


By:_____
Name:  John Norton
Title:  President


ART'S LOBSTER CO., INC.


By:_____
Name:  John Norton
Title:  President




[Purchaser]


By:_____
Name:
Title:

**SCHEDULE 2.2**
**EXCLUDED ASSETS**

**SCHEDULE 2.5**
**PURCHASE PRICE ALLOCATION**

**SCHEDULE 3.3**
**GOVERNMENTAL AUTHORITIES CONSENTS AND APPROVALS**

**SCHEDULE 3.6**
**COMPLIANCE WITH LAWS**

**SCHEDULE 3.8(A)**
**ENVIRONMENTAL LAWS AND LIABILITIES**

**SCHEDULE 3.8(B)**
**COMPLIANCE WITH ENVIRONMENTAL LAWS**

**SCHEDULE 3.8(C)**
**NOTICE REQUIREMENTS UNDER ENVIRONMENTAL LAWS**

**SCHEDULE 3.8(D)**
**PENDING OR THREATENED CLAIMS RELATING TO ENVIRONMENTAL CLAIMS
AND/OR LICENSING AND PERMITS**

**EXHIBIT A**
**QUITCLAIM BILL OF SALE**

**EXHIBIT B**
**RELEASE OF CERTAIN CLAIMS**

**EXHIBIT C**
**NON-FOREIGN AFFIDAVIT**

## BILL OF SALE AND GENERAL ASSIGNMENT

THIS BILL OF SALE AND GENERAL ASSIGNMENT (this "**Bill of Sale**") is made as of this 9th day of October, 2025 by: (a) Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc., and Art's Lobster Co., Inc. (collectively, "**Sellers**") and; (b) _____ ("**Purchaser**").

## RECITALS

**A.**    Sellers own and operate certain seafood processing businesses and facilities located in various parts of the State of Maine (the "**Businesses**").

**B.**    In order to operate the Businesses, Sellers each own certain personal property assets, including equipment and goodwill (the personal property assets that are the subject of the Purchase Agreement (defined below), the "**Assets**").

**C.**    Sellers and Purchaser have entered into that certain Asset Purchase Agreement dated as of October 9, 2025 (the "**Purchase Agreement**"), with respect to, among other things, the acquisition of the Assets from Sellers.

**D.**    The Purchase Agreement requires Sellers to convey all of Sellers' right, title and interest in, to and under the Assets to Purchaser.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers hereby agree as follows:

1.    Unless the context otherwise requires, all capitalized terms used, but not otherwise defined herein, shall have the respective meanings provided in the Purchase Agreement.

2.    Sellers do hereby unconditionally, absolutely, and irrevocably grant, bargain, sell, transfer, assign, convey, set over and deliver unto Purchaser all of Sellers' right, title and interest in and to any and all of the Assets.

3.    Sellers grant, bargain, sell, transfer, assign, convey, set over and deliver the Assets to Purchaser on an "**AS IS**," "**WHERE IS**" and "**WITH ALL DEFECTS**" basis, free and clear of any Encumbrances, rights and interests, including any and all express and implied warranties of any kind or nature, except as specifically set forth in the Purchase Agreement, and as approved for sale, transfer and assignment pursuant and subject to the Sale Order.

4.    This Bill of Sale shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

5.    This Bill of Sale and the legal relations of the parties hereto shall be governed by and construed and enforced in accordance with the laws of the State of Maine, without regard to its principles of conflicts of law.

IN WITNESS WHEREOF, Sellers have hereto executed this Agreement as of the date set forth above.

COZY HARBOR SEAFOOD, INC.


By:_____
Name:  John Norton
Title:  President


CASCO BAY LOBSTER CO., INC.


By:_____
Name:  John Norton
Title:  President


ART'S LOBSTER CO., INC.


By:_____
Name:  John Norton
Title:  President

# **RELEASE**

This RELEASE (the "**Release**") is entered into and granted as of this 9th day of October, 2025, by Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc. and Art's Lobster Co., Inc. (collectively, the "**Sellers**") in favor of _____ ("**Purchaser**").

**WHEREAS**, Sellers and Purchaser have identified certain assets that Purchaser desires to purchase from Sellers (the "**Purchased Assets**") pursuant to that certain Asset Purchase Agreement dated October 9, 2025 (the "**Asset Purchase Agreement**");

**WHEREAS**, pursuant to Section 8.4(a)(iii) of the Asset Purchase Agreement, it is a closing obligation of Sellers to release certain claims against Purchaser;

**NOW, THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, each of Sellers hereby agrees as follows:

1.    **General Release by Releasors**.  Each of Sellers and their chapter 11 estates hereby releases and forever discharges Purchaser from any and all actions, suits, claims and demands, whether known or unknown, arising under Chapter 5 of the Bankruptcy Code.

2.    **Choice of Law**.  This Release shall be construed, interpreted and the rights of the parties determined in accordance with the Laws of the State of Maine, without regard to conflicts of law principles thereof, except to the extent a matter is determined by bankruptcy law, in which case, bankruptcy law shall apply.

*[Signature pages to follow]*

COZY HARBOR SEAFOOD, INC.


By:_____
Name:  John Norton
Title:  President



CASCO BAY LOBSTER CO., INC.


By:_____
Name:  John Norton
Title:  President



ART'S LOBSTER CO., INC.


By:_____
Name:  John Norton
Title:  President