UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.**<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-20160<br><br>(Jointly Administered) |

### ORDER GRANTING SALE MOTION RELATING TO CERTAIN ASSETS OF COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC. AND ART'S LOBSTER CO., INC.

Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc. and Art's Lobster Co., Inc., the above-captioned debtors and debtors in possession (the "**Debtors**") filed the Motion for Entry of: (I) Order (A) Approving Bid Procedures, (B) Scheduling Auction and Sale Hearing, (C) Approving Form and Manner of Notice Thereof, (D) Approving Procedures for Assumption and Assignment of Contracts and Leases; and (E) Granting Related Relief; and (II) Order (A) Approving Sale of Substantially All Assets Free and Clear; (B) Authorizing Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief [Dkt. No. ~~___~~ 112] (the "**Sale Motion**")[2] and the notice relating to the Sale Motion [Dkt. No. ~~___~~ 255] (the "**Sale Notice**"). At the hearing on the Sale Motion (the "**Sale Hearing**"), counsel for the Debtors and counsel for ~~_____(~~Aquashell USA, LLC, an Indiana limited liability company (together with any assignee, as permitted by the APA, referred to herein collectively as the

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363. The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

[2] Capitalized terms used, but not defined in this Sale Order, shall have the meanings ascribed to such terms in the ~~Sale Motion~~APA as defined herein.

"**Purchaser**") made offers of proof as to the fact that Purchaser is a good faith purchaser for value.  ~~All objections to such offers of proof, and~~No party objected to the Sale Transactions ~~(defined below), if any, were either resolved or overruled during the Sale Hearing~~.  This Court being fully advised and having determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief herein granted,

      **IT IS HEREBY FOUND AND DETERMINED THAT:**

      A.      This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue of the above-captioned jointly administered cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      B.      The statutory predicates for the relief sought in the Sale Motion are §§ 105(a), 363 and 365 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the applicable local rules of procedure of this Court (the "**Local Rules**").

      C.      Proper, timely, adequate and sufficient notice of: (i) the Sale Motion; (ii) the Sale Hearing; (iii) the transactions described in the Asset Purchase Agreement attached hereto as **Exhibit A** and incorporated herein by reference (the "**APA**" and the transactions arising out of the APA, the "**Sale Transactions**"); and (iv) the assumption and assignment of executory contracts and leases (the "**Assumed Contracts**") has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules.  Such notice was good, sufficient, and appropriate under the particular circumstances of these chapter 11 cases, and no other or further

notice of the Sale Motion, the Sale Hearing, the Sale Transactions, or matters relating to the Assumed Contracts is or shall be required.

D. As demonstrated by: (i) the testimony and other evidence proffered or adduced at the Sale Hearing; and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the assets being sold pursuant to the APA (the "~~**Purchased**~~ **Assets**") and conducted the sale process in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as well as in accordance with the bid procedures (the "**Bid Procedures**") set forth in this Court's Order granting the bid procedures motion filed by the Debtors.

E. No consents or approvals, other than those provided for in the APA, are required for the Debtors to consummate the Sale Transactions described in the APA.

F. The Debtors have demonstrated both: (i) good, sufficient, and sound business purposes and justifications for the Sale Transactions; and (ii) compelling circumstances for the Sale Transactions pursuant to § 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization/liquidation.

G. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities. All objections to the Sale Motion, if any, have either been resolved or overruled.

H. The APA was negotiated, proposed, and entered into by the Debtors and Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors, nor Purchaser, have engaged in any conduct that would cause or permit the APA to be avoided under § 363(n) of the Bankruptcy Code.

0

I. Purchaser is a good faith purchaser under § 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Purchaser will be acting in good faith within the meaning of § 363(m) in closing the Sale Transactions.

J. The consideration provided by Purchaser for the ~~Purchased~~ Assets pursuant to the APA: (i) is fair and reasonable; (ii) is the highest and best offer for the ~~Purchased~~ Assets received by the Debtors, as determined in accordance with the Bid Procedures; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and/or the laws of any state of the United States.

K. The Sale Transactions must be approved and consummated promptly in order to maximize the value of the Debtors' businesses and the ~~Purchased~~ Assets.

L. The transfer of the ~~Purchased~~ Assets to Purchaser will be a legal, valid, and effective transfer, and will vest Purchaser with all right, title, and interest of the Debtors in and to the ~~Purchased~~ Assets, free and clear of all liens, claims, encumbrances and interests <ins>including, without limitation, any</ins>: (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or Purchaser's interest in the ~~Purchased~~ Assets, or any similar rights; and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtors' businesses prior to the Closing Date.

