# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re: | Chapter 11 |
| **COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.,** | **Case No. 25-20160** |
| | **(Jointly Administered)** |
| Debtors.[1] | |

### JOINT DISCLOSURE STATEMENT WITH RESPECT TO THE DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION DATED JANUARY 16, 2026

Submitted By:    */s/ D. Sam Anderson*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
**BERNSTEIN SHUR**
100 Middle Street
Portland, Maine 04101
(207) 774-1200
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

Counsel for the above-captioned debtors and
debtors in possession

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363. The principal place of business for the debtors was, prior to the sale of substantially all of the Debtors' assets, 75 St. John Street, Portland, ME 04102.

# TABLE OF CONTENTS

DISCLAIMER…………………………………………………………………………………1

ARTICLE I: BACKGROUND ON THE DEBTORS……………………….…………………2

ARTICLE II: KEY EVENTS IN THE CHAPTER 11 CASES……………..…………………..3

ARTICLE III: SUMMARY OF THE PLAN AND CONFIRMATION REQUIREMENTS…..…6

ARTICLE IV: CERTAIN FEDERAL TAX CONSEQUENCES………………………………..18

ARTICLE V: RISK FACTORS IN CONNECTION WITH THE PLAN…………………....…19

ARTICLE VI: RECOMMENDATION AND CONCLUSION…………………………………19

## **TABLE OF EXHIBITS**

EXHIBIT A: LIQUIDATION ANALYSIS, FEASIBILITY ANALYSIS, AND
PREPETITION CLAIMS SCHEDULE……………………………………………………………

## DISCLAIMER

THIS DISCLOSURE STATEMENT, THE PLAN, AND THE ACCOMPANYING BALLOT AND RELATED MATERIALS ARE BEING PROVIDED BY COZY HARBOR SEAFOOD, INC. ("COZY HARBOR"), CASCO BAY LOBSTER CO., INC. ("CASCO BAY"), AND ART'S LOBSTER CO., INC. ("ART'S LOBSTER" AND, TOGETHER WITH COZY HARBOR AND CASCO BAY, THE "DEBTORS") TO KNOWN HOLDERS[2] OF CLAIMS AND INTERESTS PURSUANT TO § 1125 OF THE BANKRUPTCY CODE.

EACH HOLDER OF A CLAIM OR INTEREST ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING.  NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE, EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND § 1125 OF THE BANKRUPTCY CODE.  NO HOLDER OF A CLAIM OR INTEREST SHOULD RELY ON ANY INFORMATION RELATING TO THE DEBTORS, THEIR ASSETS, OR THE PLAN, OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN.  ALTHOUGH THE DEBTORS HAVE MADE EVERY EFFORT TO ENSURE THAT THIS SUMMARY PROVIDES ADEQUATE INFORMATION WITH RESPECT TO THE PLAN, IT DOES NOT PURPORT TO BE COMPLETE AND IS QUALIFIED TO THE EXTENT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN. IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT, THEN THE PLAN SHALL CONTROL.  ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST SHOULD REVIEW THE PLAN IN ITS ENTIRETY.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH § 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE BANKRUPTCY RULES, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.  THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS.

HOLDERS OF CLAIMS OR INTERESTS SHOULD BE AWARE THAT THE PLAN CONTAINS TEMPORARY STAYS AND LIMITED RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

---

[2] Capitalized terms, not otherwise specifically defined in this Disclosure Statement, shall have the meaning attributed to such terms in the Plan.

**ALL OF THE PROJECTED RECOVERIES TO CREDITORS ARE BASED UPON THE ANALYSIS PERFORMED BY THE DEBTORS AND THEIR PROFESSIONALS. ALTHOUGH THE DEBTORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN AND IN THE EXHIBITS ATTACHED HERETO AND TO THE PLAN, THE DEBTORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE INFORMATION.**

**THE DEBTORS RECOMMEND THAT CREDITORS SUPPORT AND VOTE TO ACCEPT THE PLAN. IT IS THE OPINION OF THE DEBTORS THAT THE TREATMENT OF CREDITORS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES. ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.**

**ARTICLE I:**
**BACKGROUND ON THE DEBTORS**

On July 1, 2025, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maine. The Chapter 11 Cases are being jointly administered, for procedural purposes only, in Case No. 25-20160.

The Bankruptcy Court will hold hearings on: (i) the adequacy of this Disclosure Statement; and (ii) confirmation of the Plan. The Debtors will request that the Bankruptcy Court approve this Disclosure Statement as containing "adequate information," in accordance with § 1125(b) of the Bankruptcy Code, to enable a hypothetical, reasonable investor typical of claimholders entitled to vote on a Plan to make an informed judgment about whether to accept or reject a Plan.

