## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re: | Chapter 11 |
| **COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.,** | **Case No. 25-20160** |
| | **(Jointly Administered)** |
| Debtors.[1] | |

### DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION
### DATED JANUARY 16, 2026

**Proposed by**:  /s/ D. Sam Anderson
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
BERNSTEIN SHUR
100 Middle Street
Portland, Maine 04101
(207) 774-1200
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

Counsel for the above-captioned debtors and debtors in possession

---

[1] The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363.  The principal place of business for the debtors was, prior to the sale of substantially all of the Debtors' assets, 75 St. John Street, Portland, ME 04102.

# TABLE OF CONTENTS

ARTICLE I: DEFINITIONS AND CONSTRUCTION OF TERMS……………..…………….1

ARTICLE II: SUMMARY OF CLAIMS, CLASSES, VOTING, AND
PROJECTED RECOVERIES; PREPETITION CLAIMS SCHEDULE;
ALLOCATION AND DISALLOWANCE OF CERTAIN CLAIMS…..…………………….….9

ARTICLE III: CONFIRMATION PROCEDURES………………………………….………..11

ARTICLE IV:  CLASSIFICATION OF CLAIMS AND INTERESTS…………………….…12

ARTICLE V: CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING…..…15

ARTICLE VI:  MEANS FOR IMPLEMENTATION OF THE PLAN…………………….…16

ARTICLE VII: EXECUTORY CONTRACTS…………………………………………….…20

ARTICLE VIII:  PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND
DISTRIBUTION OF REMAINING ASSETS………………………………………….….20

ARTICLE IX: RELEASES, INJUNCTION, AND RELATED PROVISIONS…………………22

ARTICLE X: CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE……….…...24

ARTICLE XI: MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN…….…..25

ARTICLE XII:  JURISDICTION……………………………………………….………………26

ARTICLE XIII: MISCELLANEOUS……………………………………...…………………..27

## **TABLE OF EXHIBITS**

EXHIBIT A: LIQUIDATING TRUST AGREEMENT……………………………………………

**INTRODUCTION**

Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc. and Art's Lobster Co., Inc., the above-captioned debtors and debtors-in-possession, hereby propose this Debtors' Joint Chapter 11 Plan of Liquidation Dated January 16, 2026, to all of the Debtors'[2] known Holders of Claims and Interests, as authorized by § 1121(a) of the Bankruptcy Code.

**ARTICLE I:**
**DEFINITIONS AND CONSTRUCTION OF TERMS**

As used in this Plan, the following terms have the following meanings:

1.1.  "**503(b)(9) Bar Date**" shall mean the General Bar Date.

1.2.  "**503(b)(9) Claims**" shall mean all Claims arising under § 503(b)(9) of the Bankruptcy Code against any of the Debtors that were: (i) Filed against any of the Debtors prior to the 503(b)(9) Bar Date; or (ii) listed by any of Debtors in its Schedules.

1.3.  "**Accounts Receivable**" shall mean any and all accounts receivable, credit card receivables, notes receivable, and other amounts receivable owed to any of the Debtors (whether current or non-current), together with any interest or unpaid financing charges accrued thereon, including all actions pertaining to the collection of amounts payable, or that may become payable, to any of the Debtors with respect to products sold or services performed by the Debtor, including amounts that may be owed to any of the Debtors under the Aquashell APA.

1.4.  "**Administrative Claim**" shall mean any right to payment constituting a cost or expense of administration of the Chapter 11 Cases as it relates to any of the Debtors under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under §§ 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against any of the Debtors' Estates under § 1930 title 28 of the United States Code, all post-Petition Date taxes, and all other Claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court.

1.5.  "**Allowed Claim**" shall mean all or a portion of a Claim against any of the Debtors or an Interest in any of the Debtors: (a) that has been listed by any of the Debtors in their Schedules, or is allocated to any of the Debtors in the Prepetition Claims Schedule, as liquidated in amount and not "Disputed" or "Contingent;" (b) as to which no Objection or request for estimation has been Filed on or before the applicable Claim Objection deadline under this Plan; (c) as to which any Objection has been settled, waived, withdrawn, or denied by a Final Order; or (d) that is allowed: (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the applicable Debtor prior to the Effective Date, or the Liquidating Trustee after the Effective Date, or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions,

[2] Capitalized terms used, but not defined at the time of initial use, shall have the meaning set forth in Article I of the Plan.

1

a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as otherwise expressly set forth in this Plan. For the avoidance of doubt, any Claim that relates to obligations that were assumed by the Buyer pursuant to the Aquashell APA and/or Sale Order shall not be an Allowed Claim for purposes of the Plan and shall be a Disallowed Claim. For further avoidance of doubt, no Claims shall be Allowed under this Plan prior to, at the earliest, expiration of the applicable Claim Objection deadline unless otherwise expressly set forth herein.

**1.6.** "**Aquashell APA**" shall mean that certain Asset Purchase Agreement entered into by and between the Debtors and Aquashell USA, LLC (subsequently assigned to Harlan Aquashell Seafood US Inc.), pursuant to which substantially all of the Assets of the Debtors were sold to Aquashell.

**1.7.** "**Art's Lobster**" shall mean Art's Lobster Co., Inc., a debtor and debtor-in possession in the Chapter 11 Cases.

**1.8.** "**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.9.** "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of Maine.

**1.10.** "**Bankruptcy Rules**" shall mean, when referenced generally: (i) the Federal Rules of Bankruptcy Procedure, as amended and promulgated under § 2075 of title 28 of the United States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under § 2072 of title 28 of the United States Code; (iii) the applicable Local Rules; and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court and/or the District Court associated with the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**1.11.** "**Business Day**" shall mean any day, other than a Saturday, Sunday, or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.12.** "**Buyer**" shall mean Harlan Aquashell Seafood US Inc. (as assignee of Aquashell USA, LLC), the entity that acquired the Purchased Assets pursuant to the Aquashell APA and the Sale Order.

**1.13.** "**Casco Bay Lobster**" mean Casco Bay Lobster Co., Inc., a debtor and debtor-in possession in the Chapter 11 Cases.

**1.14.** "**Cash**" or "**$**" shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

**1.15.** "**Causes of Action**" shall mean, except to the extent acquired by Buyer under the Aquashell APA, all Claims, causes of action, controversies, obligations, suits, judgments, damages, demands, debts, rights, preference actions, fraudulent conveyance actions and other claims or causes of action under §§ 510, 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other similar state law claims and causes of action, liens, indemnities, guaranties, suits, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, arising in law, equity or pursuant to any other theory of law. For the avoidance of doubt, Causes of Action shall also include: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to § 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

**1.16.** "**Chapter 11 Cases**" shall mean the Debtors' chapter 11 cases, which are jointly administered for procedural purposes only.