M. Purchaser would not have entered into the APA and would not consummate the Sale Transactions, thus adversely affecting the Debtors and their creditors, if the Sale Transactions were not free and clear of all liens, claims, encumbrances and interests of any kind

or nature whatsoever, except those expressly assumed by Purchaser in the APA (the "**~~Expressly~~ Assumed ~~Obligations~~Liabilities**").

N. The Debtors may sell the ~~Purchased~~ Assets free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in § 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those non-debtor parties with interests in the ~~Purchased~~ Assets who did not object, whose objections were accommodated, or who withdrew their objections, to the Sale Transactions or the Sale Motion are deemed to have consented pursuant to §§ 363(f)(2) and 365 (if applicable). Those non-debtor parties with interests in the ~~Purchased~~ Assets who did object fall within one or more of the subparagraphs under §§ 363(f) and 365 and are adequately protected by having their interests, if any, attach to the cash proceeds of the Sale Transactions attributable to the ~~Purchased~~ Assets against or in which they claim an interest. Notwithstanding anything to the contrary in this order or the APA, the Assets, together with funds in the Debtors' accounts, are "**Collateral**" to the extent provided for by the terms of the Final Order: (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief (Dkt. No. 131, as extended by subsequent Orders entered at docket numbers 234 and 257, the "**Cash Collateral Order**") and the proceeds of the Collateral that are subject to (i) the first priority lien of KeyBank, N.A. ("**KeyBank**"); and (ii) the first priority lien of Camden National Bank shall be indefeasibly paid to KeyBank and Camden National Bank, respectively, at the closing of the sale until payment in full of KeyBank's and Camden National Bank's allowed secured claims, as set forth in Paragraph 7, below.

O. Except for the ~~Expressly~~ Assumed ~~Obligations~~Liabilities as defined in § 2.3 of the APA, the transfer of the ~~Purchased~~ Assets to Purchaser will not subject Purchaser to any liability

0

whatsoever with respect to the operation of Debtors' businesses or by reason of such transfer under the laws of the United States or any state of the United States, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of equitable law, antitrust or successor or transferee liability.

P. The only Assumed Contracts to be assigned to the Purchaser are the following real property leases: Sublease Agreement between Portland Fish Exchange and Cozy Harbor Seafood, Inc. dated September 1, 2019. The Debtors have demonstrated that it is an exercise of their sound business judgment to assign the Assumed Contracts to Purchaser in connection with the consummation of the Sale Transactions, and the assignment of the Assumed Contracts, if any, is in the best interests of the Debtors and their creditors. The Assumed Contracts being assigned to Purchaser are an integral part of the ~~Purchased~~ Assets being purchased by Purchaser and, accordingly, such assignment of the Assumed Contracts is reasonable, enhances the value of Debtors' estates, and does not constitute unfair discrimination.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1. The Sale Motion is granted, as further described herein.

2. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, accommodated, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

### Compliance with Bid Procedures

3. The Debtors have complied with the Bid Procedures and conducted the sale process in accordance therewith.

### Approval of the APA

4. The APA and all of the terms and conditions thereof are hereby approved.

5. Pursuant to § 363(b) of the Bankruptcy Code, the Debtors are authorized to consummate the Sale Transactions in accordance with the terms and conditions of the APA immediately upon entry of this Sale Order.

6. The Debtors are authorized to execute and deliver, and are empowered to perform under, consummate and implement the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser, the ~~Purchased~~ Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

### Transfer of ~~Purchased~~ Assets to Purchaser

7. Pursuant to §§ 105(a) and 363(f) of the Bankruptcy Code, the ~~Purchased~~ Assets shall be transferred to Purchaser and, upon consummation of the APA (the "**Closing**" and the date of the Closing, the "**Closing Date**"), shall be free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever, other than ~~the Expressly~~any Assumed ~~Obligations~~Liabilities, with all such interests of any kind or nature whatsoever to attach to the proceeds of the Sale Transactions in the order of their priority, with the same validity, force and effect which they now have against the ~~Purchased Assets.~~Assets.  The Debtors are hereby authorized and directed to indefeasibly pay from the proceeds of the sale and from funds in the Debtors' accounts the amounts set forth below:

    (a)    **Claim of KeyBank**:

        (i)    Principal: $4,916,066.00

    (ii) Interest (through Nov. 8, 2025): $122,484.00

    (iii) Unused exposure on Standby Letter of Credit: $35,395.00[3]

    (iv) Legal fees (Verrill Dana, LLP):[4] $101,200.85.00

    (v) Professional Fees (Scouler, LLC) (estimate):[5] $125,207.50.00

    TOTAL (subject to adjustment for fees): $5,300,353.35

  (b) **Claim of Camden National Bank**:

    (i) Principal: $331,311.14

    (ii) Interest: $5,114.62 (through November 7, 2025)

    (iii) Fees: $10.00

    (iv) Legal Fees and Costs: $21,031.60

    TOTAL: $357,467.36

8. Except as expressly permitted or otherwise specifically provided by the APA or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity

---

[3] KeyBank issued, and the Debtors indemnified KeyBank on, Standby Letter of Credit # S328340 i/f/o the Portland Fish Exchange. This item will be eliminated from the payoff schedule if the Debtors cause the Portland Fish Exchange to cancel the Letter of Credit before it is drawn. Alternatively, the Debtors may establish a cash collateral account to secure their obligation to KeyBank if Portland Fish Exchange draws on the letter of credit before it expires on October 14, 2026.

[4] Verrill Dana's actual fees and expenses through October 29, 2025, were $101,200.85 and will be adjusted to reflect actual fees through Closing (which amount shall be paid at Closing), and will be further amended to reflect fees incurred, if any, post-Closing, which additional fees the Debtor is also authorized and directed to pay, provided, however that the Debtor shall retain the right to file an objection to the allowance of the portion of KeyBank's claim that is attributable to such fee, and further provided that if the Debtor fails to file an objection within 14 days of receipt by Debtors' counsel of the time detail in support of such claim, then such claim shall be deemed allowed.

[5] Actual fees and expenses through October 28, 2025, were $125,207.50 and fees for Scouler, LLC will be adjusted to reflect actual fees through closing, subject to review for reasonableness. To the extent any party in interest has an objection to the portion of KeyBank's claim attributable to the fees or expenses asserted by Scouler, LLC, the parties shall negotiate in good faith to a resolution. If a resolution is not reached before November 6, 2025, then parties-in-interest shall have until November 14, 2025 to file an objection to that portion of such fees or expenses that they assert should not be allowed as part of KeyBank's allowed secured claim. If no objection is filed, then Scouler's fees shall be deemed allowed, and shall be paid on or before November 17, 2025. If an objection is filed, then the Debtors shall promptly pay to Scouler, LLC the undisputed portion of its fees and expenses. Actual fees and expenses through September 30, 2025, were $113,213.00 and fees for Scouler, LLC will be adjusted to reflect actual fees through closing, subject to review for reasonableness.

0

security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtors or the ~~Purchased~~ Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the ~~Purchased~~ Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the ~~Purchased~~ Assets to Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting claims of any kind or nature against Purchaser, its successors or assigns.

9. The transfer of the ~~Purchased~~ Assets to Purchaser pursuant to the APA constitutes a legal, valid, and effective transfer of the ~~Purchased~~ Assets, and shall vest Purchaser with all right, title, and interest of the Debtors in and to the ~~Purchased~~ Assets, free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever.

## Assumption and Assignment of Assumed Contracts

10. The assumption by the Debtors and the assignment to Purchaser of the Assumed Contracts is hereby authorized.

11. The Debtors are hereby authorized and directed in accordance with §§ 105(a) and 365 of the Bankruptcy Code (as applicable) to execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Purchaser, and to pay any cure costs relating to such Assumed Contracts.

12. The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, Purchaser, in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in §§ 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or

transfer and, pursuant to § 365(k) (as applicable), the Debtors shall be relieved from any further liability with respect to any Assumed Contract after such assignment to Purchaser.

13. Each non-debtor party to any Assumed Contract hereby is forever barred, estopped, and permanently enjoined from asserting any claim: (a) against any of the Debtors or Purchaser for any default existing as of the Closing Date, whether declared or undeclared or known or unknown; or (b) against Purchaser, any counterclaim, defense, setoff or any other claim asserted or assertable against any of the Debtors.

14. The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of Purchaser's rights to enforce every term and condition of any Assumed Contract.

## Additional Provisions

15. On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its interest in any of the ~~Purchased~~ Assets, if any, as such interests may have been recorded or may otherwise exist.

16. This Sale Order shall be: (a) effective as a determination that, on the Closing Date, all interests <u>and title</u> of any kind or nature whatsoever ~~existing with respect to~~<u>of</u> the Debtors ~~or~~<u>in</u> the ~~Purchased~~ Assets prior to the Closing, have been unconditionally released~~, discharged and terminated,~~ <u>and conveyed to Purchaser</u> and that the conveyances described herein have been effected; and (b) binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may

0

be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the ~~Purchased~~ Assets.

17. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transactions. To the fullest extent permitted by applicable law, the transfers made pursuant to the APA and this Order shall not be taxed under, and shall be exempt from, any law imposing a stamp, sale, transfer, recording or other similar tax imposed by any governmental entity.

18. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing interests with respect to the Debtors or the ~~Purchased~~ Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to ~~Purchased~~ Assets, then the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the ~~Purchased~~ Assets; <u>provided</u>, <u>however</u>, that regardless of whether such persons or entities or the Debtors execute and file any such releases, Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all interests in the ~~Purchased~~ Assets of any kind or nature whatsoever.

11

0

19. All entities that are presently, or on the Closing Date may be, in possession of some or all of the ~~Purchased~~ Assets are hereby directed to surrender possession of the ~~Purchased~~ Assets to Purchaser on the Closing Date.

20. Except for the ~~Expressly~~ Assumed ~~Obligations~~Liabilities, Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or relating to the ~~Purchased~~ Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the APA, Purchaser shall not be liable for any cure costs or claims against the Debtors or any of their predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, whether known or unknown, as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' businesses prior to the Closing Date.

21. Under no circumstances shall Purchaser be deemed a successor of or to any of the Debtors ~~for any interest against or in the Debtors or the Purchased Assets of any kind or nature whatsoever~~. Except for the ~~Expressly~~ Assumed ~~Obligations~~Liabilities, the sale, transfer, assignment and delivery of the ~~Purchased~~ Assets shall not be subject to any liens, claims, encumbrances or interests, ~~and interests of any kind or nature whatsoever~~all of which shall remain with, and continue to be obligations of, the Debtors.  Except for persons holding ~~Expressly~~ Assumed ~~Obligations~~Liabilities, all persons holding liens, claims, encumbrances or interests against or in the Debtors or the ~~Purchased~~ Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting,

0

prosecuting, or otherwise pursuing such liens, claims, encumbrances or interests of any kind or nature whatsoever against Purchaser, its property, its successors and assigns, or the ~~Purchased Assets with respect to any interest of any kind or nature whatsoever such person or entity had, has, or may have against the Debtors, their estates, officers, directors, shareholders, or the Purchased~~ Assets.

22. This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the ~~Purchased~~ Assets to Purchaser; (b) resolve any disputes arising under or related to the APA, except as otherwise provided therein; and (c) interpret, implement, and enforce the provisions of this Sale Order.

23. Nothing contained in any plan of liquidation confirmed in any of these chapter 11 cases or any order of this Court confirming any such plans shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

24. The transactions contemplated by the APA are undertaken by Purchaser in good faith, as that term is used in § 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transactions shall not affect the validity of the Sale Transactions, unless such authorization is duly stayed pending such appeal. Purchaser is a purchaser in good faith of the ~~Purchased~~ Assets and is entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code.

25. The terms and provisions of the APA and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, Purchaser, and its respective affiliates, successors and assigns, and shall be binding in all

respects upon any affected third-parties including, but not limited to, all persons asserting interests in the ~~Purchased~~ Assets, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

26. The failure specifically to include any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

27. The APA and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court; <u>provided</u> that any such modification, amendment or supplement does not have a materially adverse effect on any of the Debtors' estates.

28. As provided by Bankruptcy Rule 7062, and notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be automatically stayed, but shall be effective and enforceable immediately upon signature of this Sale Order. Time is of the essence in closing the Sale Transactions and the Debtors and Purchaser intend to close as soon as possible. Therefore, any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay or risk its appeal being foreclosed as moot.

29. Any appeal seeking to enjoin or stay consummation of the Sale Transactions ("**<u>Appeal</u>**") shall be subject to the appellant depositing or posting a bond in an amount equal to the then aggregate Purchase Price, and applicable damages, pending the outcome of the Appeal.

30. Notwithstanding anything in the Sale Motion or this Sale Order to the contrary, except as may otherwise be set forth in a separate Order of this Court, this Sale Order shall be

0

without prejudice to the rights of the Debtors to challenge the claims, liens, mortgages and/or security interests asserted against the Debtors' property by their creditors.

  31. The Debtors shall not disburse any proceeds of the Sale Transactions until further order of the Court, entered after notice to the parties.

Dated:                       _____
                              Michael A. Fagone
                              United States Bankruptcy Judge
                              District of Maine

# EXHIBIT A

**Asset Purchase Agreement**

*[to be added]*

| | |
|---|---|
| **Summary report:** <br> **Litera Compare for Word 11.11.0.158 Document comparison done on 10/30/2025 1:28:22 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://work.bssn.com/worksite_active/21004107/1 - Cozy Harbor - Proposed Sale Order.docx | |
| **Modified DMS:** iw://work.bssn.com/worksite_active/21004101/1 - Cozy Sale Order As Filed Clean - 10-30-2025 100 PM.docx | |
| **Changes:** | |
| Add | 66 |
| Delete | 63 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 129 |