**1.1    General Overview of the Debtors**

Each of the Debtors is a corporation organized and existing under the laws of the State of Maine. The principal place of business for the Debtors, prior to the sale of certain assets of the Debtors, was 75 St. John Street, Portland, Maine 04102. The Debtors do not own any real estate, but rather, prior to the Sale, they leased certain real estate from various non-debtor affiliates and other parties.

Prior to the Sale to Harlan Aquashell Seafood US Inc. (as assignee of Aquashell USA, LLC), the entity that acquired the Purchased Assets pursuant to the Aquashell APA, Cozy Harbor, in coordination with Art's Lobster and Casco Bay, bought, processed, and distributed premium-quality lobster tails, lobster meat, and live lobster (among other seafood) throughout the United States, Canada, Asia, and Europe. Cozy Harbor worked directly with Canadian and Maine seafood dealers, while Casco Bay Lobster and Art's Lobster worked directly with fisherman to purchase the freshest seafood products for the Debtors' customers, including purchasing daily catches from Cundy's Harbor, Boothbay Harbor, Casco Bay, and Tenants Harbor.

The Debtors' businesses were impacted heavily by the price of seafood that it purchased for processing.  Premised on price instability arising first out of the Covid pandemic and then out of uncertainty due to tariff threats, the Debtors had trouble operating within workable margins.  In the months and years prior to the Petition Date, the Debtors diligently explored a range of options to address their ongoing challenges related to maintaining sufficient cash flow to satisfy their debt and operational obligations.  Ultimately, after exploring an out-of-court sale, recapitalization, and other options, the Debtors, together with their advisors, determined to commence the Chapter 11 Cases to pursue a going-concern sale process.

### 1.2     Summary of the Debtors' Prepetition Debt Structure

Prior to the Petition Date, the Debtors engaged in transactions with parties that resulted in the Debtors incurring certain debt obligations and granting Liens on certain of the Debtors' assets to secure those obligations.  Certain of those obligations are summarized below:

**KeyBank**.  The Debtors (as borrowers) were parties to that certain Loan Agreement with Keybank National Association ("**KeyBank**") (as lender) dated September 29, 2022, as was amended from time to time prior to the Petition Date, and that certain Revolving Promissory Note (Line of Credit) of the same date in the maximum original principal amount of **$8,000,000.00**.  The Debtors (as grantors) were also parties to that certain Security Agreement dated September 29, 2022, with KeyBank, pursuant to which the Debtors granted certain Liens and other rights to KeyBank to secure the Debtors' obligations, including Liens on accounts and inventory.  As of the Petition Date, KeyBank was owed approximately **$4.9 million** by the Debtors.

**CNB**.  Cozy Harbor (as borrower) is party to that certain loan transaction with Camden National Bank ("**CNB**"), pursuant to which CNB held a security interest in certain identified equipment owned by Cozy Harbor, including various conveyors, tables, scales, automation systems, tooling, blades, and racks. As of the Petition Date, Cozy Harbor owed CNB approximately **$323,000.00**.

**503(b)(9) Claims**.  Section 503(b)(9) of the Bankruptcy Code provides for allowance of administrative expense claim treatment based on "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  The estimated 503(b)(9) Claims are reflected on **Exhibit A** to this Disclosure Statement.

**General Unsecured Claims**.  Based on the Debtors' schedules and timely filed proofs of Claim, the Debtors estimate general unsecured Claims as reflected on **Exhibit A** to this Disclosure Statement, which Claims largely constitute prepetition trade debt.

## ARTICLE II:
## KEY EVENTS IN THE CHAPTER 11 CASES

The following is a brief summary of certain key events and issues that arose during the Chapter 11 Cases:

### 2.1     The Creditors' Committee

3

On August 18, 2025, the U.S. Trustee appointed the Creditors' Committee in relation to all of the Chapter 11 Cases. The members of the Creditors' Committee are: Louisbourg Seafoods and Northern Ocean Sea Products, LLC.

### 2.2    Employment of Professionals

During the course of the Chapter 11 Cases, the Bankruptcy Court approved the employment of the following Professionals:

- Bernstein, Shur, Sawyer & Nelson, P.A., as chapter 11 counsel for the Debtors;

- Opus Consulting Partners, as financial advisor and contracted controller for the Debtors;

- Corporate Finance Associates New England LLC and Corporate Finance Securities, Inc., as business broker and transaction advisor to the Debtors;

- Purdy Powers & Company, as accountant to the Debtors; and

- Dentons Bingham Greenebaum, LLP, as chapter 11 counsel for the Creditors' Committee.