**1.17.** "**Claim**" or "**Claims**" shall mean a claim or claims against any of the Debtors, as such term is defined in § 101(5) of the Bankruptcy Code, and shall include Claims allocated to any of the Debtors in the Prepetition Claims Schedule.

**1.18.** "**Claims Objection Deadline**" shall mean ninety (90) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidating Trustee or the Debtors may file one or more motions with the Bankruptcy Court to extend the Claims Objection Deadline. For avoidance of doubt, the Claims Objection Deadline shall also constitute the deadline for the Debtors or Liquidating Trustee to object to Administrative Claims (other than Professional Fee Claims).

**1.19.** "**Class**" shall mean each category or group of Holders of Claims or Interests that has been designated as a class in this Plan.

**1.20.** "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**1.21.** "**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan.

**1.22.** "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan.

**1.23.** "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.24.** "**Cozy Harbor Seafood**" mean Cozy Harbor Seafood, Inc., a debtor and debtor-in possession in the Chapter 11 Cases.

**1.25.** "**Creditor**" shall have the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

**1.26.** "**Creditors' Committee**" shall mean the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases, pursuant to the Notice of Appointment of Creditors' Committee.

**1.27.** "**Debtors**" shall mean Cozy Harbor Seafood, Casco Bay Lobster, and Art's Lobster, including in their capacities prior to the Petition Date, as a debtors-in-possession in the Chapter 11 Cases, and as Entities after the Effective Date.

**1.28.** "**Disallowed**" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in any of the Debtors which: (i) has been disallowed, waived, or released, in whole or part, by a Final Order (including, but not limited to, the Sale Order and/or the Confirmation Order); (ii) has been withdrawn, waived, or released by agreement of the Holder thereof and any of the Debtors or the Liquidating Trustee, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if identified in the Schedules, or allocated to any of the Debtors in the Prepetition Claims Schedule, and listed as zero or as Disputed, Contingent, and/or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order or other applicable law or as otherwise agreed; (v) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) is not listed in the Schedules and as to which no timely and proper proof of Claim has been filed or any other applicable Final Order establishing a bar date in the Chapter 11 Cases, including as to any Rejection Damages Claim; or (vi) is Disallowed against any of the Debtors upon entry of the Confirmation Order pursuant to the Prepetition Claims Schedule and Article II of this Plan.

**1.29.** "**Disclosure Statement**" shall mean that certain joint disclosure statement filed by the Debtors with respect to this Plan, as the same may be amended, supplemented, revised, or modified from time to time, and approved as containing adequate information pursuant to a Final Order, including, without limitation, all exhibits, appendices, and schedules attached thereto.

**1.30.** "**Disputed**" shall mean any Claim or Interest which has not yet been Allowed or Disallowed.

**1.31.** "**Distribution**" shall mean any distribution made pursuant to the Plan by the Liquidating Trustee or the Debtors to the Holder of an Allowed Claim or Allowed Interest.

**1.32.** "**Effective Date**" shall mean the date that the Confirmation Order becomes a Final Order, provided, however, that if such date is not a Business Day, then the first Business Day

thereafter.  If the Confirmation Order has been stayed and that stay remains in place after the day the Confirmation Order would otherwise become a Final Order, the Effective Date shall mean the earlier of the first Business Day following the date upon which: (a) the Confirmation Order has become a Final Order; or (b) any stay of the Confirmation Order is no longer effective.

**1.33.**    "**Entity**" shall have the meaning ascribed to such term in § 101(15) of the Bankruptcy Code.

**1.34.**    "**Estates**" shall mean the estates of the Debtors created pursuant to § 541 of the Bankruptcy Code.

**1.35.**    "**Exculpated Parties**" shall mean as of the Petition Date through the Effective Date: (i) the Debtors; and (ii) John Norton and Joseph Donovan, each in their capacities as directors, officers, and/or senior employees of the Debtors; and (iii) the Professionals of the Debtors retained in the Chapter 11 Cases by an order of the Bankruptcy Court.

**1.36.**    "**Executory Contract**" shall mean a contract or lease to which the one or more of the Debtors is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

**1.37.**    "**File**," "**Filed**," or "**Filing**" shall mean, respectively, file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases; provided, however, that with respect to proofs of Claim and proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by any applicable rules, notices or orders.

**1.38.**    "**Final Administrative Claim Bar Date**" means the date that is thirty (30) days after the Effective Date, which shall be the deadline for Filing requests for payment of Administrative Claims that arose after the Petition Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees.

**1.39.**    "**Final Order**" shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidating Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under rule 59 or rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**1.40.**    "**General Bar Date**" shall mean November 10, 2025.

**1.41.**    "**General Unsecured Claim**" shall mean any unsecured Claim against any of the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, that is not: (i) an Administrative Claim; (ii) a Priority Tax Claim; or (iii) a Priority Non-Tax Claim.

**1.42.**    "**Governmental Unit**" shall have the meaning ascribed to such term in § 101(27) of the Bankruptcy Code.

**1.43.**    "**Holder**" or "**Holders**" shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

**1.44.**    "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**1.45.**    "**Intercompany Claim**" shall mean any Claim held by any of the Debtors against any of the other Debtors or vice versa.

**1.46.**    "**Interests**" shall mean the equity or equivalent ownership interests of any Person in the Debtor.

**1.47.**    "**IRS**" shall mean the Internal Revenue Service and/or assigns.

**1.48.**    "**Liquidating Trust**" shall mean the liquidating trust established under this Plan and the Liquidating Trust Agreement.

**1.49.**    "**Liquidating Trustee**" shall mean the Person appointed pursuant this Plan and the Liquidating Trust Agreement to serve as the trustee of the Liquidating Trust for the purposes of, among other things, liquidating the Remaining Assets and making Distributions.

**1.50.**    "**Liquidating Trust Agreement**" shall mean the trust agreement that establishes the Liquidating Trust and governs the powers, duties, and responsibilities of the Liquidating Trustee, which shall be in substantially the same form as attached hereto as **Exhibit A**.

**1.51.**    "**Liquidating Trust Expenses**" shall mean the reasonable fees, costs, and expenses of the Liquidating Trust, as determined in the reasonable discretion of the Liquidating Trustee.  For the avoidance of doubt, U.S. Trustee Fees shall be considered a Liquidating Trust Expense.  The Liquidating Trustee shall be authorized to pay the Liquidating Trust Expenses, including professional fees other than those constituting a Professional Fee Claim, in the Liquidating Trustee's reasonable discretion, without further Order or notice to any party, except as otherwise set forth in the Plan.  Liquidating Trust Expenses shall also include compensation to the Liquidating Trustee, as set forth in the Liquidating Trust Agreement.