### 2.3    Use of Cash Collateral

Prior to the Sale, the Debtors relied on Cash, collections of Accounts Receivable, and any other payments that convert to Cash for their operations and to service their debt obligations. Together, these types of property are referred to as "cash collateral" within the meaning of § 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

Early in the Chapter 11 Cases, the Debtors and KeyBank agreed to general terms for the use of Cash Collateral on an interim basis. [Dkt. No. 03].   On August 7, 2025, the Bankruptcy Court authorized the Debtors to use Cash Collateral on a final basis. [Dkt. No. 131] (the "**Final Cash Collateral Order**"). The Bankruptcy Court extended the relief in the Final Cash Collateral Order (with various modifications) through several subsequent orders entered prior to the closing of the Sale. [Dkt. Nos. 234, 256, 277, 282, 294].

### 2.4    The Sales of Substantially All of the Assets; Remaining Assets

After exploring various options, the Debtors determined, in their business judgment, to pursue assets sales in the Chapter 11 Cases. On August 21, 2025, the Bankruptcy Court entered its order [Dkt. No. 164] establishing bidding procedures for that sale process. Following extensive marketing and various deadline extensions, on October 20, 2025, the Debtors entered into the Aquashell APA with Aquashell USA, LLC (which subsequently assigned its rights to Harlan Aquashell Seafood US Inc., as Buyer). On October 31, 2025, the Bankruptcy Court enter the Sale Order approving the Sale to Buyer, and the Sale closed on November 26, 2025. At the closing,

4

the Allowed Secured Claims of KeyBank and CNB were paid in full in accordance with the Sale Order.

Following the closing, the Debtors' primary Remaining Assets are Cash and Causes of Action. Under the Plan, the Remaining Assets will be administrated by the Liquidating Trustee through the Liquidating Trustee, for Distribution in accordance with the Plan.

### 2.5    Establishment of Bar Dates (Other Than Bar Dates Established in the Plan)

Holders of prepetition Claims, other than Governmental Units, were required to file a separate, completed, and executed proof of Claim form on account of any such Claim, on or before November 10, 2025 (the "**General Bar Date**"). The deadline for Governmental Units to assert a Claim was December 28, 2025.

### 2.6    Potential Avoidance Causes of Action

In the ninety (90) days prior to the Petition Date, the Debtors (primarily through Cozy Harbor) made disbursements to trade creditors and other parties, as identified in Schedule 3.1 to the Statement of Financial Affairs in the approximate amount of **$6,000,000.00**. [Dkt. Nos. 87, 88, 89].

Under the Plan, all Causes of Action, including avoidance actions arising under § 547 of the Bankruptcy Code based on transfers in the ninety (90) days before the Petition Date, are preserved and vested in the Liquidating Trust upon the Effective Date. Under § 502(d) of the Bankruptcy Code, the Bankruptcy Court must disallow any Claim of any Entity that is a transferee of an avoidance Cause of Action. **All Holders of Claims are hereby on notice that their Claim, if any, may be Disallowed or objected to on the basis of § 502(d).**

The Debtors have started to analyze possible § 547 avoidance actions. As part of that analysis, the Debtors first eliminated potential Causes of Action against parties that received, in aggregate, less than **$50,000.00** in the 90-day period on the basis that such Causes of Action likely are not economical for the Debtors to pursue in light of estimated fees and costs. Next, the Debtors considered the historic business relationship with each recipient and analyzed payment and invoicing data to identify certain potential defenses under § 547(c) of the Bankruptcy Code. The Debtors have not yet determined the exact amount that the Debtors are likely to recover in relation to these Causes of Action, but estimate such amount to be **$100,000** in **Exhibit A**.

### 2.7    Liquidating Trustee's Counsel and Advisors

Bernstein Shur Sawyer & Nelson, P.A. shall serve as counsel to the Liquidating Trustee, provided that nothing herein shall prevent the Liquidating Trustee from retaining alternative counsel and terminating Bernstein Shur Sawyer & Nelson, P.A.

## ARTICLE III:
## SUMMARY OF THE PLAN AND CONFIRMATION REQUIREMENTS

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATION, TREATMENT, AND IMPLEMENTATION OF THE PLAN.  IT IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.  ALL PARTIES ARE ADVISED TO READ THE PLAN IN ITS ENTIRETY.**

### 3.1    Introduction; General Structure of Plan

The Plan, if confirmed, will establish the Liquidating Trust, by and through which the Liquidating Trustee will marshal the Remaining Assets, review and object to Claims, analyze and litigate Causes of Action, and make Distributions to Holders of Allowed Claims, all as set forth in more detail in the Plan.