**1.52.**    "**Local Rules**" shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Maine.

**1.53.**    "**Objection(s)**" shall mean any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim or Interest (including, but not limited to, the resolution of any Filing seeking payment of any Administrative Claim).

**1.54.**    "**Person**" shall have the meaning ascribed to such term in § 101(41) of the Bankruptcy Code.

**1.55.**    "**Petition Date**" shall mean July 1, 2025, the date on which each of the Debtors commenced their Chapter 11 Cases in the Bankruptcy Court.

**1.56.**    "**Plan**" shall mean this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified, or supplemented from time to time, including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules, and including all exhibits and schedules hereto.

**1.57.**    "**Prepetition Claims Schedule**" shall mean the Claims as identified on schedule attached to the Disclosure Statement as **Exhibit A** as they relate to each of the respective Debtors.

**1.58.**    "**Priority Non-Tax Claim**" shall mean any and all Claims accorded priority in right of payment under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.59.**    "**Priority Tax Claim**" shall mean a Claim or a portion of a Claim accorded priority under § 507(a)(8) of the Bankruptcy Code.

**1.60.**    "**Pro Rata**" shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

**1.61.**    "**Professional**" shall mean any professional employed in the Chapter 11 Cases pursuant to Bankruptcy Code §§ 327, 328, or 1103, which shall include, but not be limited to, Bernstein Shur Sawyer & Nelson, P.A., Opus Consulting, Purdy Powers & Company, and Dentons Bingham Greenbaum, LLP.

**1.62.**    "**Professional Fee Bar Date**" shall mean the deadline for Filing all final applications for Professional Fee Claims, which deadline shall be thirty (30) days after the Effective Date.

**1.63.**    "**Professional Fee Claims**" shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.  A Claim of a Professional for

compensation and reimbursement of expenses incurred after the Effective Date shall not be subject to an application or approval by the Bankruptcy Court and may be paid by the Liquidating Trustee in the ordinary course, as a Liquidating Trust Expense, except as otherwise set forth in this Plan.

      **1.64.** "**Purchased Assets**" shall mean those certain assets of the Debtors acquired by the Buyer pursuant to the Sale Order and the Aquashell APA.

      **1.65.** "**Rejection Damages Bar Date**" shall mean the deadline by which a counterparty to an Executory Contract of any of the Debtors rejected under this Plan must File a proof of Claim for damages arising from such rejection, and shall be, except as otherwise set forth in a separate Order of the Bankruptcy Court authorizing the rejection of an Executory Contract and setting a different date for any Entity to assert a claim arising from such rejection, thirty (30) days after the effective date of the rejection of such Executory Contract, including as to those Executory Contracts that are rejected effective upon entry of the Confirmation Order in accordance with this Plan.

      **1.66.** "**Rejection Damages Claim**" shall mean any timely Filed Claim for amounts due as a result of the rejection by any of the Debtors of any Executory Contract under § 365 of the Bankruptcy Code.

      **1.67.** "**Released Party**" shall mean each of the following in their respective capacity as such: (a) the Debtors; (b) the Estates; and (c) the Creditors' Committee, and with respect to each of the foregoing Entities in clauses (a) through (c), their Representatives, each in their capacities as such.  For the avoidance of doubt, notwithstanding any language herein to the contrary, nothing in the definition of Released Party or any other provision of this Plan shall constitute a release of Claims or Causes of Action against any member or Representative of the Creditors' Committee other than solely in his/her/its capacity as a member or Representative of the Creditors' Committee.

      **1.68.** "**Remaining Assets**" means, as in existence on the Effective Date, all tangible and intangible assets of every kind and nature of any of the Debtors and their Estates within the meaning of § 541 of the Bankruptcy Code (and the proceeds thereof), including, but not limited to, Interests, Cash, and the Causes of Action.

      **1.69.** "**Representatives**" shall mean with respect to an Entity, all of that Entity's current and former managed and controlled affiliates and subsidiaries, and its and each of the foregoing Entity's respective officers, directors, managing members, principals, shareholders, members, partners, employees, agents, attorneys, professionals (including Professionals), accountants, investment bankers, financial consultants, and other representatives, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

      **1.70.** "**Sale**" shall mean the sale of the Purchased Assets to Buyer pursuant to the Aquashell APA and the Sale Order, which closed on November 26, 2025.

      **1.71.** "**Sale Order**" shall mean the order entered by the Bankruptcy Court approving the sale of the Purchased Assets to Buyer pursuant to the Aquashell APA.

**1.72.**    "**Sale Proceeds**" shall mean the amount paid by Buyer for the Purchased Assets, after accounting for adjustments at closing, all as reflected on the closing statement relating to the Sale and shall include any amounts payable by Buyer under that certain Transition Services Agreement entered into by the Debtors and Buyer.

**1.73.**    "**Schedules**" shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts, and Statements of Financial Affairs Filed by each of the Debtors pursuant to § 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time, which were filed in the Chapter 11 Cases.

**1.74.**    "**Secured Claim**" shall mean, pursuant to § 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected, and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon the Remaining Assets.

**1.75.**    "**Tax**" or "**Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, and duties, value added taxes, assessments, or charges (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.76.**    "**Unclaimed Distributions**" shall mean any undeliverable or unclaimed Distributions.

**1.77.**    "**Unimpaired**" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not Impaired within the meaning of § 1124 of the Bankruptcy Code.