### 3.2    Confirmation Hearing; Voting Requirements; Objection Deadline

The Confirmation Hearing has been scheduled for _____, 2026, at ____.m. at the Bankruptcy Court, Smith Federal Building, 202 Harlow Street, Bangor, Maine 04401.  The Confirmation Hearing may be adjourned from time to time without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

Any objection to Confirmation of a Plan must be: (i) made in writing; and (ii) Filed with the Bankruptcy Court and served on the applicable Debtor(s) and the U.S. Trustee so as to be actually received on or before _____, 2026.  **UNLESS AN OBJECTION IS TIMELY FILED AND SERVED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

To be counted for voting purposes, ballots for acceptance or rejection of the Plan **MUST BE SERVED ON THE DEBTORS' COUNSEL** listed below, via mail or email, by no later than _____, 2026 (the "**Voting Deadline**"):

|          |                                       |
|----------|---------------------------------------|
| By Mail: | Bernstein Shur                        |
|          | Attn: Sam Anderson, Esq.              |
|          | 100 Middle Street, P.O. Box 9729      |
|          | Portland, Maine 04101                 |
|          |                                       |
| By Email: | sanderson@bernsteinshur.com          |

**TO COUNT, ALL BALLOTS MUST BE SIGNED BY AN AUTHORIZED PARTY AND FULLY COMPLETED.   INCOMPLETE BALLOTS OR BALLOTS NOT ACTUALLY RECEIVED BY THE VOTING DEADLINE MAY NOT BE COUNTED. BALLOTS MAILED TO THE CLERK OF THE BANKRUPTCY COURT SHALL <u>NOT</u> BE COUNTED.**

**EVEN IF YOU DO NOT VOTE TO ACCEPT A PLAN, YOU MAY STILL BE BOUND BY THE PLAN IF IT IS ACCEPTED BY THE REQUISITE HOLDERS OF CLAIMS AND CONFIRMED BY THE BANKRUPTCY COURT.**

### 3.3    Parties in Interest Entitled to Vote

Only Holders of Allowed Claims in Classes of Claims that are Impaired are entitled to vote to accept or reject the Plan.  Pursuant to the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in § 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan.  Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan.

In addition, any Claim to which an objection has been Filed is not entitled to vote unless the Bankruptcy Court, upon timely application of the Holder of the Claim, temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan.  **Any such application to temporarily allow a Claim for voting purposes must be heard and determined by the Bankruptcy Court on or before the Voting Deadline.**  A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the vote was not solicited or made in good faith or in accordance with the provisions of the Bankruptcy Code.

### 3.4    Requirements for Confirmation

The Bankruptcy Court will confirm a plan only if it meets all of the applicable requirements of § 1129 of the Bankruptcy Code.  Among other requirements, a plan: (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class or Classes, a plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class or Classes; and (b) must be feasible.  The Bankruptcy Court must also find, among other things, that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) a plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) a plan has been proposed in good faith.

### 3.5    Confirmation without Necessary Acceptances; Cramdown

A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in § 1129(b) of the Bankruptcy Code.  Section 1129(b) requires, as noted above, that a court find that a plan "does not discriminate unfairly," and is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  A plan does not "discriminate unfairly" if: (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class; and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests.  Section 1129(b) of the Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable," depending on the status of the claim or interest.

The Debtors believe that the Plan is fair and equitable, and does not discriminate unfairly, against any Holder of a Claim or Interest.

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTORS MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF § 1129(b) OF THE BANKRUPTCY CODE.**

### 3.6    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors (unless such liquidation or reorganization is proposed in the plan).

The feasibility analysis for the Debtors is included at **Exhibit A** to this Disclosure Statement. Inasmuch as considerable assets have been liquidated in the Chapter 11 Cases and the Plan provides for the Distribution of the Remaining Assets to Holders of Allowed Claims in accordance with the Plan, for purposes of this test, the Debtors have analyzed the ability of the Liquidating Trust to meet its obligations under the Plan. Based on the Debtors' analysis, which includes, without limitation, consideration of the Cash, Causes of Action, Claims against the Estates, and anticipated future costs, the Liquidating Trustee will have sufficient assets to accomplish his or her tasks under the Plan. Specifically, the Debtors project that the Liquidating Trustee will have sufficient Cash to pay Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and the Liquidating Trust Expenses, each to the extent required by the Plan. Further, although not required to establish feasibility for purposes of confirmation, the Liquidating Trust will have available Cash, after the foregoing obligations are satisfied, to fund, Pro Rata, Distributions of Cash to Allowed General Unsecured Claims of at least Art's Lobster (Class Three) and Casco Bay Lobster (Class Four). The Plan, therefore, is feasible.