**1.78.**    "**U.S. Trustee**" shall mean the Office of the United States Trustee.

**1.79.**    "**U.S. Trustee Fees**" shall mean the fees payable pursuant to 28 U.S.C. § 1930.

**ARTICLE II:**
**SUMMARY OF CLAIMS, CLASSES, VOTING, AND PROJECTED RECOVERIES;**
**PREPETITION CLAIMS SCHEDULE; ALLOCATION AND DISALLOWANCE**
**OF CERTAIN CLAIMS**

**2.1.    Summary of Claims, Classes, Voting, and Projected Recoveries**

The following chart summarizes the categories and treatment of Claims and Interests under this Plan, as well as whether Holders of Claims and Interests are entitled to vote on this Plan, and the projected recovery for each under this Plan.  **All parties are advised to read this Plan in its entirety and not to rely exclusively on this summary.  This summary is qualified in its entirety by the terms of the Plan.**

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (yes/no) | Projected Recovery |
|---|---|---|---|
| Unclassified Claims against any of the Debtors (including Administrative Claims (including Professional Fee Claims and 503(b)(9) Claims) and U.S. Trustee Fees | Unimpaired | No | 100% |
| Class One: Secured or Priority Tax Claims | Unimpaired | No | 100% |
| Class Two: Priority Unsecured Non-Tax Claims against any of the Debtors | Unimpaired | No | 100% |
| Class Three: General Unsecured Claims against Art's Lobster | Impaired | Yes | 90% |
| Class Four: General Unsecured Claims against Casco Bay Lobster | Impaired | Yes | 90% |
| Class Five: General Unsecured Claims against Cozy Harbor Seafood | Impaired | Yes | Variable |
| Class Six: Interests in a Debtor | Impaired (deemed to reject Plan) | No | 0% |

## 2.2.    Description of Prepetition Claims Schedule

Although some Entities billed for services and goods directly to either Art's Lobster or Casco Bay Lobster, many Entities invoiced or contracted exclusively with Cozy Harbor, and the primary operating bank accounts for paying operational expenses were maintained by Cozy Harbor.  Accordingly, the Prepetition Claims Schedule, to the extent possible, allocates Claims by and among the Debtors based on which of the Debtors directly received or benefited from the services or goods giving rise to each Claim.

**Exhibit A** to the Disclosure Statement contains the known prepetition claims against each of the separate Debtors based on: (i) the respective Schedules of each of the Debtors; and (ii) the proofs of Claims filed in the Chapter 11 Cases.[3]

---

[3] The Prepetition Claims Schedule does not include proofs of Claim for Rejection Damages Claims unless Filed prior to the date of this Plan.  The Debtor reserves the right to supplement or amend the Prepetition Claims Schedule prior to the Confirmation Hearing.

**2.3.    Allocation and Disallowance of Certain Claims on the Prepetition Claims Schedule**

Pursuant to this Plan, the Confirmation Order shall constitute an order of the Bankruptcy Court allocating, on a final basis, each Claim on the Prepetition Claims Schedule to the specific Debtor identified on the Prepetition Claims Schedule.

**ALL PARTIES ARE ADVISED TO CAREFULLY REVIEW THIS ARTICLE II AND <u>EXHIBIT A</u> TO THE DISCLOSURE STATEMENT BECAUSE THEIR CLAIMS MAY BE DISALLOWED AND/OR MODIFIED PURSUANT TO THE TERMS HEREIN UPON ENTRY OF THE CONFIRMATION ORDER.**

**2.4.    Reservation of Rights; No Allowance of Claims under Article II**

For the avoidance of doubt: (i) the Debtors reserve all rights to object to any Claim on any basis; and (ii) nothing in Article II of this Plan shall Allow or be deemed to Allow any Claim against any of the Debtors, even if the Claim is identified on the Prepetition Claims Schedule.

**ARTICLE III:**
**<u>CONFIRMATION PROCEDURES</u>**

**3.1    Confirmation Procedures**

The Confirmation Hearing shall occur on _____, 2026 at ____.M. (prevailing Eastern Time) at the Bankruptcy Court, Smith Federal Building, 202 Harlow Street, Bangor, Maine 04401.  The Confirmation Hearing may be adjourned from time to time without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

**3.2    Procedure for Objections; Objection Deadline**

Any objection to confirmation of the Plan must be: (i) made in writing; and (ii) Filed with the Bankruptcy Court and served on counsel for the Debtors, the Creditors' Committee, and the U.S. Trustee so as to be actually received on or before _____, **2026**.  **UNLESS AN OBJECTION IS TIMELY FILED AND SERVED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

**3.3    Procedures for Voting; Voting Deadline**

To be counted for voting purposes, properly completed ballots for acceptance or rejection of the Plan **MUST BE SERVED ON THE DEBTORS' COUNSEL** listed below, via mail or email, by no later than _____, **2026** (the "**<u>Voting Deadline</u>**"):

      **By Mail**:     Bernstein Shur
                  Attn: Sam Anderson, Esq.
                  100 Middle Street, P.O. Box 9729

Portland, Maine 04101

**By Email**:     sanderson@bernsteinshur.com

**TO COUNT, ALL BALLOTS MUST BE SIGNED BY AN AUTHORIZED PARTY AND FULLY COMPLETED.   INCOMPLETE BALLOTS OR BALLOTS NOT ACTUALLY RECEIVED BY THE VOTING DEADLINE MAY NOT BE COUNTED.**

**BALLOTS MAILED TO THE CLERK OF THE BANKRUPTCY COURT SHALL <u>NOT</u> BE COUNTED.**

Even if you do not vote to accept a Plan, you may still be bound by the Plan if it is accepted by the requisite Holders of Claims and confirmed by the Bankruptcy Court.

**3.4      Cramdown Confirmation**

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTORS MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF § 1129(b) OF THE BANKRUPTCY CODE.**

**ARTICLE IV:**
**<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>**

**4.1      Identification and Treatment of Unclassified Claims**

(a)      **Administrative Claims**.   Each Holder of an Allowed Administrative Claim, including an Allowed Professional Fee Claim, shall receive, promptly after the date on which such Administrative Claim becomes Allowed in accordance with this Plan, in full and final satisfaction of such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtor or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.  Holders of Disallowed Administrative Claims shall not receive any Distribution under this Plan.

(i)      **Final Administrative Claim Bar Date**. Holders of Administrative Claims accruing from the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtors requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date.  **Any such Administrative Claim (other than Professional Fee Claims) not Filed by the Final Administrative Claim Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Bankruptcy Court or the Debtors; and (iii) the Holder of such**

**Claim shall be forever barred from receiving a Distribution on account thereof.**

(ii)     **Professional Fee Bar Date**. Professional Fee Claims are Administrative Claims, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. **If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.**

(iii)     **Section 503(b)(9) Claims**. The deadline for Filing requests for payment of 503(b)(9) Claims was the 503(b)(9) Bar Date, and the 503(b)(9) Bar Date shall not be modified by the Plan or the Confirmation Order.

(b)     **U.S. Trustee Fees**. All U.S. Trustee Fees due and payable prior to or after the Effective Date shall be paid by the Debtors when due in the ordinary course under applicable law.  After the Effective Date, the Debtors and the Liquidating Trustee shall be jointly and severally liable to pay any and all U.S. Trustee Fees when due and payable.

(c)     **Disputed Unclassified Claims**.  Except as otherwise set forth in this Section 4.01, if an Unclassified Claim is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Section 8.02 of the Plan.