### 3.7    Best Interests Test and Liquidation Analysis

Even if a plan is accepted by each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in § 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. The projected results of the liquidation under the Plan are reflected in **Exhibit A** to this Disclosure Statement. The Debtors believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating in chapter 7, including statutory fees and the expenses of the chapter 7 trustee and his or her professionals, which include attorneys and accountants (estimated to be in

excess of $150,000.00 based on the experience of counsel to the Debtors, including significant costs for the trustee to become familiar with the Claims, Causes of Action, and many other issues in these Chapter 11 Cases, and to complete the Claims objection process, and to facilitate the liquidation in Chapter 7), which such expenses are avoided if the Plan is confirmed.  Further, although a chapter 7 trustee may be entitled to bring Causes of Action to recover Cash for the chapter 7 estates, other than avoidance Causes of Action, the Debtors, based on their investigations and information presently available to them, do not believe a chapter 7 trustee is likely to recover material additional Cash through Causes of Action, net of fees and expenses incurred to bring such Causes of Action, provided, however, that such Causes of Action are reserved through the Plan for the Liquidating Trustee to analyze and pursue as appropriate, making this factor neutral at best.

Accordingly, the Debtors submit that Holders of Allowed Claims would receive less than anticipated under the Plan if the Chapter 11 Cases were converted to chapter 7 cases, and, therefore, to the extent an Impaired class does not accept the Plan, the classification and treatment of such Claims and Interests in the Plan comply with § 1129(a)(7) of the Bankruptcy Code.

### 3.8    Acceptance or Rejection of the Plan

In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan.  At least one voting class, excluding the votes of Insiders, must vote to accept the Plan.

### 3.9    Other Requirements of § 1129 of the Bankruptcy Code

The Debtors submit that the Plan meets all of the other requirements of § 1129 of the Bankruptcy Code, including that the Plan was proposed in good faith.

### 3.10    Classification and Treatment of Claims and Interests Under the Plan

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.   In accordance with § 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims that, pursuant to § 1123(a)(1) of the Bankruptcy Code, need not be and have not been classified).  Under § 1122 of the Bankruptcy Code, the Plan also must classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.  The Debtors believe that the Plan's classifications place substantially similar Claims in the same Class and, thus, meets the requirements of § 1122 of the Bankruptcy Code.   A summary of the classifications and treatments of Claims in the Plan is discussed next.

### a.    Unclassified Claims

Under the Plan, certain types of Claims are not placed into Classes.  Instead, such Claims are Unclassified Claims.  Unclassified Claims are Unimpaired, and Holders of unclassified Claims do not vote on the Plan because they are automatically entitled to the specific treatment provided for unclassified Claims in the Bankruptcy Code or the Claim treatment has been agreed upon by

9

each applicable Debtor and a particular claimant.  The following are Unclassified Claims under the Plan:

(a) **Administrative Claims**.  Each Holder of an Allowed Administrative Claim, including an Allowed Professional Fee Claim, shall receive, promptly after the date on which such Administrative Claim becomes Allowed in accordance with the Plan, in full and final satisfaction of such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.  Holders of Disallowed Administrative Claims shall not receive any Distribution under the Plan.

(i) **Final Administrative Claim Bar Date**.  Holders of Administrative Claims accruing from the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtors requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date.  **Any such Administrative Claim (other than Professional Fee Claims) not Filed by the Final Administrative Claim Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Bankruptcy Court or the Debtors; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.**

(ii) **Professional Fee Bar Date**.  Professional Fee Claims are Administrative Claims, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date.  **If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.**

(iii) **Section 503(b)(9) Claims**.  The deadline for Filing requests for payment of 503(b)(9) Claims was the 503(b)(9) Bar Date, and the 503(b)(9) Bar Date shall not be modified by the Plan or the Confirmation Order.

(b) **U.S. Trustee Fees**.  All U.S. Trustee Fees due and payable prior to or after the Effective Date shall be paid by the Debtors when due in the ordinary course under applicable law.  After the Effective Date, the Debtors and the Liquidating Trustee shall be jointly and severally liable to pay any and all U.S. Trustee Fees when due and payable.

(c) **Disputed Unclassified Claims**.  Except as otherwise set forth in Section 4.01 of the Plan, if an Unclassified Claim is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Section 8.02 of the Plan.

**b.**     **Summary of Classified Claims and Interests**

The Bankruptcy Code requires certain types of Claims and Interests to be placed into Classes. A description of the classified Claims in the Plan is as follows:

(a)      **Class One**: Class One shall contain any Secured or Priority Tax Claims against any of the Debtors.

(b)      **Class Two**: Class Two shall contain any Priority Unsecured Non-Tax Claims against any of the Debtors.

(c)      **Class Three**: Class Three shall contain General Unsecured Claims against only Art's Lobster, which shall include Rejection Damages Claims.

(d)      **Class Four**: Class Four shall contain General Unsecured Claims against only Casco Bay Lobster, which shall include Rejection Damages Claims.