### 4.2     Identification of Classes of Claims and Interests

The following shall constitute the Classes of Claims and Interests under this Plan:

(a)     **Class One**: Class One shall contain any Secured or Priority Tax Claims against any of the Debtors.

(b)     **Class Two**: Class Two shall contain any Priority Unsecured Non-Tax Claims against any of the Debtors.

(c)     **Class Three**: Class Three shall contain General Unsecured Claims against only Art's Lobster, which shall include Rejection Damages Claims.

(d)     **Class Four**: Class Four shall contain General Unsecured Claims against only Casco Bay Lobster, which shall include Rejection Damages Claims.

(e)     **Class Five**: shall contain General Unsecured Claims against only Cozy Harbor Seafood, which shall include Rejection Damages Claims.

(f)     **Class Six**: Class Six shall contain Interests in any of the Debtors.

### 4.3     Treatment of Classes of Claims and Interests

(a)      **Treatment of Secured or Priority Tax Claims (Class One)**:  Each Holder of an Allowed Secured and/or Priority Tax Claim against any of the Debtors shall receive, promptly after the date on which such Secured and/or Priority Tax Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Allowed Secured and/or Priority Tax Claim, either: (i) Cash equal to the unpaid amount of such Allowed Secured and/or Priority Tax Claim; or (ii) such other treatment as the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Secured and/or Priority Tax Claim shall have agreed, **provided**, **however**, any payments relating to any Secured and/or Priority Tax Claims shall only be made after payment in full of all Allowed Unclassified Claims.  **The Class One Claims are unimpaired under the Plan and, therefore, the Holders of Claims in Class One are not entitled to vote to accept or reject the Plan.**

(b)      **Treatment of Priority Non-Tax Claims (Class Two)**.  Each Holder of an Allowed Priority Non-Tax Claim against any of the Debtors shall receive, promptly after the date on which such Priority Non-Tax Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Allowed Priority Non-Tax Claim, either: (i) Cash equal to the unpaid amount of such Allowed Priority Unsecured Non-Tax Claim; or (ii) such other treatment as the Debtor or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Unsecured Non-Tax Claim shall have agreed, **provided**, **however**, any payments relating to Allowed Priority Non-Tax Claims shall only be made after payment in full of all Allowed Unclassified Claims.  **The Class Two Claims are impaired under the Plan and, therefore, the Holders of Claims in Class Two are entitled to vote to accept or reject the Plan.**

(c)      **Treatment of General Unsecured Claims Against Only Art's Lobster (Class Three)**.  In full and final satisfaction of the Allowed General Unsecured Claims in Class Three, each Holder of an Allowed General Unsecured Claim in Class Three shall receive its Pro Rata share of any beneficial interest in the Cash arising out of the sale to Buyer of the Purchased Assets owned by Art's Lobster specifically, after payment of any and all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Liquidating Trust Expenses, **less** any Cash reserve required to winddown the Liquidating Trust as reasonably determined by the Liquidating Trustee.  The Liquidating Trustee, in his or her sole discretion, may make Distributions to Holders of Allowed General Unsecured Claims pursuant to Class Three in accordance with Section 6.16, **provided** that the Liquidating Trustee shall maintain an adequate Cash reserve to fund the Liquidating Trustee Expenses until the final Distribution.  Art's Lobster anticipates that the Class Three Claims may be paid in full or close to full.   **The Class Three Claims are impaired under the Plan and, therefore, the Holders of Claims in Class Three are entitled to vote to accept or reject the Plan.**

(d)      **Treatment of General Unsecured Claims Against Only Casco Bay Lobster (Class Four)**.  In full and final satisfaction of the Allowed General Unsecured Claims in Class Four, each Holder of an Allowed General Unsecured Claim in Class Four shall receive its Pro Rata share of any beneficial interest in the Cash arising out of the sale to Buyer of the Purchased Assets owned by Casco Bay Lobster specifically, after payment of any and all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Liquidating Trust Expenses, **less** any Cash reserve required to

winddown the Liquidating Trust as reasonably determined by the Liquidating Trustee.  The Liquidating Trustee, in his or her sole discretion, may make Distributions to Holders of Allowed General Unsecured Claims pursuant to Class Four in accordance with Section 6.16, **provided** that the Liquidating Trustee shall maintain an adequate Cash reserve to fund the Liquidating Trustee Expenses until the final Distribution.  Casco Bay Lobster anticipates that the Class Four Claims may be paid in full or close to full.  **The Class Four Claims are impaired under the Plan and, therefore, the Holders of Claims in Class Four are entitled to vote to accept or reject the Plan.**

(e)    **Treatment of General Unsecured Claims Against Cozy Harbor Seafood (Class Five)**.  In full and final satisfaction of the Allowed General Unsecured Claims in Class Five, each Holder of an Allowed General Unsecured Claim in Class Five shall receive its Pro Rata share of any beneficial interest in the Cash remaining in the Liquidating Trust, including any Cash remaining from the sale of the Purchased Assets owned specifically by Art's Lobster and Casco Bay Lobster after payments made in accordance with Classes Three and Four, the proceeds from the liquidation of any Causes of Action in accordance with this Plan after payment of any and all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Liquidating Trust Expenses, **less** any Cash reserve required to winddown the Liquidating Trust as reasonably determined by the Liquidating Trustee.  The Liquidating Trustee, in his or her sole discretion, may make Distributions to Holders of Allowed General Unsecured Claims pursuant to Class Five in accordance with Section 6.16, **provided** that the Liquidating Trustee shall maintain an adequate Cash reserve to fund the Liquidating Trustee Expenses until the final Distribution.  Cozy Harbor Seafood anticipates that the Allowed Claims in Class Five will be paid Cash equal to only a small percentage of the Claims in Class Five.  **The Class Five Claims are impaired under the Plan and, therefore, the Holders of Claims in Class Five are entitled to vote to accept or reject the Plan.**

(f)    **Treatment of Interests (Class Six)**.  The Interests in Class Six are Impaired. The Holders of Class Six Interests shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon termination of the Liquidating Trust, and the Holders of Class Six Interests shall take nothing under the Plan, **provided**, **however**, that all powers and authorities vested in the Interests shall be transferred to the Liquidating Trust and exercisable by the Liquidating Trustee immediately upon the Effective Date until cancelled hereunder.  **Such Interests are, therefore, Impaired and deemed not to accept the Plan pursuant to § 1126(g) of the Bankruptcy Code.**

## ARTICLE V:
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

The following constitute a non-exhaustive list of risk factors associated with this Plan and its implementation:

- The Debtors can make no assurances that the requisite acceptances to the Plan will be received, and the Debtors may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.