(e)      **Class Five**: shall contain General Unsecured Claims against only Cozy Harbor Seafood, which shall include Rejection Damages Claims.

(f)      **Class Six**: Class Six shall contain Interests in any of the Debtors.

The following chart summarizes the categories and treatment of Claims and Interests under the Plan, as well as whether Holders of Claims and Interests are entitled to vote on the Plan, and the projected recovery for each under the Plan. **All parties are advised to read the Plan in its entirety and not to rely exclusively on this summary. This summary is qualified in its entirety by the terms of the Plan.**

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (yes/no) | Projected Recovery |
|---|---|---|---|
| Unclassified Claims against any of the Debtors (including Administrative Claims (including Professional Fee Claims and 503(b)(9) Claims) and U.S. Trustee Fees. | Unimpaired | No | 100% |
| Class One: Secured or Priority Tax Claims | Unimpaired | No | 100% |
| Class Two: Priority Unsecured Non-Tax Claims against any of the Debtors | Unimpaired | No | 100% |
| Class Three: General Unsecured Claims against Art's Lobster | Impaired | Yes | 90% |
| Class Four: General Unsecured Claims against Casco Bay Lobster | Impaired | Yes | 90% |
| Class Five: General Unsecured Claims against Cozy Harbor Seafood | Impaired | Yes | Variable |
| Class Six: Interests in the Debtors | Impaired (deemed to reject Plan) | No | 0% |

|  |  |  |  |
|--|--|--|--|

**Exhibit A** to the Disclosure Statement contains the known prepetition claims against each of the separate Debtors based on: (i) the respective Schedules of each of the Debtors; and (ii) the proofs of Claims filed in the Chapter 11 Cases.  Although some Entities billed for services and goods directly to either Art's Lobster or Casco Bay Lobster, many Entities invoiced or contracted exclusively with Cozy Harbor, and the primary operating bank accounts for paying operational expenses were maintained by Cozy Harbor.  Accordingly, the Prepetition Claims Schedule, to the extent possible, allocates Claims by and among the Debtors based on which of the Debtors directly received or benefited from the services or goods giving rise to each Claim.

**Pursuant to the Plan, the Confirmation Order shall constitute an order of the Bankruptcy Court allocating, on a final basis, each Claim on the Prepetition Claims Schedule to the specific Debtor identified on the Prepetition Claims Schedule.**

c.    **Treatment of Classified Claims and Interests under the Plan**

The Plan proposes to treat Classified Claims and Interests as follows:

(a)    **Treatment of Secured or Priority Tax Claims (Class One)**:  Each Holder of an Allowed Secured and/or Priority Tax Claim against any of the Debtors shall receive, promptly after the date on which such Secured and/or Priority Tax Claim becomes Allowed in accordance with the Plan, on account of, and in exchange for, such Allowed Secured and/or Priority Tax Claim, either: (i) Cash equal to the unpaid amount of such Allowed Secured and/or Priority Tax Claim; or (ii) such other treatment as the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Secured and/or Priority Tax Claim shall have agreed, **provided**, **however**, any payments relating to any Secured and/or Priority Tax Claims shall only be made after payment in full of all Allowed Unclassified Claims.  The Class One Claims are unimpaired under the Plan and, therefore, the Holders of Claims in Class One are not entitled to vote to accept or reject the Plan.

(b)    **Treatment of Priority Non-Tax Claims (Class Two)**.  Each Holder of an Allowed Priority Non-Tax Claim against any of the Debtors shall receive, promptly after the date on which such Priority Non-Tax Claim becomes Allowed in accordance with the Plan, on account of, and in exchange for, such Allowed Priority Non-Tax Claim, either: (i) Cash equal to the unpaid amount of such Allowed Priority Unsecured Non-Tax Claim; or (ii) such other treatment as the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Unsecured Non-Tax Claim shall have agreed, **provided**, **however**, any payments relating to Allowed Priority Non-Tax Claims shall only be made after payment in full of all Allowed Unclassified Claims.  The Class Two Claims are unimpaired under the Plan and, therefore, the Holders of Claims in Class Two are entitled to vote to accept or reject the Plan.

(c)    **Treatment of General Unsecured Claims Against Only Art's Lobster (Class Three)**.  In full and final satisfaction of the Allowed General Unsecured Claims in Class Three, each Holder of an Allowed General Unsecured Claim in Class Three shall receive its Pro Rata share of any beneficial interest in the Cash arising out of the sale to Buyer of the Purchased Assets owned by Art's Lobster specifically, after payment of any and all Allowed Administrative

Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Liquidating Trust Expenses, **less** any Cash reserve required to winddown the Liquidating Trust as reasonably determined by the Liquidating Trustee.  The Liquidating Trustee, in his or her sole discretion, may make Distributions to Holders of Allowed General Unsecured Claims pursuant to Class Three in accordance with Section 6.16, **provided** that the Liquidating Trustee shall maintain an adequate Cash reserve to fund the Liquidating Trustee Expenses until the final Distribution. Art's Lobster anticipates that the Class Three Claims may be paid in full or close to full.   The Class Three Claims are impaired under the Plan and, therefore, the Holders of Claims in Class Three are entitled to vote to accept or reject the Plan.