• There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

• There is no assurance regarding the amount of Cash that will be generated upon liquidation of the Remaining Assets and that will be available to pay Allowed Claims.

• The Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived).

• **THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE VI:
## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1     Vesting and Sale or Other Disposition of Remaining Assets; Liquidating Trust Expenses**

On the Effective Date, all Remaining Assets shall vest in the Liquidating Trust, free and clear of all Claims, liens, charges, other encumbrances, or Interests, except for the obligations under, and as otherwise set forth in, this Plan. On and after the Effective Date, the Liquidating Trustee may use, acquire, sell, liquidate, and dispose of the Remaining Assets and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan or the Confirmation Order. The Liquidating Trustee, on and after the Effective Date, shall be authorized to pay the Liquidating Trust Expenses, in the Liquidating Trustee's reasonable discretion, without further Order or notice to any party.

**6.2     Initial Liquidating Trustee**

Mark Stickney ("**Stickney**") shall be the initial Liquidating Trustee. The Debtors believe that Stickney is well qualified to serve as the Liquidating Trustee in an efficient and cost-effective manner. Subsequent Liquidating Trustees, if any, shall be appointed in accordance with the Liquidating Trust Agreement.

**6.3     Liquidating Trustee's Counsel and Advisors**

Bernstein Shur Sawyer & Nelson, P.A. shall serve as counsel to the Liquidating Trustee, provided that nothing herein shall prevent the Liquidating Trustee from retaining alternative counsel and terminating Bernstein Shur Sawyer & Nelson, P.A.

### 6.4    <u>Insurance</u>

Notwithstanding anything to the contrary herein, unless elected otherwise by the Liquidating Trustee, if any Allowed Claim is covered by an insurance policy, such Claim shall first be paid from proceeds of such insurance policy to the extent such proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

### 6.5    <u>Dissolution</u>

From and after the Effective Date, the Debtors for all purposes shall be deemed to have dissolved and withdrawn their business operations from any state or country in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to File any document, pay any sum or take any other action, in order to effectuate such dissolution and withdrawal, **provided**, **however**, the Debtors, with the consent of the Liquidating Trustee, may elect to delay the dissolution beyond the Effective Date, if they determine such delay is in the best interest of the parties in interest. In the event that the dissolution of the Debtors is delayed beyond the Effective Date, the Liquidating Trustee may, but shall be obligated, to dissolve the Debtors as soon as reasonably practical.

### 6.6    <u>Release of Liens and Security Instruments</u>

On the Effective Date, all liens against any Remaining Assets to be distributed under the Plan shall be fully released, and all of the right, title, and interest of any Holder of such liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales of such Remaining Assets. For the avoidance of doubt, deeds of trust, liens, pledges, or other security interests against any Remaining Assets shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated Schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 6.7    <u>Cancellation of Notes and Instruments</u>

As of the Effective Date, all notes, agreements, and securities evidencing Claims and the rights thereunder of the Holders thereof, shall, with respect to the Debtors, be canceled and terminated, and such instruments shall evidence no such rights, except the right to receive the Distributions provided for in this Plan.

### 6.8    <u>Purpose of Liquidating Trust</u>

The Liquidating Trust shall be established for the purpose of liquidating the Remaining Assets, prosecuting any Causes of Action transferred to the Liquidating Trust to maximize

recoveries for the benefit of the Holders of Claims, and making Distributions in accordance with the Plan and Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

In connection with the consummation of this Plan, the Debtors and the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authorities and all Distributions hereunder shall be subject to any such withholding and reporting requirements. **ALL HOLDERS OF CLAIMS ENTITLED TO DISTRIBUTIONS UNDER THE PLAN, AS A CONDITION TO RECEIVING ANY DISTRIBUTION, SHALL PROVIDE THE LIQUIDATING TRUSTEE WITH A COMPLETED AND EXECUTED TAX FORM W-8 OR TAX FORM W-9, OR SIMILAR FORM WITHIN SIXTY (60) DAYS OF A WRITTEN REQUEST BY THE LIQUIDATING TRUSTEE OR BE FOREVER BARRED FROM RECEIVING A DISTRIBUTION.**

### 6.9    Preservation of All Causes of Action and Standing

In accordance with § 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall be exclusively vested with, retain, and may enforce and prosecute any and all claims that the Debtors or the Estates may have against any Person or Entity that constitute Causes of Action, subject to the provisions of this Plan. The Liquidating Trustee shall have standing on behalf of the Debtors and the Estates for the purpose of investigating, pursuing, prosecuting, settling, collecting, litigating, and/or recovering any Remaining Assets that the Debtors or the Estates have or may pursue, subject to the provisions of this Plan.

### 6.10    Effectuating Documents and Further Transactions

On and after the Effective Date, the Liquidating Trustee shall be authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtors and the Liquidating Trust, without the need for any approvals, authorization, or consents, except those expressly required pursuant to the Plan.

### 6.11    Insurance Policies

(a)      **Insurance Policies Remain In Force.** Up to and including their policy expiration date(s), any and all insurance policies in effect as of the Effective Date, shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third-party administrators under such insurance policies shall continue following the Effective Date (including any obligations to pay, defend and process insured claims).

(b)      **D&O Insurance Policies; Employment Practice Liability Policies; Similar Policies.** Nothing contained in this Plan shall affect or impair the rights of any non-Debtor

insured persons covered under any D&O insurance policy, employment practices or similar liability insurance policy (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

### 6.12   Dissolution of Creditors' Committee

Upon and after the Effective Date, the Creditors' Committee shall continue in existence and have standing and capacity solely to prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Creditors' Committee's Professionals. Following the completion of the foregoing, the Creditors' Committee shall be dissolved, and the members of the Creditors' Committee shall be discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Cases.

### 6.13   Transfer of Privilege/No Waiver

On the Effective Date, all of the Debtors' evidentiary privileges, including the attorney-client privilege and work-product doctrine, shall be deemed transferred to the Liquidating Trust. Nothing herein shall be deemed a waiver of the Debtors' or the Estates' rights of privilege.

### 6.14   Records

Upon the Effective Date, the Liquidating Trustee may retain those documents maintained by the Debtors in the ordinary course of business and which were not otherwise transferred to the Buyer pursuant to the Aquashell APA.  After receipt of such documents, the Liquidating Trustee shall be authorized to destroy any documents he or she deems necessary or appropriate in his or her reasonable judgment; **provided**, **however**, that the Liquidating Trustee shall not destroy any documents, including, but not limited to, tax documents, that the Liquidating Trust is required to retain under applicable law.