(d)     **Treatment of General Unsecured Claims Against Only Casco Bay Lobster (Class Four)**.  In full and final satisfaction of the Allowed General Unsecured Claims in Class Four, each Holder of an Allowed General Unsecured Claim in Class Four shall receive its Pro Rata share of any beneficial interest in the Cash arising out of the sale to Buyer of the Purchased Assets owned by Casco Bay Lobster specifically, after payment of any and all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Liquidating Trust Expenses, **less** any Cash reserve required to winddown the Liquidating Trust as reasonably determined by the Liquidating Trustee.  The Liquidating Trustee, in his or her sole discretion, may make Distributions to Holders of Allowed General Unsecured Claims pursuant to Class Four in accordance with Section 6.16, **provided** that the Liquidating Trustee shall maintain an adequate Cash reserve to fund the Liquidating Trustee Expenses until the final Distribution.  Casco Bay Lobster anticipates that the Class Four Claims may be paid in full or close to full.   The Class Four Claims are impaired under the Plan and, therefore, the Holders of Claims in Class Four are entitled to vote to accept or reject the Plan.

(e)     **Treatment of General Unsecured Claims Against Cozy Harbor Seafood (Class Five)**.  In full and final satisfaction of the Allowed General Unsecured Claims in Class Five, each Holder of an Allowed General Unsecured Claim in Class Five shall receive its Pro Rata share of any beneficial interest in the Cash remaining in the Liquidating Trust, including any Cash remaining from the sale of the Purchased Assets owned specifically by Art's Lobster and Casco Bay Lobster after payments made in accordance with Classes Three and Four, the proceeds from the liquidation of any Causes of Action in accordance with the Plan after payment of any and all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Liquidating Trust Expenses, **less** any Cash reserve required to winddown the Liquidating Trust as reasonably determined by the Liquidating Trustee.  The Liquidating Trustee, in his or her sole discretion, may make Distributions to Holders of Allowed General Unsecured Claims pursuant to Class Five in accordance with Section 6.16, **provided** that the Liquidating Trustee shall maintain an adequate Cash reserve to fund the Liquidating Trustee Expenses until the final Distribution.  Cozy Harbor Seafood anticipates that the Allowed Claims in Class Five will be paid Cash equal to only a small percentage of the Claims in Class Five.  The Class Five Claims are impaired under the Plan and, therefore, the Holders of Claims in Class Five are entitled to vote to accept or reject the Plan.

(f)     **Treatment of Interests (Class Six)**.  The Interests in Class Six are Impaired. The Holders of Class Six Interests shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon

13

termination of the Liquidating Trust, and the Holders of Class Six Interests shall take nothing under the Plan, **provided**, **however**, that all powers and authorities vested in the Interests shall be transferred to the Liquidating Trust and exercisable by the Liquidating Trustee immediately upon the Effective Date until cancelled hereunder.  **Such Interests are, therefore, Impaired and deemed not to accept the Plan pursuant to § 1126(g) of the Bankruptcy Code.**

### 3.11    Plan Bar Dates

The Plan establishes certain bar dates, in addition to those established in the Bar Date Order, including the following:

- **Final Administrative Claim Bar Date**.  Holders of Administrative Claims accruing from the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtors requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date.  **Any such Administrative Claim (other than Professional Fee Claims and U.S. Trustee Fees) not Filed by the Final Administrative Claim Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Bankruptcy Court or the Debtors; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.**

- **Professional Fee Bar Date**.  Professional Fee Claims are Administrative Claims, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date.  **If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.**

### 3.12    Means for Executing the Plan; Establishment of Liquidating Trust

Under the Plan, on and after the Effective Date, all Remaining Assets shall vest in the Liquidating Trust, free and clear of all Claims, Liens, charges, other encumbrances, or Interests, except for the obligations under, and as otherwise set forth in, the Plan.  On and after the Effective Date, the Liquidating Trustee may use, acquire, sell, liquidate, and dispose of the Remaining Assets, and the Liquidating Trustee may compromise or settle Claims subject to approval by the Bankruptcy Court to the extent set forth in the Plan.  The Liquidating Trustee, on and after the Effective Date, shall be authorized to pay the Liquidating Trust Expenses, in the Liquidating Trustee's reasonable discretion, subject to the Liquidating Trust Agreement and the Plan.