### 6.15   Final Decree

Notwithstanding anything in the Bankruptcy Code, Bankruptcy Rules, or Local Rules to the contrary, at any time following the Effective Date, the Liquidating Trustee shall be authorized to file a motion for entry of a final decree closing the Chapter 11 Cases.

### 6.16   Interim Distributions; Disputed Claim Reserve

To the extent there exists sufficient Cash to make Distributions to Holders of Claims, the Liquidating Trustee, in his or her discretion, shall make interim Distributions in relation to such Claims in the manner provided for by the terms of the Plan.

### 6.17   Intercompany Claims

Entry of the Confirmation Order shall constitute an order Disallowing all Intercompany Claims in their entirety.

19

## ARTICLE VII:
## EXECUTORY CONTRACTS

**7.1**      **Rejection of Executory Contracts and Unexpired Leases**

Except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by an Order of the Bankruptcy Court pursuant to § 365 of the Bankruptcy Code; or (ii) as to which a motion for approval of the assumption or rejection of such Executory Contract has been filed and served prior to, and remains pending as of, the Confirmation Date, every Executory Contract entered into by any of the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms (collectively, the "**Rejected Contracts**") shall be deemed rejected in accordance with § 365 of the Bankruptcy Code effective immediately as of entry of the Confirmation Order.   The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections.

**7.2**      **Bar Date for Rejection Damages Claims**

If the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against any of the Debtors and/or the Estates unless a proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an Order of the Court.  Allowed Rejection Claims shall be classified as General Unsecured Claims in, as applicable, Class Three, Four or Five of the Plan.

## ARTICLE VIII:
## PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND
## DISTRIBUTION OF REMAINING ASSETS

**8.1**      **Right to Object to Claims**

The Liquidating Trustee shall have exclusive authority, but not the obligation, to do any of the following with respect to any Claims or Interests after the Effective Date: (i) file, withdraw, or litigate to judgment, Objections to and requests for estimation of Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court or any other party; and (iii) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court or any other party.  The Liquidating Trustee shall succeed to any pending objections to Claims filed by the Debtors prior to the Effective Date and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.

**8.2**      **Distribution Provisions**

(a)      **Distributions to be Made and Adequate Reserves**. The Liquidating Trustee shall be responsible for making Distributions under the Plan, except those made before the

20

Effective Date, which the Debtors shall make. The Liquidating Trustee shall establish and maintain a reasonable reserve of Cash to satisfy anticipated Liquidating Trust Expenses.

(b) **No Liability**. The Liquidating Trustee shall only be required to act and make Distributions in accordance with the terms of the Plan, the Liquidating Trust Agreement, and related documents. Except on account of gross negligence, fraud, illegality, or willful misconduct, the Liquidating Trustee shall have no: (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to him or her in accordance with the Plan, the Liquidating Trust Agreement and related documents; or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against any of the Debtors as of the Effective Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan, the Liquidating Trust Agreement, and related documents.

(c) **Distributions on Account of Disputed Claims**. Except as otherwise provided in the Plan, a Final Order, or as agreed between the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidating Trustee at such periodic intervals as the Liquidating Trustee determines to be prudent in his or her discretion.

(d) **No Distributions Pending Disputes**. (a) No distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim; and (b) unless agreed otherwise by the Liquidating Trustee, no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim, or any Person that is or may be the subject of a Cause of Action, until such Person's Disputed Claim and/or the Cause of Action (as applicable) has been resolved by agreement with the Liquidating Trustee or by a Final Order. Upon a Disputed Claim becoming an Allowed Claim, such Allowed Claim shall be entitled to Distributions in accordance with its treatment under this Plan, and where such treatment provides for Cash payment on the Effective Date for such Claim, payment shall be made as soon as practicable after becoming an Allowed Claim.

(e) **Unclaimed Distributions**. Any Person and/or Entity that fails to claim any Cash within sixty (60) days from the date upon which a Distribution is first made to such Person and/or Entity shall forfeit all rights to all Distributions to such Person and/or Entity under the Plan, and the Liquidating Trustee shall be authorized to cancel any Distribution that is not timely claimed. Upon forfeiture, the Claims of such or Interest shall be irrevocably waived and forever barred against the Debtors, the Estates, and the Liquidating Trust.

(f) **Delivery of Distributions and Undeliverable Distributions to Holders of Claims**. Distributions to Holders of Allowed Claims shall be made to Holders of record as of the date of a Distribution by the Liquidating Trustee, as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the proofs of Claim Filed by such Holder or other representative identified therein (or at the last known address of such Holder if no proof of Claim is Filed); (b) at the address set forth in any written notices of address changes delivered to the Debtors after the date of any related proof of Claim and prior to the Effective Date;

and (c) at the addresses reflected in the Schedules if no proof of Claim has been Filed and the Debtors have not received a written notice of a change of address prior to the Effective Date.

    (g) **Undeliverable Distributions**.  The Liquidating Trustee shall make one attempt to make the Distributions contemplated hereunder.  The Liquidating Trustee shall have no obligation to attempt to locate Holders of undeliverable Distributions.  Any Distributions returned to the Liquidating Trustee as undeliverable or the like shall remain in the possession of the Liquidating Trust, and no further Distributions shall be made to such Holder.

    (h) **De Minimis Distributions**.  If any individual Distribution under the Plan to the Holder of an Allowed Claim would be less than **$25.00**, the Liquidating Trustee may, but is not required to, cancel such Distribution.

    (i) **Remainder Amounts after Final Distribution**.  After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and undeliverable Distributions is less than **$5,000.00**, in lieu of making additional Distributions, the Liquidating Trustee may donate such amount to a charitable institution of the Liquidating Trustee's choosing.

**ARTICLE IX:**
**RELEASES, INJUNCTION, AND RELATED PROVISIONS**

**9.1** **Releases by the Debtors**

  **As of the Effective Date, for good and valuable consideration, including the contributions of the Released Parties in facilitating the administration of the Chapter 11 Cases and other actions contemplated by the Plan and the other contracts, instruments, releases, agreements, or documents executed and delivered in connection with the Plan, the Released Parties are deemed forever released and discharged by the Debtors and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including, but not limited to, any derivative claims, asserted or assertable on behalf of any of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement, or related agreements, instruments, or other documents, including, but not limited to, any rights or remedies under § 506 of the Bankruptcy Code, other than Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, actual fraud, or willful misconduct, or criminal conduct, as determined by a Final Order by a court of competent jurisdiction.**

  **9.2** **Exculpation and Limitation of Liability**

(a)      The Exculpated Parties shall neither have nor incur any liability to any Entity for any claims or causes of action arising on or after the Petition Date and prior to the Effective Date, for any act taken or omitted to be taken in connection with, or related to: (i) the Chapter 11 Cases; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; or (iv) the approval of the Disclosure Statement or Confirmation or consummation of the Plan; _provided_, _however_, that the foregoing provisions shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; _provided_, _further_, _however_, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.