### 3.13    Treatment of Executory Contracts and Unexpired Leases

Under the Plan, except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by an Order of the Bankruptcy Court pursuant to § 365 of the Bankruptcy Code; or (ii) as to which a motion for approval of the assumption or rejection of such Executory

14

Contract has been filed and served prior to, and remains pending as of, the Confirmation Date, every Executory Contract entered into by any of the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms (collectively, the "**Rejected Contracts**") shall be deemed rejected in accordance with § 365 of the Bankruptcy Code effective immediately as of entry of the Confirmation Order. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections.

If the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against any of the Debtors and/or the Estates unless a proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an Order of the Court. Allowed Rejection Claims shall be classified as General Unsecured Claims in, as applicable, Class Three, Four, or Five of the Plan

### 3.14    No Admissions

Nothing contained in the Plan or this Disclosure Statement shall be deemed or construed in any way as an admission by the Debtors and/or the Estates with respect to any matter set forth in the Plan or the Disclosure Statement (or the exhibits thereto), including the amount or allowability of any Claim, or the value of any Remaining Assets. Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, then the Plan shall be null and void, and nothing contained in the Plan shall: (i) be deemed to be an admission by the applicable Debtor and/or Estate with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (ii) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any claims held by the applicable Debtor and/or Estate; or (iii) prejudice in any manner the rights of the applicable Debtor and/or Estate in any further proceedings.

### 3.15    RELEASES; EXCULPATION; INJUNCTIONS

**THE PLAN CONTAINS VARIOUS RELEASE, EXCULPATION, AND INUNCTIONS THAT MAY AFFECT YOUR RIGHTS. ALL PARTIES ARE ADVISED TO CAREFULLY REVIEW THE PLAN. THOSE PROVISIONS ARE SUMMARIZED AS FOLLOWS:**

**Releases by the Debtors (Section 9.1 of the Plan):**

**As of the Effective Date, for good and valuable consideration, including the contributions of the Released Parties in facilitating the administration of the Chapter 11 Cases and other actions contemplated by the Plan and the other contracts, instruments, releases, agreements, or documents executed and delivered in connection with the Plan, the Released Parties are deemed forever released and discharged by the Debtors and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including, but not limited to, any derivative claims, asserted or assertable on behalf of any of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or**

15

unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement, or related agreements, instruments, or other documents, including, but not limited to, any rights or remedies under § 506 of the Bankruptcy Code, other than Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, actual fraud, or willful misconduct, or criminal conduct, as determined by a Final Order by a court of competent jurisdiction.

**Exculpation and Limitation of Liability (Section 9.2 of the Plan)**

(a)      The Exculpated Parties shall neither have, nor incur any liability to, any Entity for any claims or causes of action arising on or after the Petition Date and prior to the Effective Date, for any act taken or omitted to be taken in connection with, or related to: (i) the Chapter 11 Cases; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; or (iv) the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; provided, further, however, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.

(b)      The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

**Injunctions (Section 9.3 of the Plan)**

(c)      FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES WHOSE CLAIMS HAVE BEEN RELEASED, DISALLOWED, OR EXCULPATED UNDER THE PLAN ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

16

(d)     FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN SECTIONS 9.01 THROUGH 9.03 (INCLUSIVE), THE APPLICABLE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED UNDER THE PLAN.

(e)     EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN OR THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF SECTION 9.03, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

(f)     THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND ALL SUCH CLAIMS AND INTERESTS SHALL BE DEEMED SURRENDERED AND EXTINGUISHED.

**ARTICLE IV:**
**CERTAIN FEDERAL TAX CONSEQUENCES**

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION, NOR ANY STATE AUTHORITY, HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT, NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN, CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE," OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON, OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE, AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.

HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.

## ARTICLE V:
## RISK FACTORS IN CONNECTION WITH THE PLAN

**THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

The following constitute a non-exhaustive list of risk factors associated with the Plan and its implementation:

- The Debtors can make no assurances that the requisite acceptances to the Plan will be received, and the Debtors may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.

- There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

- There is no assurance regarding the amount of Cash that will be generated upon liquidation of the Remaining Assets and that will be available to pay Allowed Claims.

- The Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived).

- **THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE VI:
## RECOMMENDATION AND CONCLUSION

The Debtors believe that the Plan provides the best available alternative for maximizing the recoveries that Creditors may receive from the Estates. The Debtors, therefore, recommend that all Creditors that are entitled to vote on a Plan, vote to accept each such Plan.

**COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.**

By their counsel:

Dated: January 16, 2026

*/s/ D. Sam Anderson*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
**BERNSTEIN SHUR**
100 Middle Street, P.O. Box 9729
Portland, Maine 04104-5085
(207) 774-1200
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com