(b)      The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

9.3      <u>Injunctions</u>

(c)      FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES WHOSE CLAIMS HAVE BEEN RELEASED, DISALLOWED, OR EXCULPATED UNDER THIS PLAN ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

(d)      FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN SECTIONS 9.01 THROUGH 9.03 (INCLUSIVE), THE APPLICABLE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED UNDER THIS PLAN.

(e)      EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO

**THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN OR THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF SECTION 9.03, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.**

**(f)      THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THER ASSETS OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND ALL SUCH CLAIMS AND INTERESTS SHALL BE DEEMED SURRENDERED AND EXTINGUISHED.**

**ARTICLE X:**
**CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE**

**10.1      Conditions Precedent to Confirmation**

It shall be a condition to confirmation hereof that the following provisions, terms, and conditions shall have been satisfied, unless otherwise waived pursuant to Section 10.3:

(a)      The Bankruptcy Court shall have entered an order, in form and substance acceptable to the Debtors, approving the Disclosure Statement as containing adequate information within the meaning of § 1125 of the Bankruptcy Code; and

(b)      The Bankruptcy Court shall have entered an order confirming the Plan, and the Plan, the Confirmation Order, and any documents filed in relation to or to supplement the Plan, shall be in a form and substance acceptable to the Debtors.

**10.2    Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following provisions, terms, and conditions shall have been satisfied, unless waived pursuant to Section 10.3:

(a)      The Bankruptcy Court shall have entered the Confirmation Order in a form and substance acceptable to the Debtors; and

(b)      No order of a court shall have been entered and remain in effect restraining the Debtors from consummating the Plan and the transactions contemplated therein, and the Confirmation Order shall be a Final Order and shall be in full force and effect.

**10.3    Waiver of Conditions**

The conditions to confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article X may be waived by the Debtors, in their sole discretion, upon Filing a notice thereof on the docket in the Chapter 11 Cases.

**10.4    Effect of Failure of Conditions**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against any of the Debtors or the Estates; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by any of the Debtors, the Creditors' Committee, any Creditors or Interest Holders, or any other Entity in any respect.  If the Effective Date does not occur, nothing herein shall prevent the Debtors from filing a new proposed plan of liquidation.

**10.5    Filing of Notice of the Effective Date**

On the Effective Date, or as shortly thereafter as reasonably practicable, the Debtors shall file a notice of the Effective Date with the Bankruptcy Court.  The Debtors shall not be required to serve the notice of Effective Date on any party other than those parties that receive notice via the Bankruptcy Court's CM/ECF filing system or that have requested notice under Bankruptcy Rule 2002.

## ARTICLE XI:
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

**11.1    Modification and Amendments**

Except as otherwise specifically provided herein, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan. In addition, prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 11.2   Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to § 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3   Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan before the Effective Date, without prejudice to the Debtors, having the ability or right to file another plan in the future.

## ARTICLE XII:
## JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)      To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b)      To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)      To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation, any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)      To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)      To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any entity's

obligations in connection with the Plan, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)　　　To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, or the Liquidating Trustee;

(g)　　　To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors, or any other related proceedings by the Debtors, and to enter and enforce any default judgment on any of the foregoing;

(h)　　　To decide or resolve any and all applications for Professional Fee Claims;

(i)　　　To issue orders in aid of execution and implementation of the Plan to the extent authorized by § 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)　　　To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or consummation of the Plan;

(k)　　　To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Cases; and

(l)　　　To enter an order closing the Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

## ARTICLE XIII:
## MISCELLANEOUS

### 13.1　　Exemption from Taxes

To the extent the Plan and the Confirmation Order provide for: (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; and (b) the creation, execution, and delivery of agreements or other documents creating or evidencing the formation of the Liquidating Trust and any right or interest in the Liquidating Trust, pursuant to § 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein shall not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.2　　Compliance with Tax Requirements

Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the

satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution.

**The Liquidating Trustee shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation or certification as may be requested by the Liquidating Trustee as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidating Trustee with an executed Form W- 9, Form W-8 or other requested tax form within 90 days after the date of the Liquidating Trustee's initial request, the Liquidating Trustee may, in his or her sole discretion: (a) make such Distribution net of applicable withholding; or (b) reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, (ii) any such Distribution shall revert to the source of such Distribution for Distribution on account of other Allowed Claims, and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court. The Liquidating Trustee reserves the right to allocate and distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and similar encumbrances.**

### 13.3    Defenses and Setoff

Nothing contained in this Plan shall constitute a waiver or release by the Debtors, the Estates, or the Liquidating Trustee of any rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Liquidating Trustee may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtors, the Estates, or the Liquidating Trustee may have against the Holder of such Claim or Interest.

### 13.4    Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maine, without giving effect to the principles of conflicts of law thereof.

### 13.5    Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### 13.6    Debtor Post-Confirmation Management

On and after the Effective Date, the Debtors' existing management (the "**Manager**") shall continue to act solely to the limited extent necessary to: (i) facilitate the filing of tax returns; and

(ii) complete any other tasks the Manager reasonably determines are necessary to wind down the Debtors and their Estates which are not the responsibility of the Liquidating Trustee.   Fees and expenses related to the foregoing shall be deemed and funded as Liquidating Trust Expenses.

### 13.7    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors.

### 13.8    Severability of Plan Provisions

If, before the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Debtors.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  **The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) non-severable and mutually dependent.**

### 13.9    Exhibits

All exhibits and documents to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The Debtor reserves the right to amend the exhibits to the Plan any time prior to Confirmation, subject to reasonable notice.

### 13.10    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by any of the Debtors, the Estates, or the Liquidating Trustee, with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

### 13.11    Conflicts Among Plan Documents

To the extent of a conflict between the Plan and/or the Disclosure Statement and the Confirmation Order, the Confirmation Order shall govern.

### 13.12    Recommendation

In the opinion of the Debtors, the Plan is superior and preferable to the alternatives described in the Disclosure Statement.  Accordingly, the Debtors recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support Confirmation.

**COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC.**

Dated: January 16, 2026                    */s/ John Norton*
                                               John Norton
                                               Authorized Party